Steven J. Kahn (CA Bar No. 76933)
Gail S. Greenwood (CA Bar No. 169939)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail: skahn@pszjlaw.com
ggreenwood@pszjlaw.com

Co-Counsel to Chapter 11 Debtors and Debtors in Possession

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

In re

VERITY HEALTH SYSTEM OF CALIFORNIA, INC., *et al.*,

Debtors and Debtors in Possession.

☐ Affects All Debtors
☐ Affects Verity Health System of California, Inc.
☒ Affects O'Connor Hospital
☒ Affects Saint Louise Regional Hospital
☐ Affects St. Francis Medical Center
☒ Affects St. Vincent Medical Center
☒ Affects Seton Medical Center
☐ Affects O'Connor Hospital Foundation
☐ Affects Saint Louise Regional Hospital Foundation
☐ Affects St. Francis Medical Center of Lynwood Foundation
☐ Affects St. Vincent Foundation
☐ Affects St. Vincent Dialysis Center, Inc.
☐ Affects Seton Medical Center Foundation
☐ Affects Verity Business Services
☐ Affects Verity Medical Foundation
☐ Affects Verity Holdings, LLC
☐ Affects De Paul Ventures, LLC
☐ Affects De Paul Ventures - San Jose Dialysis, LLC

Lead Case No. 2:18-bk-20151-ER

Jointly administered with:
Case No. 2:18-bk-20162-ER;
Case No. 2:18-bk-20163-ER;
Case No. 2:18-bk-20164-ER;
Case No. 2:18-bk-20165-ER;
Case No. 2:18-bk-20167-ER;
Case No. 2:18-bk-20168-ER;
Case No. 2:18-bk-20169-ER;
Case No. 2:18-bk-20171-ER;
Case No. 2:18-bk-20172-ER;
Case No. 2:18-bk-20173-ER;
Case No. 2:18-bk-20175-ER;
Case No. 2:18-bk-20176-ER;
Case No. 2:18-bk-20178-ER;
Case No. 2:18-bk-20179-ER;
Case No. 2:18-bk-20180-ER;
Case No. 2:18-bk-20181-ER;

Chapter 11 Cases

Hon. Ernest M. Robles

Adversary No. _____________

**COMPLAINT FOR BREACH OF WRITTEN CONTRACTS, TURNOVER, UNJUST ENRICHMENT, AND DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY**

ST. VINCENT MEDICAL CENTER, a California nonprofit public benefit corporation, SETON MEDICAL CENTER, a California nonprofit public benefit corporation, O'CONNOR HOSPITAL, a California nonprofit public benefit corporation, and SAINT LOUISE REGIONAL HOSPITAL, a California nonprofit public benefit corporation,

Plaintiffs,

v.

CALIFORNIA PHYSICIANS' SERVICE dba BLUE SHIELD OF CALIFORNIA, a California nonprofit public benefit corporation,

Defendant.

St. Vincent Medical Center, Seton Medical Center, O'Connor Hospital, and Saint Louise Regional Hospital (collectively, "Plaintiffs") allege as follows:

**JURISDICTION AND VENUE**

1. The Bankruptcy Court has jurisdiction over this adversary proceeding (the "Action") pursuant to 28 U.S.C. §§ 157 and 1334.

2. The Action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. Venue is proper in this court pursuant to 28 U.S.C. § 1409 because the Action arises in, and is related to, the above-captioned Chapter 11 cases pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division.

4. Plaintiffs consent to the entry of final orders or judgments by the Bankruptcy Court even it if is determined that, absent consent of the parties, the Bankruptcy Court cannot enter final orders or judgments in the Action.

**THE PARTIES**

5. At all relevant times herein, Plaintiff St. Vincent Medical Center ("St. Vincent") was a California nonprofit public benefit corporation doing business in the County of Los Angeles providing hospital and ancillary medical services on an inpatient and outpatient basis.

6. At all relevant times herein, Plaintiff Seton Medical Center ("Seton") was a California nonprofit public benefit corporation doing business in the County of San Mateo providing

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

hospital and ancillary medical services on an inpatient and outpatient basis. Seton operated two hospital facilities, one in Daly City and one in Moss Beach, under a consolidated acute care license.

7. At all relevant times herein, Plaintiff O'Connor Hospital ("O'Connor") was a California nonprofit public benefit corporation doing business in the County of Santa Clara providing hospital and ancillary medical services on an inpatient and outpatient basis.

8. At all relevant times herein, Plaintiff Saint Louise Regional Hospital ("Saint Louise") was a California nonprofit public benefit corporation doing business in the County of Santa Clara providing hospital and ancillary medical services on an inpatient and outpatient basis.

9. Defendant California Physicians' Service, dba Blue Shield of California ("Blue Shield" or "Defendant"), is a California nonprofit public benefit corporation that, on information and belief, offers regulated health insurance plans in California. Blue Shield provides health insurance for its enrolled members under contractual arrangements with hospitals, physicians, and other medical care providers.

**BACKGROUND**

10. On August 31, 2018 ("Petition Date"), each of the above-captioned debtors (each a "Debtor" and collectively the "Debtors") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").[1] The cases are currently being jointly administered before the Bankruptcy Court [Docket No. 17]. Since the commencement of these cases, the Debtors have been operating their businesses as debtors in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

11. Defendant had actual notice of the bankruptcy filings by the Debtors and of the imposition of the automatic stay pursuant to, among other notifications, the *Notice of Case Commencement of Chapter 11 Cases and Meeting of Creditors Pursuant to Section 341 of the Bankruptcy Code* [Docket No.185] that was served on Defendant on or about September 14, 2018.

12. This Action seeks the recovery of underpaid and unpaid amounts due to the Plaintiffs from Defendant on account of, and for reimbursement of, covered medical services provided by

[1] All references to sections of the Bankruptcy Code are to 11 U.S.C. §§ 101, *et seq.*, as amended.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Plaintiffs to the enrolled patient members of health benefit plans offered or administered by Defendant. These amounts include medical care provided on dates of service (DOS) spanning the period from one year prior to the Petition Date through certain dates described in further detail below.

13. Debtor Verity Health System of California, Inc. ("VHS"), a California nonprofit public benefit corporation, is the sole corporate member of each of St. Vincent, Seton, O'Connor, and Saint Louise. Each of the Plaintiffs is also a Debtor.

14. On September 14, 2018, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors in these cases.

15. On December 27, 2018, the Court entered an order [Docket No. 1153] that authorized the sale of substantially all of the assets of O'Connor and Saint Louise to a purchaser, the County of Santa Clara, pursuant to the terms of an *Asset Purchase Agreement* dated October 1, 2018 ("SCC APA"). Pursuant to Section 1.9 of the SCC APA, the sale excluded all accounts receivable owed to the Debtors based on covered medical services provided by O'Connor or Saint Louise prior to March 1, 2019, which accounts receivable remain property of the bankruptcy estates.

16. On January 9, 2020, the Court entered an order [Docket No. 3934] that authorized the Debtors to implement an orderly closure of St. Vincent. St. Vincent ceased providing medical care by January 31, 2020. Subsequently, on April 10, 2020, the Court entered an order [Docket No. 4530] which authorized the sale of certain assets of St. Vincent to a purchaser, the Chan Soon-Shiong Family Foundation, pursuant to the terms of an *Asset Purchase Agreement* dated March 30, 2020 ("SVMC APA"). Pursuant to Section 1.8 of the SVMC APA, the sale excluded all accounts receivable owed to the Debtors based on covered medical services provided by St. Vincent prior to February 1, 2020, which accounts receivable remain property of the bankruptcy estates.

17. On April 23, 2020, the Court entered an order [Docket No. 4634] that authorized the sale of substantially all of the assets of Seton to a purchaser, AHMC Healthcare Inc., pursuant to the terms of an *Asset Purchase Agreement* dated March 30, 2020 ("SMC APA"). Pursuant to Section 1.8(g) of the SMC APA, the sale excluded all accounts receivable owed to the Debtors based on

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

covered medical services provided by Seton prior to August 14, 2020, which accounts receivable remain property of the bankruptcy estates.

18. On August 14, 2020, the Court entered an order [Docket No. 5504] confirming the *Modified Second Amended Joint Chapter 11 Plan of Liquidation (Dated July 2, 2020) of the Debtors, the Prepetition Secured Creditors and the Committee* [Docket No. 5466] (the "Plan"). Upon the Effective Date of the Plan, all Causes of Action are vested in the Liquidating Trust created under the Plan (as such terms are defined in the Plan). This Action is among the Causes of Action that are included in the Liquidating Trust Assets (as defined in the Plan).

19. Plaintiffs have attempted to engage in "meet and confer" discussions with Blue Shield in an effort to resolve the accounts receivable owed to Plaintiffs. Plaintiffs bring this Action to recover unpaid or underpaid claims that remain due and owing from Health Net for the period commencing one year prior to the Petition Date through (i) February 28, 2019, with respect to O'Connor and Saint Louise, (ii) January 31, 2020, with respect to St. Vincent, and (iii) July 31, 2020, with respect to Seton, and to preserve Plaintiffs' rights to such claims on behalf of the Debtors' estates, in the following minimum amounts:

| Plaintiff | Amount Owed |
|---|---|
| St. Vincent | $4,100,759 |
| Seton | $5,998,620 |
| O'Connor | $1,837,209 |
| Saint Louise | $710,570 |
| **Total** | **$12,647,221** |

**FIRST CLAIM FOR RELIEF**

**(For Breach of Written Contract by Plaintiff St. Vincent)**

20. Plaintiff St. Vincent refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 19 above, as though fully set forth herein.

21. Effective December 1, 2010, St. Vincent and Blue Shield entered into a written Fee for Service Hospital Provider Agreement, and effective December 1, 2017, St. Vincent and Blue Shield entered into a written Fee for Service Hospital Provider Agreement, each as amended and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

supplemented from time to time thereafter (collectively, the "St. Vincent/Blue Shield Agreements"), pursuant to which Blue Shield agreed to reimburse St. Vincent for covered medical services provided to Blue Shield members at agreed upon rates. True and correct copies of the St. Vincent/Blue Shield Agreements are attached hereto and incorporated herein by reference as **Exhibits A-1 and A-2**.[2]

22. Pursuant to Article V of the St. Vincent/Blue Shield Agreements, St. Vincent was required to submit claims to Blue Shield within 180 days following the end of each billing period, and Blue Shield was required to pay St. Vincent for covered services in accordance with the agreed upon compensation schedules and within the time-frames mandated by applicable state or federal law. Other than charging Blue Shield members for certain copayments, coinsurance, and/or deductibles, St. Vincent is precluded under Article VI of the St. Vincent/Blue Shield Agreements from seeking payment from the members or persons acting on a member's behalf in the event that Blue Shield fails to pay a timely submitted claim.

23. St. Vincent timely submitted thousands of claims to Blue Shield for medical services provided to Blue Shield members, which were due and payable to St. Vincent between August 31, 2017, and January 31, 2020.

24. Blue Shield has breached the St. Vincent/Blue Shield Agreements by failing and refusing to pay St. Vincent for the services provided to Blue Shield members, or by paying St. Vincent amounts less than what is owed pursuant to the terms of the St. Vincent/Blue Shield Agreements, despite St. Vincent's timely submission of claims. A list of the unpaid or underpaid claims (the "St. Vincent Claims"), including the dates of submission, amounts owed and partial payments, if any, all redacted to preserve confidential patient information, is attached hereto as **Exhibit B**.[3]

---

[2] The agreements attached as exhibits to this complaint contain compensation schedules setting forth the rates of compensation for services provided by each Plaintiff to Blue Shield's members, which rates are confidential pursuant to the terms of the agreements. The compensation schedules and related information are therefore omitted from the exhibits. Further, each of the agreements is attached without its subsequent amendments, if any.

[3] Column A of the spreadsheets attached to this complaint describes each unpaid and underpaid claim by an internal identifier number to preserve patient confidentiality. Plaintiffs maintain detailed

25. St. Vincent is informed and believes that all disputed claim procedures have been substantially or wholly performed or satisfied, and that it has otherwise performed all terms and conditions required of it to be performed under the terms of the St. Vincent/Blue Shield Agreement.

26. Demand for payment of the unpaid and underpaid St. Vincent Claims was made, but Blue Shield has failed and continues to fail and refuse to pay the St. Vincent Claims.

27. By reason of Blue Shield's breach of the St. Vincent/Blue Shield Agreements, St. Vincent has been damaged in the sum of not less than $4,100,759, plus interest thereon at the legal rate from and after thirty days after Blue Shield's receipt of each St. Vincent Claim.

**SECOND CLAIM FOR RELIEF**

**(For Turnover by Plaintiff St. Vincent)**

28. Plaintiff St. Vincent refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 27 above, as though fully set forth herein.

29. Pursuant to § 541 of the Bankruptcy Code, the amounts owed by Blue Shield to St. Vincent under the terms of the St. Vincent/Blue Shield Agreements constitute property of St. Vincent's estate in that they are matured and not subject to bona fide dispute.

30. Pursuant to § 542 of the Bankruptcy Code, an entity in possession, custody, or control of property that the debtor may use, sell, or lease under § 363 of the Bankruptcy Code shall deliver such property or the value of same to the debtor.

31. Pursuant to § 542(b) of the Bankruptcy Code, an entity that owes a matured debt that is property of the bankruptcy estate shall pay such debt to the debtor.

32. St. Vincent has made demand on Blue Shield to turn over the amounts owed to it under the terms of the St. Vincent/Blue Shield Agreements.

33. Despite such demand, Blue Shield has failed and continues to fail and refuse to turn over the sums owed to St. Vincent.

34. St. Vincent is entitled to an order directing Blue Shield to immediately pay the amounts owing on the St. Vincent Claims, plus interest thereon at the legal rate according to proof.

---

*{continued from previous page}*
information regarding the claims associated with each internal identifier number, including patient names and account numbers.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**THIRD CLAIM FOR RELIEF**

**(For Unjust Enrichment by Plaintiff St. Vincent)**

35. Plaintiff St. Vincent refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 34 above, as though fully set forth herein.

36. St. Vincent provided health care services to Blue Shield members on behalf of and for the benefit of Blue Shield.

37. St. Vincent provided the services with the understanding that it would be paid by Blue Shield for the services provided, but Blue Shield has failed to pay for such services.

38. Blue Shield has obtained the benefit of the services and has been unjustly enriched thereby to the detriment of St. Vincent.

39. By reason thereof, St. Vincent is entitled to an order directing Blue Shield to disgorge the amounts owing on the St. Vincent Claims, plus interest thereon at the legal rate according to proof.

**FOURTH CLAIM FOR RELIEF**

**(For Damages for Violation of the Automatic Stay by Plaintiff St. Vincent)**

40. Plaintiff St. Vincent refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 39 above, as though fully set forth herein.

41. Pursuant to § 541 of the Bankruptcy Code, the amounts owed by Blue Shield to St. Vincent for the St. Vincent Claims constitute property of St. Vincent's bankruptcy estate.

42. Pursuant to § 362(a)(3) of the Bankruptcy Code, the knowing retention of estate property violates the automatic stay and constitutes an act to exercise control over estate property.

43. By retaining and failing to pay amounts due to St. Vincent for the St. Vincent Claims after actual notice of the Debtors' bankruptcies, Blue Shield violated the automatic stay by exercising control over property of the bankruptcy estate within the meaning of § 362(a)(3) of the Bankruptcy Code.

44. St. Vincent is entitled to a determination that Blue Shield's exercise of control over amounts due to St. Vincent for the St. Vincent Claims violated, and continues to violate, the

automatic stay and that St. Vincent is entitled to damages for violation of the automatic stay pursuant to § 105(a) of the Bankruptcy Code, according to proof.

**FIFTH CLAIM FOR RELIEF**

**(For Breach of Written Contract by Plaintiff Seton)**

45. Plaintiff Seton refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 44 above, as though fully set forth herein.

46. Effective December 1, 2010, Seton and Blue Shield entered into a written Fee for Service Hospital Provider Agreement, and effective December 1, 2017, Seton and Blue Shield entered into another written Fee for Service Hospital Provider Agreement, each as amended and supplemented from time to time thereafter (collectively, the "Seton/Blue Shield Agreements"), under which Blue Shield agreed to reimburse Seton for covered medical services provided to Blue Shield members at agreed upon rates. True and correct copies of the Seton/Blue Shield Agreements are attached hereto and incorporated herein by reference as **Exhibits C-1 and C-2**.

47. Pursuant to Article V of the Seton/Blue Shield Agreements, Seton was required to submit claims to Blue Shield within 180 days following the end of each billing period, and Blue Shield was required to pay Seton for covered services in accordance with the agreed upon compensation schedules and within the time-frames mandated by applicable state or federal law. Other than charging Blue Shield members for certain copayments, coinsurance, and/or deductibles, Seton is precluded under Article VI of the Seton/Blue Shield Agreements from seeking payment from the members or persons acting on a member's behalf in the event that Blue Shield fails to pay a timely submitted claim.

48. Seton timely submitted thousands of claims to Blue Shield for medical services provided to Blue Shield members, which were due and payable to Seton between August 31, 2017, and July 31, 2020.

49. Blue Shield has breached the Seton/Blue Shield Agreements by failing and refusing to pay Seton for the services provided to Blue Shield's members, or by paying Seton amounts less than what is owed pursuant to the terms of the Seton/Blue Shield Agreements, despite Seton's timely submission of claims. Lists of the unpaid or underpaid claims related to the Daly City facility and of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the unpaid or underpaid claims related to the Moss Beach facility (collectively, the "Seton Claims"), including the dates of submission, amounts owed and partial payments, if any, all redacted to preserve confidential patient information, are attached hereto as **Exhibit D**.

50. Seton is informed and believes that all disputed claim procedures have been substantially or wholly performed or satisfied, and that it has otherwise performed all terms and conditions required of it to be performed under the terms of the Seton/Blue Shield Agreements.

51. Demand for payment of the unpaid and underpaid Seton Claims was made prior, but Blue Shield has failed and continues to fail and refuse to pay the Seton Claims.

52. By reason of Blue Shield's breach of its payment obligations under the Seton/Blue Shield Agreements, Seton has been damaged in the sum of not less than $5,998,620, plus interest thereon at the legal rate from and after thirty working days after Blue Shield's receipt of each Seton Claim.

**SIXTH CLAIM FOR RELIEF**

**(For Turnover by Plaintiff Seton)**

53. Plaintiff Seton refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 52 above, as though fully set forth herein.

54. Pursuant to § 541 of the Bankruptcy Code, the amounts owed by Blue Shield to Seton under the terms of the Seton/Blue Shield Agreements constitute property of Seton's estate in that they are matured and not subject to bona fide dispute.

55. Pursuant to § 542 of the Bankruptcy Code, an entity in possession, custody, or control of property that the debtor may use, sell, or lease under § 363 of the Bankruptcy Code shall deliver such property or the value of same to the debtor.

56. Pursuant to § 542(b) of the Bankruptcy Code, an entity that owes a matured debt that is property of the bankruptcy estate, shall pay such debt to the debtor.

57. Seton has made demand on Blue Shield to turn over the amounts owed to it under the terms of the Seton/Blue Shield Agreements.

58. Despite such demand, Blue Shield has failed and continues to fail and refuse to turn over the sums owed to Seton.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

59. Seton is entitled to an order directing Blue Shield to immediately pay the amounts owing to Seton on the Seton Claims, plus interest thereon at the legal rate according to proof.

**SEVENTH CLAIM FOR RELIEF**

**(For Unjust Enrichment by Plaintiff Seton)**

60. Plaintiff Seton refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 59 above, as though fully set forth herein.

61. Seton provided health care services to Blue Shield's members on behalf of and for the benefit of Blue Shield.

62. Seton provided the services with the understanding that it would be paid by Blue Shield for the services provided, but Blue Shield has failed to pay for such services.

63. Blue Shield has obtained the benefit of the services and has been unjustly enriched thereby to the detriment of Seton.

64. By reason thereof, Seton is entitled to an order directing Blue Shield to disgorge the amounts owing to Seton on the Seton Claims, plus interest thereon at the legal rate according to proof.

**EIGHTH CLAIM FOR RELIEF**

**(For Damages for Violation of the Automatic Stay by Plaintiff Seton)**

65. Plaintiff Seton refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 64 above, as though fully set forth herein.

66. Pursuant to § 541 of the Bankruptcy Code, the amounts owed by Blue Shield to Seton for the Seton Claims constitute property of Seton's bankruptcy estate.

67. Pursuant to § 362(a)(3) of the Bankruptcy Code, the knowing retention of estate property violates the automatic stay and constitutes an act to exercise control over estate property.

68. By retaining and failing to pay amounts due to Seton for the Seton Claims after actual notice of the Debtors' bankruptcies, Blue Shield violated the automatic stay by exercising control over property of the bankruptcy estate within the meaning of § 362(a)(3) of the Bankruptcy Code.

69. Seton is entitled to a determination that Blue Shield's exercise of control over amounts due to Seton for the Seton Claims violated, and continues to violate, the automatic stay and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

that Seton is entitled to damages for violation of the automatic stay pursuant to § 105(a) of the Bankruptcy Code, according to proof.

**NINTH CLAIM FOR RELIEF**

**(For Breach of Written Contract by Plaintiff O'Connor)**

70. Plaintiff O'Connor refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 69 above, as though fully set forth herein.

71. Effective December 1, 2010, O'Connor and Blue Shield entered into a written Fee for Service Hospital Provider Agreement, and effective December 1, 2017, O'Connor and Blue Shield entered into another written Fee for Service Hospital Provider Agreement, each as amended and supplemented from time to time thereafter (collectively, the "O'Connor/Blue Shield Agreements"), under which Blue Shield agreed to reimburse O'Connor for covered medical services provided to Blue Shield members at agreed upon rates. True and correct copies of the O'Connor/Blue Shield Agreements are attached hereto and incorporated herein by reference as **Exhibits E-1 and E-2**.

72. Pursuant to Article V of the O'Connor/Blue Shield Agreements, O'Connor was required to submit claims to Blue Shield within 180 days following the end of each billing period, and Blue Shield was required to pay O'Connor for covered services in accordance with the agreed upon compensation schedules and within the time-frames mandated by applicable state or federal law. Other than charging Blue Shield members for certain copayments, coinsurance, and/or deductibles, O'Connor is precluded under Article VI of the O'Connor/Blue Shield Agreements from seeking payment from the members or persons acting on a member's behalf in the event that Blue Shield fails to pay a timely submitted claim.

73. O'Connor timely submitted thousands of claims to Blue Shield for medical services provided to Blue Shield members, which were due an payable to O'Connor between August 31, 2017, and February 28, 2019.

74. Blue Shield has breached the O'Connor/Blue Shield Agreements by failing and refusing to pay O'Connor for the services provided to Blue Shield members, or by paying O'Connor amounts less than what is owed pursuant to the terms of the O'Connor/Blue Shield Agreements, despite O'Connor's timely submission of claims. A list of the unpaid or underpaid claims (the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

"O'Connor Claims"), including the dates of submission, amounts owed and partial payments, if any, all redacted to preserve confidential patient information, is attached hereto as **Exhibit F**.

75. O'Connor is informed and believes that all disputed claim procedures have been substantially or wholly performed or satisfied, and that it has otherwise performed all terms and conditions required of it to be performed under the terms of the O'Connor/Blue Shield Agreements.

76. Demand for payment of the unpaid and underpaid O'Connor Claims was made, but Blue Shield has failed and continues to fail and refuse to pay the O'Connor Claims.

77. By reason of Blue Shield's breach of the O'Connor/Blue Shield Agreements, O'Connor has been damaged in the sum of not less than $1,837,209, plus interest thereon at the legal rate from and after thirty days after Blue Shield's receipt of each O'Connor Claim.

**TENTH CLAIM FOR RELIEF**

**(For Turnover by Plaintiff O'Connor)**

78. Plaintiff O'Connor refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 77 above, as though fully set forth herein.

79. Pursuant to § 541 of the Bankruptcy Code, the amounts owed by Blue Shield to O'Connor under the terms of the O'Connor/Blue Shield Agreements constitute property of O'Connor estate in that they are matured and not subject to bona fide dispute.

80. Pursuant to § 542 of the Bankruptcy Code, an entity in possession, custody, or control of property that the debtor may use, sell, or lease under § 363 of the Bankruptcy Code shall deliver such property or the value of same to the debtor.

81. Pursuant to § 542(b) of the Bankruptcy Code, an entity that owes a matured debt that is property of the bankruptcy estate shall pay such debt to the debtor.

82. O'Connor made demand on Blue Shield to turn over the amounts owed to it under the terms of the O'Connor/Blue Shield Agreements.

83. Despite such demand, Blue Shield has failed and continues to fail and refuse to turn over the sums owed to O'Connor.

84. O'Connor is entitled to an order directing Blue Shield to immediately pay the amounts owing on the O'Connor Claims, plus interest thereon at the legal rate according to proof.

**ELEVENTH CLAIM FOR RELIEF**

**(For Unjust Enrichment by Plaintiff O'Connor)**

85. Plaintiff O'Connor refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 84 above, as though fully set forth herein.

86. O'Connor provided health care services to Blue Shield members on behalf of and for the benefit of Blue Shield.

87. O'Connor provided the services with the understanding that it would be paid by Blue Shield for the services provided, but Blue Shield has failed to pay for such services.

88. Blue Shield has obtained the benefit of the services and has been unjustly enriched thereby to the detriment of O'Connor.

89. By reason thereof, O'Connor is entitled to an order directing Blue Shield to disgorge the amounts owing on the O'Connor Claims, plus interest thereon at the legal rate according to proof.

**TWELFTH CLAIM FOR RELIEF**

**(For Damages for Violation of the Automatic Stay by Plaintiff O'Connor)**

90. Plaintiff O'Connor refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 89 above, as though fully set forth herein.

91. Pursuant to § 541 of the Bankruptcy Code, the amounts owed by Blue Shield to O'Connor for the O'Connor Claims constitute property of O'Connor's bankruptcy estate.

92. Pursuant to § 362(a)(3) of the Bankruptcy Code, the knowing retention of estate property violates the automatic stay and constitutes an act to exercise control over estate property.

93. By retaining and failing to pay amounts due to O'Connor for the O'Connor Claims after actual notice of the Debtors' bankruptcies, Blue Shield violated the automatic stay by exercising control over property of the bankruptcy estate within the meaning of § 362(a)(3) of the Bankruptcy Code.

94. O'Connor is entitled to a determination that Blue Shield's exercise of control over amounts due to O'Connor for the O'Connor Claims violated, and continues to violate, the automatic

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

stay and that O'Connor is entitled to damages for violation of the automatic stay pursuant to § 105(a) of the Bankruptcy Code, according to proof.

**THIRTEENTH CLAIM FOR RELIEF**

**(For Breach of Written Contract by Plaintiff Saint Louise)**

95. Plaintiff Saint Louise refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 94 above, as though fully set forth herein.

96. Effective December 1, 2010, Saint Louise and Blue Shield entered into a written Fee for Service Hospital Provider Agreement, and effective December 1, 2017, Saint Louse and Blue Shield entered into another written Fee for Service Hospital Provider Agreement, each as amended and supplemented from time to time thereafter (collectively, the "Saint Louise/Blue Shield Agreements"), under which Blue Shield agreed to reimburse Saint Louise for covered medical services provided to Blue Shield members at agreed upon rates. True and correct copies of the Saint Louise/Blue Shield Agreements are attached hereto and incorporated herein by reference as **Exhibits G-1 and G-2**.

97. Pursuant to Article V of the Saint Louise/Blue Shield Agreements, Saint Louise was required to submit claims to Blue Shield within 180 days following the end of each billing period, and Blue Shield was required to pay Saint Louise for covered services in accordance with the agreed upon compensation schedules and within the time-frames mandated by applicable state or federal law. Other than charging Blue Shield members for certain copayments, coinsurance, and/or deductibles, Saint Louise is precluded under Article VI of the Saint Louise/Blue Shield Agreements from seeking payment from the members or persons acting on a member's behalf in the event that Blue Shield fails to pay a timely submitted claim.

98. Saint Louise timely submitted thousands of claims to Blue Shield for medical services provided to Blue Shield members, which were due and payable to Saint Louise between August 31, 2017, and February 28, 2019..

99. Blue Shield has breached the Saint Louise/Blue Shield Agreements by failing and refusing to pay Saint Louise for the services Saint Louise provided to Blue Shield members, or by paying Saint Louise amounts less than what is owed pursuant to the terms of the Saint Louise/Blue

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Shield Agreements, despite Saint Louise's timely submission of claims. A list of the unpaid or underpaid claims (the "Saint Louise Claims"), including the dates of submission, amounts owed and partial payments, if any, all redacted to preserve confidential patient information, is attached hereto as **Exhibit H**.

100. Saint Louise is informed and believes that all disputed claim procedures have been substantially or wholly performed or satisfied, and that it has otherwise performed all terms and conditions required of it to be performed under the terms of the Saint Louise/Blue Shield Agreements.

101. Demand for payment of the unpaid and underpaid Saint Louise Claims was made, but Blue Shield has failed and continues to fail and refuse to pay the Saint Louise Claims.

102. By reason of Blue Shield's breach of the Saint Louise/Blue Shield Agreements, Saint Louise has been damaged in the sum of not less than $710,570, plus interest thereon at the legal rate from and after thirty days after Blue Shield's receipt of each Saint Louise Claim.

## FOURTEENTH CLAIM FOR RELIEF

**(For Turnover by Plaintiff Saint Louise)**

103. Plaintiff Saint Louise refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 102 above, as though fully set forth herein.

104. Pursuant to § 541 of the Bankruptcy Code, the amounts owed by Blue Shield to Saint Louise under the terms of the Saint Louise/Blue Shield Agreements constitute property of Saint Louise's estate in that they are matured and not subject to bona fide dispute.

105. Pursuant to § 542 of the Bankruptcy Code, an entity in possession, custody, or control of property that the debtor may use, sell, or lease under § 363 of the Bankruptcy Code shall deliver such property or the value of same to the debtor.

106. Pursuant to § 542(b) of the Bankruptcy Code, an entity that owes a matured debt that is property of the bankruptcy estate, shall pay such debt to the debtor.

107. Saint Louise made demand on Blue Shield to turn over the amounts owed to it under the terms of the Saint Louise/Blue Shield Agreements.

108. Despite such demands, Blue Shield has failed and continues to fail and refuse to turn over the sums owed to Saint Louise.

109. Saint Louise is entitled to an order directing Blue Shield to immediately pay the amounts owing to Saint Louise on the Saint Louise Claims, plus interest thereon at the legal rate according to proof.

**FIFTEENTH CLAIM FOR RELIEF**

**(For Unjust Enrichment by Plaintiff Saint Louise)**

110. Plaintiff Saint Louise refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 109 above, as though fully set forth herein.

111. Saint Louise provided health care services to Blue Shield members on behalf of and for the benefit of Blue Shield.

112. Saint Louise provided the services with the understanding that it would be paid by Blue Shield for the services provided, but Blue Shield has failed to pay for such services.

113. Blue Shield has obtained the benefit of the services and has been unjustly enriched thereby to the detriment of Saint Louise.

114. By reason thereof, Saint Louise is entitled to an order directing Blue Shield to disgorge the amounts owing to Saint Louise on the Saint Louise Claims, plus interest thereon at the legal rate according to proof.

**SIXTEENTH CLAIM FOR RELIEF**

**(For Damages for Violation of the Automatic Stay by Plaintiff Saint Louise)**

115. Plaintiff Saint Louise refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 114 above, as though fully set forth herein.

116. Pursuant to § 541 of the Bankruptcy Code, the amounts owed by Blue Shield to Saint Louise for the Saint Louise Claims constitute property of Saint Louise's bankruptcy estate.

117. Pursuant to § 362(a)(3) of the Bankruptcy Code, the knowing retention of estate property violates the automatic stay and constitutes an act to exercise control over estate property.

118. By retaining and failing to pay amounts due to Saint Louise for the Saint Louise Claims after actual knowledge of the Debtors' bankruptcies, Blue Shield violated the automatic stay

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

by exercising control over property of the bankruptcy estate within the meaning of § 362(a)(3) of the Bankruptcy Code.

119. Saint Louise is entitled to a determination that Blue Shield's exercise of control over amounts due to Saint Louise for the Saint Louise Claims violated, and continues to violate, the automatic stay and that Saint Louise is entitled to damages for violation of the automatic stay pursuant to § 105(a) of the Bankruptcy Code, according to proof.

**PRAYER**

WHEREFORE, Plaintiffs pray for entry of judgment against Blue Shield as follows:

On the First Claim for Relief asserted by Plaintiff St. Vincent:

1. For judgment against Blue Shield in the sum of $4,100,759, or such other amount according to proof; and

2. For interest thereon at the legal rate from 30 days after Blue Shield's receipt of each St. Vincent Claim until paid in full.

On the Second and Third Claims for Relief asserted by Plaintiff St. Vincent:

3. For an order directing Blue Shield to turn over or disgorge to St. Vincent the sum of $4,100,759, or such other amount according to proof, plus interest thereon at the legal rate from the date of judgment until paid in full.

On the Fourth Claim for Relief asserted by Plaintiff St. Vincent:

4. For a determination that Blue Shield's exercise and control over amounts due to St. Vincent for the St. Vincent Claims violated the automatic stay, and for an award of compensatory damages according to proof.

On the Fifth Claim for Relief asserted by Plaintiff Seton:

5. For judgment against Blue Shield in the sum of $5,998,620, or such other amount according to proof; and

6. For interest thereon at the legal rate from 30 days after Blue Shield's receipt of each Seton Claim until paid in full.

On the Sixth and Seventh Claims for Relief asserted by Plaintiff Seton:

7. For an order directing Blue Shield to turn over or disgorge to Seton the sum of

$5,998,620, or such other amount according to proof, plus interest thereon at the legal rate from the date of judgment until paid in full.

<u>On the Eighth Claim for Relief asserted by Plaintiff Seton</u>:

8. For a determination that Blue Shield's exercise and control over amounts due to Seton for the Seton Claims violated the automatic stay, and for an award of compensatory damages according to proof.

<u>On the Ninth Claim for Relief asserted by Plaintiff O'Connor</u>:

9. For judgment against Blue Shield in the sum of $1,837,209, or such other amount according to proof; and

10. For interest thereon at the legal rate from 30 days after Blue Shield's receipt of each O'Connor Claim until paid in full.

<u>On the Tenth and Eleventh Claims for Relief asserted by Plaintiff O'Connor:</u>

11. For an order directing Blue Shield to turn over or disgorge to O'Connor the sum of $1,837,209, or such other amount according to proof, plus interest thereon at the legal rate from the date of judgment until paid in full.

<u>On the Twelfth Claim for Relief asserted by Plaintiff O'Connor:</u>

12. For a determination that Blue Shield's exercise and control over amounts due to O'Connor for the O'Connor Claims violated the automatic stay, and for an award of compensatory damages according to proof.

<u>On the Thirteenth Claim for Relief asserted by Plaintiff Saint Louise</u>:

13. For judgment against Blue Shield in the sum of $710,570, or such other amount according to proof; and

14. For interest thereon at the legal rate from 30 days after Blue Shield's receipt of each Saint Louise Claim until paid in full.

<u>On the Fourteenth and Fifteenth Claims for Relief asserted by Plaintiff Saint Louise:</u>

15. For an order directing Blue Shield to turn over or disgorge to Saint Louise the sum of $710,570, or such other amount according to proof, plus interest thereon at the legal rate from 30 days after the submission of each timely claim until paid in full.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

On the Sixteenth Claim for Relief asserted by Plaintiff Saint Louise:

16. For a determination that Blue Shield's exercise and control over amounts due to Saint Louise for the Saint Louise Claims violated the automatic stay, and for an award of compensatory damages according to proof.

On All Claims for Relief asserted by Plaintiffs against Blue Shield:

17. For such other and further relief the Court deems just and proper.

Dated: August 28, 2020

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Steven J. Kahn*
Steven J. Kahn
Co-Counsel to Chapter 11 Debtors and Debtors In Possession