# EXHIBIT E-1

blue 🛡 of california

# Provider Agreement

## Fee For Service Hospital

**Blue Shield of California**
50 Beale Street, San Francisco, CA 94105

blueshieldca.com

An Independent Member of the Blue Shield Association

blue 🛡 of california

## TABLE OF CONTENTS

I.      DEFINITIONS
1.1     Agreement Year
1.2     Allowed Charges
1.3     Authorization
1.4     Benefit Program
1.5     Blue Shield Providers
1.6     Case Rate
1.7     Charge Master
1.8     Charge Master Year
1.9     Copayment
1.10    Covered Services
1.11    Emergency Services
1.12    Evidence of Coverage
1.13    Health Services Contract
1.14    Hospital Services
1.15    Inpatient
1.16    Inpatient Services
1.17    Medically Necessary or Medical Necessity
1.18    Member
1.19    Outpatient Services
1.20    Per Diem Rate
1.21    Intentionally Left Blank
1.22    Provider Appeal
1.23    Provider Manual

II.     OBLIGATIONS OF HOSPITAL
2.1     Hospital Services
2.2     Location and Availability
2.3     Licensure & Accreditation
2.4     Standards for Provision of Care
2.5     Quality Improvement/Case Management/Utilization Management Programs
2.6     Service Authorization
2.7     Cooperation with Discharge Planning
2.8     Physician Access
2.9     Submission of Physician Hospital Privilege Roster
2.10    Provider Manual
2.11    Disclosures

III.    OBLIGATIONS OF BLUE SHIELD
3.1     Directory & Use of Names
3.2     Administrative Services
3.3     Disclosure of Information

1

blue 🛡 of california

IV.     ELIGIBILITY OF BLUE SHIELD MEMBERS
4.1     Identification Cards & Verification
4.2     Verification of Eligibility

V.      BILLING, COMPENSATION & CHARGE MASTER OBLIGATIONS
5.1     Claims Submission
5.2     Compensation Amounts
5.3     Copayments
5.4     Overpayment Recoveries
5.5     Charge Master Notifications
5.6     Adjustments Resulting From Charge Master Increases
5.7     Right to Audit Charge Master
5.8     Late Charge Master Notification Recoveries
5.9     Blue Card Claims

VI.     PROTECTION OF MEMBERS
6.1     Non-Discrimination
6.2     Charges to Members
6.3     Third Party Liens
6.4     Benefits Determination
6.5     Member Complaints & Grievances
6.6     Medical Necessity Assistance
6.7     Free Exchange of Information
6.8     Insurance

VII.    MEDICAL RECORDS & CONFIDENTIALITY
7.1     Medical Records
7.2     Confidentiality
7.3     Member Access to Records

VIII.   COOPERATION WITH AUDITS & CERTIFICATION
8.1     Disclosure of Records
8.2     Site Evaluations
8.3     Accreditation Surveys
8.4     Compliance Monitoring

IX.     RESOLUTION OF DISPUTES
9.1     Provider Appeal Resolution Process
9.2     Arbitration of Disputes
9.3     Limitation of Actions

X.      TERM & TERMINATION
10.1    Term
10.2    Termination Without Cause

2

blue ⓥ of california

10.3    Termination for Cause
10.4    Immediate Termination
10.5    Effect of Termination
10.6    Termination Not an Exclusive Remedy
10.7    Survival

XI      OTHER PAYORS
11.1    Other Payors
11.2    Responsibility for Payment
11.3    Applicability of Agreement; Identity of Other Payors

XII     GENERAL PROVISIONS
12.1    Entire Agreement
12.2    Amendments
12.3    Assignment
12.4    Third Party Beneficiaries
12.5    Notices
12.6    Independent Contractors
12.7    Indemnification
12.8    Waiver of Breach
12.9    Force Majeure
12.10   Confidentiality
12.11   Non-Solicitation
12.12   Association Disclosure
12.13   Governing Law
12.14   Preemption by Federal Law
12.15   Compliance With Law
12.16   Interpretation of Agreement
12.17   Counterparts
12.18   Ethical and Religious Directives

Exhibit A - Hospital Information
Exhibit B - Applicable Benefit Programs
Exhibit C - Compensation Amounts/Payment Schedule
Exhibit D - Utilization Management/Prior Authorization

O'Connor Hospital-FFS Hospital Agreement_Base 12-01-10
Base FFS Hospital Agreement v23.0
Proprietary and Confidential – Blue Shield of California

blue 🛡 of california

## BLUE SHIELD OF CALIFORNIA
## FEE FOR SERVICE HOSPITAL AGREEMENT

This Fee For Service Hospital Agreement (this "Agreement") is entered into by and between **O'Connor Hospital**, a California nonprofit corporation ("Hospital"), and California Physicians' Service, dba Blue Shield of California, a California nonprofit corporation ("Blue Shield"). This Agreement shall be effective **December 1, 2010** (the "Effective Date").

### RECITALS

A.    Blue Shield is licensed as a prepaid health care service plan under the Knox-Keene Act of 1975, as amended (the "Knox-Keene Act"). Blue Shield contracts with individuals, associations, employer groups, and governmental entities to provide or to arrange for the provision of covered health care services to Members (as defined herein) enrolled in HMO and PPO benefit plans.

B.    Hospital owns and operates an acute care hospital and is duly licensed and qualified to provide inpatient and outpatient hospital services to Members.

C.    Hospital and Blue Shield desire that Hospital provide fee-for-service inpatient and outpatient hospital services (excluding capitated hospital agreements as described in Section 12.1 of this Agreement) to Members, in accordance with the terms of this Agreement.

### I. DEFINITIONS

For purposes of this Agreement, the following capitalized terms shall have the meanings ascribed to them below:

1.1    **Agreement Year:**  is the twelve (12) month period beginning on the Effective Date, and each twelve (12) month period beginning on each annual anniversary date of the Effective Date thereafter.

1.2    **Allowed Charges:**  are charges billed by Hospital, in accordance with Hospital's Charge Master, for Hospital Services furnished pursuant to this Agreement, less those charges, if any, disallowed by Blue Shield pursuant to Section III (General Notes) of Exhibit C hereto.

4

blue 🛡 of california

1.3 **Authorization/Authorized:** is the approval of Blue Shield, or its delegate, for the provision of Covered Services, obtained in accordance with, and as further described in, the Provider Manual, Section 2.6 of this Agreement and Exhibit D hereto.

1.4 **Benefit Program:** is a group or individual HMO, including Point-of-Service (POS), or PPO health care product offered by Blue Shield pursuant to a Health Services Contract (and riders, if any, thereto).

1.5 **Blue Shield Providers:** are those licensed health care providers, including, without limitation, institutional providers, that have entered into agreements with Blue Shield to provide Covered Services to Members.

1.6 **Case Rate:** is a rate of reimbursement paid by Blue Shield for certain Hospital Services identified in Exhibit C, hereto, furnished during a single inpatient or outpatient admission, and, except as otherwise set forth in Exhibit C, constitutes payment in full for all Hospital Services provided by Hospital during such admission.

1.7 **Charge Master:** is the uniform schedule of charges, in either electronic or printed form, represented by Hospital to be its gross billed charges for all Hospital procedures, services, supplies and drugs that are billed and charged on a UB-04 billing form or its electronic billing equivalent, regardless of payor type.

1.8 **Charge Master Year:** is the twelve (12) month period beginning on December 1, 2010, and each twelve (12) month period beginning on each annual anniversary date of December 1st, thereafter.

1.9 **Copayment:** is any copayment, deductible, and/or coinsurance amount for which a Member is financially responsible in connection with the receipt of Covered Services, as specifically described in the Health Services Contract and/or Evidence of Coverage applicable to the Member and in effect as of the date of service.

1.10 **Covered Services:** are Medically Necessary health care services, supplies and drugs that a Member is entitled to receive pursuant to the Health Services Contract and/or Evidence of Coverage applicable to the Member.

1.11 **Emergency Services:** are Covered Services required to address an unexpected medical condition, including a psychiatric emergency medical condition, manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in: (i) placing the Member's health in serious jeopardy; (ii) serious impairment to bodily functions; (iii) serious dysfunction of any bodily organ or part; or (iv) with respect to a pregnant woman, a threat to the health or safety of the woman or her unborn child, as further defined in Section 1867(e)(1)(B) of the Social Security Act, 42 U.S.C. Section 1395dd(e)(1)(B). For Blue Shield Members, Emergency Services also include any other services defined as emergency services in Title 42 of the Code of Federal Regulations, Section 422.113.

5

# blue ⬡ of california

1.12 **Evidence of Coverage:** is the document issued to a Member, pursuant to California law, that describes the benefits, limitations and other features of the Benefit Program in which the Member is enrolled.

1.13 **Health Services Contract:** is the group or individual contract that describes the Benefit Program and the Covered Services to which a Member is entitled, as well as the Member's Copayment obligation.

1.14 **Hospital Services:** are those Covered Services which Hospital is licensed to provide.

1.15 **Inpatient:** is a Member who (a) is admitted to Hospital as a registered bed patient with the expectation of staying overnight, and (b) is receiving services ordered by and under the direction of a physician or other health care provider with appropriate medical staff privileges at Hospital. If a Member remains in one or more emergency rooms or outpatient departments of Hospital for an aggregate period exceeding twenty-four (24) hours, the Member will be deemed to be an Inpatient for purposes of this Agreement.

1.16 **Inpatient Services:** are Hospital Services provided to an Inpatient, including: (a) all Hospital Services provided to a Member within the twelve (12) hour period prior to admission as an Inpatient, if related to the condition for which the Member is admitted; (b) all Hospital Services provided to a Member who remains in one or more emergency rooms or outpatient departments of Hospital for an aggregate period exceeding twenty-four (24) hours; and (c) transportation services required for treatment of the Member following admission as an Inpatient at Hospital and until discharge.

1.17 **Medically Necessary or Medical Necessity:** means, with respect to the provision of medical services, supplies and drugs: (a) required by a Member; (b) provided in accordance with recognized professional medical and surgical practices and standards; (c) appropriate and necessary for the symptoms, diagnosis, or treatment of the Member's medical condition; (d) provided for the diagnosis and direct care and treatment of such medical condition; (e) not furnished primarily for the convenience of the Member, the Member's family, or the treating provider or other provider; (f) furnished at the most appropriate level that can be provided consistent with generally accepted medical standards of care; (g) with respect to Inpatient Services, could not have been provided in a physician's office, the Outpatient department of a hospital, or in another lesser facility without adversely affecting the Member's condition or the quality of medical care rendered; and (h) consistent with Blue Shield Medical Policy which shall not be inconsistent with DMHC regulations.

1.18 **Member:** is an individual who is eligible for and enrolled in a Benefit Program to which this Agreement applies (as identified in Exhibit B) or a health benefit plan of an Other Payor (as defined in Section 11.1 hereof).

1.19 **Outpatient Services:** are Hospital Services other than Inpatient Services.

1.20 **Per Diem Rate:** is a rate of reimbursement paid by Blue Shield on a per-day basis for certain Inpatient Services identified in Exhibit C hereto, and, except as otherwise set forth

6

blue 🛡 of california

in Exhibit C, constitutes payment in full for all Hospital Services provided by Hospital during each such day.

1.21   **Intentionally Left Blank**

1.22   **Provider Appeal:** is Hospital's written notice to Blue Shield challenging, appealing, or requesting reconsideration of a claim, requesting resolution of billing determinations, such as bundling/unbundling of claims/procedure codes or allowances, or disputing administrative policies & procedures, administrative terminations, retro-active contracting, or any other issue related to the parties' respective obligations under this Agreement.

1.23   **Provider Manual:** is the set of manuals developed by Blue Shield that set forth the operational rules and procedures applicable to Hospital and the performance of services hereunder, used by Blue Shield to determine reimbursement rates under the terms of this Agreement, including, without limitation, Blue Shield's Medical Policy, Blue Shield's Outpatient Surgical Grouper, APG Outpatient Surgical Services Grouper Mappings, Outpatient Radiology, Pathology, and Diagnostic Test Schedule, Clinical Laboratory Schedule, and Outpatient Pharmaceutical Fee Schedule.

## II.  OBLIGATIONS OF HOSPITAL

2.1   **Hospital Services.** Hospital shall provide Hospital Services to Members, as directed by Members' treating physicians or as otherwise Medically Necessary, in accordance with the terms of this Agreement. Notwithstanding anything in this Agreement to the contrary, this Agreement shall not apply to or govern the provision of hospital services to Members enrolled in HMO programs (including, without limitation, Medicare Advantage) for which Hospital receives capitation payments pursuant to a separate capitated hospital agreement, if any, between Hospital and Blue Shield.

2.2   **Location and Availability.**

(a)   Hospital Services shall be provided and made reasonably available at the location(s) set forth in Exhibit A hereto. Subject to bed availability and compliance with admission criteria, Hospital will accept Authorized admissions of members twenty-four (24) hours a day.

(b)   Hospital shall cooperate and comply with Blue Shield's language assistance program, as set forth in the Provider Manual. Nothing in this Section shall be construed as a delegation to Hospital of Blue Shield's obligations pursuant to Section 1300.67.04 of Title 28 of the California Code of Regulations or Section 2538.3 of Title 10 of the California Code of Regulation, or deemed to limit Hospital's obligations pursuant to Section 1259 of the California Health and Safety Code.

7

# blue 🛡 of california

2.3    **Licensure & Accreditation.** At all times during the term of this Agreement, Hospital shall be licensed by the state of California, certified under Title XVIII of the Social Security Act, and accredited by The Joint Commission.

2.4    **Standards for Provision of Care.** Hospital shall maintain its facilities and equipment in accordance with all applicable legal requirements. Hospital shall comply with all federal and state laws, licensing requirements, and professional standards, and provide its services in accordance with generally accepted Hospital practices and standards prevailing in the applicable professional community at the time of treatment. Consistent with Title 10 of the California Code of Regulations, Section 2240.4, Hospital's primary consideration shall be the quality of the health care services rendered to Members.

2.5    **Quality Improvement/Case Management/Utilization Management Programs.**

     (a)    Hospital shall comply with Blue Shield's Medical Policy. Without limiting the foregoing, Hospital shall cooperate fully with and participate in Blue Shield's Quality Improvement and Utilization Management Programs, including its Authorization procedures, as set forth in this Agreement and as described in the Provider Manual. Hospital shall comply with the decisions of the Blue Shield Quality Improvement and Utilization Management Programs. If Hospital disputes any such decision, Hospital shall comply with the decision pending resolution of the dispute through the Appeal Process described in Article IX of this Agreement.

     (b)    Hospital shall use commercially reasonable efforts to cooperate fully with Blue Shield with regard to the Healthcare Effectiveness Data and Information Set ("HEDIS") measurements, audits, guideline development, preventive services utilization, disease/risk management, clinical service monitoring, and quality improvement studies and initiatives.

     (c)    Hospital shall maintain a quality management program pursuant to which Hospital will review, on a prospective, concurrent, and retrospective basis, the quality, appropriateness, and level of care furnished to Medicare Advantage Members. Such quality management program will include, without limitation, an annual evaluation, annual quality management goals, proposed quality management studies, and a description of Hospital's quality management committee. Hospital shall provide advance written notice to Blue Shield of any material change to such quality management program.

2.6    **Service Authorization.** Hospital shall comply with the Authorization procedures and requirements set forth in the Provider Manual, this Section 2.6, and <u>Exhibit D</u> hereto. Hospital understands and agrees that, except in the case of Emergency Services or as otherwise provided in the Provider Manual or <u>Exhibit D</u> hereto, Hospital Services must be Authorized in advance by Blue Shield or its delegate in order for Hospital to be eligible for payment hereunder. In the case of Emergency Services, Hospital shall obtain Authorization

8

blue 🛡 of california

from Blue Shield or its delegate as soon as possible, but in no event later than twenty-four
(24) hours after any admission, or the next occurring non-holiday weekday, whichever is
later. Blue Shield will not retroactively deny Hospital's claims on the basis of Medical
Necessity for services reviewed and Authorized pursuant to the Quality Improvement and
Utilization Management Program, provided that Hospital submitted full and accurate
information to Blue Shield for review under its Quality Improvement and Utilization
Management Program. If Hospital fails to obtain Authorization prior to providing Hospital
Services to a Member, as required, or if Hospital provides services outside of the scope of
the Authorization obtained, then Blue Shield, or its delegate, shall have no obligation to
compensate Hospital for such services; Hospital will be deemed to have waived payment for
such services and shall not seek payment from Blue Shield, its delegate, or the Member
except as otherwise specifically permitted in this Agreement.

2.7    **Cooperation with Discharge Planning.** Hospital shall cooperate fully with Blue Shield or
its delegate in planning and implementing the discharge of Members from Hospital's
facility(ies), including, without limitation, providing Blue Shield's on-site discharge
planning coordinator(s) reasonable access to Hospital's facility(ies) and Members.

2.8    **Physician Access.** Hospital shall provide each Member's treating physician such access to
Hospital's facilities as may be appropriate to provide professional services to the Member,
in accordance with the bylaws, rules, and regulations established by Hospital with the
approval of Hospital's governing board. Members' physicians shall not be denied staff
membership or clinical privileges on the basis of sex, race, age, religion, color, national
original, sexual orientation, disability, or any other criteria lacking professional justification,
nor will such privileges be arbitrarily delayed. If a Member requires the care of a specialist
physician, and no such physician who is a Blue Shield Provider has active privileges at
Hospital, Hospital shall consider, in as rapid a manner as possible, taking into consideration
possible emergency situations, requests from qualified persons for temporary privileges at
Hospital, and shall grant such temporary privileges, provided such persons meet and
conform to the requirements of Hospital's medical staff bylaws and rules and regulations for
temporary privileges.

2.9    **Submission of Physician Hospital Privilege Roster.** Hospital shall provide Blue Shield
with an updated physician hospital privilege roster, preferably in electronic format, at
least annually, as well as upon Blue Shield's request, which shall not exceed two (2)
requests annually.

2.10    **Provider Manual.** Hospital shall comply with the Provider Manual, the terms of which are
incorporated herein by reference. Blue Shield may, in its sole discretion, periodically
modify the Provider Manual. To the extent of any conflict between this Agreement and the
Provider Manual, the terms of this Agreement shall govern. Blue Shield will notify Hospital
sixty (60) days prior to the effective date of any change to the Provider Manual. If Hospital
reasonably concludes that a change to the Provider Manual is material, Hospital shall notify
Blue Shield, in writing, prior to the effective date of the change. Following receipt of
Hospital's notice, Hospital and Blue Shield shall confer in good faith regarding the change

9

# blue 🛡 of california

to find a mutually beneficial resolution. If Hospital and Blue Shield are unable to reach agreement regarding the change within thirty (30) days of Hospital's notice, then, within sixty (60) days of Hospital's notice, Hospital may elect to terminate this Agreement for cause pursuant to Section 10.3 hereof, and the Provider Manual change to which Hospital objected shall not be effective as to Hospital during the termination notice period. During such termination period, both parties agree that any such change will not be effective until mutually agreed upon in writing.

2.11 **Disclosures.** Hospital shall promptly notify Blue Shield in writing at the earliest reasonably practicable date of the occurrence of any of the following events: (a) loss or material restriction of any license or certification required in order for Hospital to provide Hospital Services; (b) loss of accreditation by The Joint Commission; (c) Hospital is excluded or suspended from participation in, ceases to be certified by, or is sanctioned by any state or federal healthcare program, including, without limitation, Medicare or Medi-Cal; (d) Hospital's liability insurance is canceled, terminated, not renewed, or materially modified; (e) Hospital becomes a defendant in a lawsuit filed by a Member or is required or agrees to pay damages to a Member for any reason; (f) any changes to the hospital-based (*i.e.*, emergency, radiology, pathology) physicians or physician groups providing services at Hospital; (g) any labor action or work stoppage that may materially impact Hospital's operations; (h) a petition is filed to declare Hospital bankrupt or for reorganization under the bankruptcy laws of the United States or a receiver is appointed over all or any portion of Hospital's assets; or (i) any act of nature or other event or circumstance which has or reasonably could be expected to have a materially adverse affect on Hospital's ability to perform its obligations under this Agreement. In addition, Hospital shall provide Blue Shield with advance written notice of any proposed material change in the ownership of Hospital, where legally permissible, or the sale of all or substantially all of the assets of Hospital.

## III. OBLIGATIONS OF BLUE SHIELD

3.1 **Directory & Use of Names.**

(a) Blue Shield from time to time shall develop a directory of Blue Shield Providers, which directory shall be distributed and/or made available to Members. Hospital agrees that the following information may be included in Blue Shield's written and electronic directories, marketing materials, and publications provided to present or potential Members and subscriber groups: (a) Hospital's name, address, and phone number; and (b) such other types of information regarding Hospital that are reasonable to include in directories, marketing materials, or publications. If this Agreement is terminated, or the Hospital listing information is or becomes incorrect or incomplete, Blue Shield will have no obligation to correct, delete, or update such listing information until such time as Blue Shield, in its sole discretion, issues a new directory, marketing materials, or publication.

O'Connor Hospital-FFS Hospital Agreement_Base 12-01-10
Base FFS Hospital Agreement v23.0
Proprietary and Confidential -- Blue Shield of California

blue 🛡 of california

    (b)      Hospital may identify itself as a Blue Shield Provider.

    (c)      Except as provided in Sections 3.1(a) and (b), neither party shall use the other party's name, trademark(s), or service mark(s), without the other party's prior written consent, which consent shall not be unreasonably withheld.

3.2    **Administrative Services.**  Blue Shield shall perform those services incident to the administration of a health care service plan, including, without limitation, processing enrollment applications and adjudicating claims for Covered Services that are the payment responsibility of Blue Shield.

3.3    **Disclosure of Information.**  Blue Shield shall make available to Hospital, upon contracting and upon written request, such information as is required by Sections 1300.71(l) and (o) of Title 28 of the California Code of Regulations. Blue Shield shall make such information available in the Provider Manual and on the provider portal of Blue Shield's website at www.blueshieldca.com.

## IV.  ELIGIBILITY OF BLUE SHIELD MEMBERS

4.1    **Identification Cards & Verification.**  Blue Shield shall issue identification cards to Members, as set forth in the Provider Manual. Production of such identification cards shall be indicative of, but not conclusive of, a person's status as a Member. Blue Shield shall provide or shall make available to Hospital, in formats that may be accessed by Hospital electronically or telephonically, information regarding Member status.

4.2    **Verification of Eligibility.**  Hospital shall verify the eligibility of Members, in accordance with the Provider Manual. If Hospital fails to verify Member eligibility in accordance with the Provider Manual, Blue Shield shall have no obligation to compensate Hospital for any services provided to patients who are not Members at the time such services are rendered. Hospital shall be entitled to reasonably rely on verification of Member eligibility provided by Blue Shield. If Hospital provides Authorized Hospital Services in reasonable reliance upon verification of a patient's eligibility provided by Blue Shield, and such patient is subsequently determined not to have been a Member at the time services were provided, Blue Shield shall compensate Hospital for such Authorized Hospital Services at the rates set forth herein, less amounts, if any, due to Hospital from any other health care service plan, insurer or third party payor (including Medicare) by which such patient is covered.

## V.  BILLING, COMPENSATION & CHARGE MASTER OBLIGATIONS

5.1    **Claims Submission.**  Hospital shall bill Blue Shield for Hospital Services as follows:

    (a)      Hospital shall bill Blue Shield according to Hospital's Charge Master.

11

# blue 🛡 of california

(b)      Hospital shall bill Blue Shield once for every thirty (30) consecutive days that a Member receives Hospital Services.  If Hospital provides Hospital Services to a Member for a period fewer than thirty (30) consecutive days (including any such time period following a thirty (30) day period for which Hospital has already billed Blue Shield), then Hospital shall bill Blue Shield for such shorter period of time.

(c)      Hospital shall submit claims to Blue Shield within one hundred eighty (180) days following the end of each period described in Section 5.1(b).  If Blue Shield is not the primary payor under the coordination of benefits rules described in Section 5.2(e), Hospital shall submit claims to Blue Shield within one hundred eighty (180) days following the date payment or denial is received by Hospital from the primary payor.  Blue Shield may deny payment for any claims not received by Blue Shield within one hundred eighty (180) days of the end of any such period or date.  If Hospital fails to submit a claim in a timely fashion, as set forth in this Section 5.1, Hospital waives its right to any remedies and to pursue the claim further, and may not initiate a demand for arbitration or other legal action against Blue Shield or bill the Member for Hospital Services for which Blue Shield so denied payment; provided, however, that Blue Shield shall, upon submission of a Provider Appeal by Hospital, consider good cause for late submission of a claim denied as untimely.

(d)      Hospital shall use best efforts to submit claims electronically, following the procedures set forth in the Provider Manual.  If, despite best efforts, Hospital cannot submit claims electronically, Hospital shall submit paper claims using a Form UB-04, or any successor form approved by the California Hospital Association, which includes all information required by the Provider Manual so long as such requirements are consistent with applicable law.  In either case, payment by Blue Shield will be made only upon receipt of a complete claim submitted by Hospital in accordance with this Agreement.

(e)      In the adjudication of claims for payment hereunder, Blue Shield may request from Hospital, and Hospital shall provide to Blue Shield, such records as Blue Shield reasonably deems necessary to confirm that individually billed services(s) were rendered and/or were Medically Necessary.

(f)      Notwithstanding the forgoing provisions of this Section 5.1, if Hospital provides Hospital Services to a Member and such Hospital Services are the financial responsibility of a Blue Shield Provider (including Hospital) who is capitated by Blue Shield for such Hospital Services, Hospital agrees that Hospital shall submit billings to and seek payment from such capitated provider for Covered Services.  In the event Hospital is unable to obtain payment from such capitated provider, for a complete claim, within two (2) billing cycles of the original date of submission and Hospital has: (i) complied with all terms and conditions of its agreement (if any) with the capitated provider; and (ii) to the extent applicable, complied with all applicable terms and conditions, including but not limited to

12

# blue 🛡 of california

any Authorization requirements, contained in the Provider Manual and this Agreement, Hospital shall provide written notification, by certified mail, return receipt requested, to Blue Shield and the applicable capitated provider. Blue Shield shall, within sixty (60) days of receipt of notice, seek to resolve the non-payment by the capitated provider. If after such sixty (60) days the non-payment has not been resolved and Blue Shield reasonably determines that such amount is due Hospital, to the extent permitted by any applicable agreement between Blue Shield and the capitated provider, Blue Shield shall use reasonable efforts to pay the amount due Hospital for Covered Services and deduct and offset such payment from any amount then or thereafter payable by Blue Shield to the capitated provider. Hospital agrees that, in the event that another capitated provider is financially responsible for such Covered Services and that capitated provider does not have an agreement in effect with Hospital, payment by Blue Shield on behalf of that capitated provider may be made in accordance with the compensation terms set forth in this Agreement. Notwithstanding the foregoing, in the event that a capitated provider fails to pay Hospital for a claim due to the capitated provider's insolvency or bankruptcy, Hospital and Blue Shield agree that Blue Shield shall not be liable for such claims and the terms of this Section 5.1(c) shall be of no force or effect.

5.2    **Compensation Amounts.**  In exchange for the provision of Hospital Services pursuant to this Agreement, Blue Shield shall pay Hospital in accordance with the following:

(a)    In exchange for Hospital Services provided to Members enrolled in a Blue Shield commercial Benefit Program, Blue Shield shall pay Hospital the lesser of: (i) one hundred percent (100%) of Hospital's Allowed Charges, and (ii) the reimbursement rates set forth in Exhibit C hereto, in either case, less any applicable Copayment.

(b)    In exchange for Hospital Services provided to Members enrolled in a Blue Shield Medicare Advantage Benefit Program, Blue Shield shall pay Hospital the lesser of: (i) one hundred percent (100%) of Hospital's Allowed Charges, (ii) the reimbursement rates set forth in Exhibit C hereto, or (iii) ninety-seven percent (97.0%) of the reimbursement established by the Medicare program for inpatient services and one-hundred percent (100%) of the reimbursement rates established by the Medicare program for outpatient services, less any applicable Copayment.

(c)    If, after the Effective Date, Hospital adds to its hospital license a new category of service or service unit (a "New Service") or if Hospital adds a category of service or a new service unit which involves new technology and requires a significant investment in equipment, has a materially higher cost of operation, and is of the type or nature which is customarily carved out as a separate reimbursement category (a "New Technology Service"), the terms of this Agreement will apply to such New Service and/or New Technology Service as reasonably determined by Blue Shield. Prior to the implementation of such New Service and/or New Technology Service, Hospital shall have the option of providing Blue Shield with sixty (60) days prior

13

# blue 🛡 of california

written notice of any such addition and requesting that both parties meet and confer in good faith to discuss altering the terms of this Agreement to establish a unique reimbursement rate applicable to such service on a prospective basis only. Beginning sixty (60) days after proper notice is received by Blue Shield and continuing until such a time as Blue Shield and Hospital have negotiated and agreed upon a new reimbursement rate, Hospital shall accept seventy five percent (75%) of Hospital's Allowed Charges as payment for such service(s).

(d)     Payment for Hospital Services shall be made by Blue Shield within the time-frames mandated by applicable state or federal law, following receipt of all reasonably necessary information. Hospital shall use best efforts to accept payment for Hospital Services and receive related explanations of benefits ("EOBs") via electronic funds transfer ("EFT") and electronic remittance advice ("ERA"), respectively.

(e)     Coordination of benefits, benefit determinations under the Medicare Secondary Payor rules, and Workers' Compensation recoveries shall be conducted by Hospital in accordance with the procedures set forth in the Provider Manual. Notwithstanding Section 5.1 or the foregoing provisions of this Section 5.2, if Blue Shield is not the primary payor under coordination of benefit rules, Hospital shall not make any demand for payment from Blue Shield until all primary sources of payment have been pursued.  In such cases, Blue Shield's financial obligation for Hospital Services shall be limited to the amount, if any, which, when added to the amount obtained by Hospital from all primary payors, equals the amount of compensation to which Hospital is entitled under this Agreement for such Hospital Services.

(f)     Hospital agrees to accept payment pursuant to this Section 5.2, together with applicable Copayments payable by a Member, and coordination of benefit collections and third party recoveries allowed under this Agreement, as payment in full for Hospital Services.

(g)     Hospital has agreed that Hospital will not at any time between the Effective Date and the Rate Loading Date (as defined below) submit to Blue Shield claims for Hospital Services furnished on or after the Effective Date.  For purposes of this provision, the "Rate Loading Date" shall be defined as the earlier of (i) the date that the rates set forth herein are loaded into Blue Shield's claims payment system, and the thirtieth (30th) day following receipt by Blue Shield of this Agreement, executed by Hospital. Blue Shield shall notify Hospital of the Rate Loading Date.

5.3     **Copayments.** Hospital shall collect and retain, as additional compensation, the Member's applicable Copayment for Hospital Services provided by Hospital.  Copayments for Hospital Services shall be calculated based on the lesser of:  (i) the applicable Charge Master rate, and (ii) the applicable reimbursement rates set forth in Exhibit C hereto. Hospital shall not waive a Member's Copayment obligation.

14

blue 🛡 of california

5.4   **Overpayment Recoveries.** Blue Shield may request in writing with documentation a refund of any overpayment it has made to Hospital, within three hundred sixty-five (365) days of the date the payment was made, unless the overpayment was the result of fraud or misrepresentation on the part of Hospital (in which case, Blue Shield shall not be so time-barred from seeking such a refund).   Blue Shield's procedures for notification of overpayments and notification of recovery of overpayments shall comply with Section 1300.71(d) of Title 28 of the California Code of Regulations. In addition, if Blue Shield determines Hospital has overcharged an individual properly identified as a Member of an Other Payor (as defined in Section 11.1), upon written notification by Blue Shield of such overcharge, Hospital shall promptly refund such overpayment to Blue Shield, such Other Payor or to the Member, as applicable.

5.5   **Charge Master Notifications.** Hospital shall provide Blue Shield with notification relating to changes in Hospital's Charge Master as follows:

   (a)   Hospital shall notify Blue Shield in writing no fewer than thirty (30) days prior to implementing any change(s) to Hospital's Charge Master that, in the aggregate, exceed(s) eight (8%) percent.   No modification to the Charge Master or the rates charged by Hospital shall be applicable to Hospital Services provided to Members, nor effective with respect to this Agreement, until thirty (30) days following Hospital's written notice to Blue Shield pursuant to this Section 5.5(a). Notwithstanding the foregoing, Hospital shall have no obligation to notify Blue Shield of any Charge Master increases resulting from routine Charge Master maintenance items that are both: (i) Nominal (as defined below); and (ii) implemented to accommodate new Hospital services, to update miscellaneous charge codes for unique, patient-specific items, or to update Hospital's underlying pharmaceutical or Implant (as defined in Exhibit C) purchase costs. For purposes of this Section 5.5, "Nominal" Charge Master increases are, in aggregate, less than one percent (1%) in any Charge Master Year.

   (b)   In addition to any notice required by Section 5.5(a), on the first business day of each calendar quarter, Hospital shall provide Blue Shield with written confirmation, on such form as may be provided to Hospital by Blue Shield, indicating whether Hospital did or did not implement any changes in its Charge Master during the prior calendar quarter.

5.6   **Adjustments Resulting From Charge Master Increases**

   (a)   In the event of a cumulative increase in Hospital's Charge Master, either on a single date or over a period of time during any Charge Master Year, that exceeds Charge Master "Modification Allowance" set forth in Section 5.6(d), Blue Shield may decrease all percentage of Allowed Charges-based reimbursement payable pursuant to Section 5.2 by the amount of the increase, less the Modification Allowance. Such decrease shall be effective as of the effective date of the most recent modification to Hospital's Charge Master which caused Hospital to exceed the Modification

15

# blue 🛡 of california

Allowance, shall be applied to all successive rate periods thereafter, and shall be calculated as follows:

$$[(1 + \text{Modification Allowance}) / (1 + \text{Actual Charge Master Increase})]$$
$$\text{x (Current \% of Allowed Charges)}$$
$$= \text{Adjusted \% of Allowed Charges}$$

### Example
5% Modification Allowance, 15% Actual Charge Master Increase,
55% of Allowed Charge rate,
(1.05 / 1.15) x 55.0% = 50.2%

(b)    In the event of a cumulative increase in Hospital's Charge Master, either on a single date or over a period of time during any Charge Master Year, that exceeds Charge Master "Modification Allowance" set forth in Section 5.6(d), Blue Shield may increase the Stop Loss Attachment Level set forth in Exhibit C by the amount of the increase, less the Modification Allowance. Such increase shall be effective as of the effective date of the most recent modification to Hospital's Charge Master which caused Hospital to exceed the Modification Allowance, shall be applied to all successive rate periods thereafter, and shall be calculated as follows:

$$[(1 + \text{Actual Charge Master Increase}) / (1 + \text{Modification Allowance})]$$
$$\text{x (Current Stop Loss Attachment Level)}$$
$$= \text{Adjusted Stop Loss Attachment Level}$$

### Example
5% Modification Allowance, 15% Actual Charge Master Increase,
$70,000 current Stop Loss Attachment Level,
(1.15 / 1.05) x $70,000 = $76,667

(c)    If Blue Shield is entitled to make any adjustment pursuant to Section 5.6(a) or (b), Blue Shield will provide Hospital with an Addendum to this Agreement revising the then current and all subsequently effective compensation exhibits (Exhibit Cs) to reflect the changes to the percentage of Allowed Charges-based reimbursement and Stop Loss Attachment Level(s) resulting from Charge Master increases exceeding the Modification Allowance. Such Addendum shall be effective as of the effective date of the most recent modification to Hospital's Charge Master which caused Hospital to exceed the Modification Allowance and, notwithstanding anything in Section 12.2 to the contrary, shall be deemed effective with the written consent of Hospital.

(d)    Hospital's Charge Master "Modification Allowance" is Eight percent (8%).

O'Connor Hospital-FFS Hospital Agreement_Base 12-01-10
Base FFS Hospital Agreement v23.0
Proprietary and Confidential – Blue Shield of California

# blue 🛡 of california

5.7 **Right to Audit Charge Master.** Blue Shield shall have the right to audit Hospital's Charge Master within 12 months from the end of the applicable Charge Master Year to enforce the parties' respective rights and obligations under Sections 5.5 and 5.6 of this Agreement.

5.8 **Late Charge Master Notification Recoveries.** If Hospital fails to give Blue Shield timely notice of any change to Hospital's Charge Master in accordance with Section 5.5 hereof, and pursuant to Section 5.6 such change would have resulted in a change to the percentage of Allowed Charges-based reimbursement paid to Hospital pursuant to Section 5.2, Blue Shield shall have the right to recalculate payments made to Hospital for Hospital Services furnished after the effective date of such change and to recover overpayments resulting from the resulting reduction in the percentage of Allowed Charges-based reimbursement according to the terms of Section 5.4.

5.9 **Blue Card Claims.** Hospital will make reasonable efforts to submit claims to Blue Shield for Hospital Services reimbursable through the Blue Card Program.

## VI. PROTECTION OF MEMBERS

6.1 **Non-discrimination.** Except as otherwise provided in this Agreement, Hospital shall provide Hospital Services to Members in the same manner, in accordance with the same standards, and with the same level of availability as Hospital provides services to its other patients. Hospital shall not discriminate against any Member in the provision of Hospital Services on the basis of race, sex, color, religion, national origin, ancestry, age, marital status, physical or mental handicap, health status, disability, need for medical care, utilization of medical or mental health services or supplies, sexual preference or orientation, veteran's status, health insurance coverage, status as a Member, or other unlawful basis including without limitation, the filing by a Member of any complaint, grievance, or legal action against Hospital.

6.2 **Charges to Members.**

(a) Except as expressly set forth in this Agreement, in no event, including, without limitation, nonpayment by Blue Shield or Blue Shield's insolvency or breach of this Agreement, shall Hospital bill, charge, collect a deposit from, impose a surcharge on, seek compensation, remuneration, or reimbursement from, or have any recourse against, a Member, or any individual responsible for such Member's care, for Covered Services. Without limiting the foregoing, Hospital shall not seek payment from a Member, or any individual responsible for such Member's care, for Covered Services for which payment was denied by Blue Shield because the bill or claim for such Covered Services was not timely or properly submitted or because such Covered Services were related to a HAC or Never Event (as set forth in Section III.B of Exhibit C hereto). If Blue Shield receives notice of a violation of this Section 6.2, Blue Shield shall notify Hospital and Hospital shall

17

# blue 🛡 of california

have the opportunity to refund the Member.  If Hospital does not refund the Member for amounts charged in violation of this Section 6.2 within a reasonable amount of time, Blue Shield shall have the right to take all appropriate action, including, without limitation, reimbursing the Member for the amount of any payment made and recouping the amount of such payment from Hospital.

(b)    Hospital shall not bill or collect from a Member, or any individual responsible for such Member's care, any charges in connection with non-Covered Services, non-Authorized services, or services determined not to be Medically Necessary, unless Hospital has first obtained a written acknowledgment from the Member, or the individual responsible for the Member's care, that such services are not Covered Services, not Authorized, or not Medically Necessary, as the case may be, and that the Member, or the individual responsible for the Member's care, is financially responsible for the cost of such services.  Such acknowledgment shall be obtained prior to the time such services are provided to the Member, when reasonably practicable, and shall specify the specific services for which the Member, or the individual responsible for the Member's care, is agreeing to accept financial responsibility, and shall otherwise satisfy the applicable requirements set forth in the Provider Manual.  Hospital's compliance with the terms of this Section 6.2(b) shall preserve for Hospital its right to seek payment from the responsible party for applicable services.

(c)    In the event of Blue Shield's insolvency or other cessation of operations, Hospital shall continue to provide Hospital Services to Members through the period for which such Members' premiums have been paid or, with respect to Members enrolled in Blue Shield's Medicare Advantage Benefit Program, the duration of the contract period for which CMS payments have been made, and, with respect to any Member who is an Inpatient on the date of insolvency or other cessation of operations, until the Member's discharge or transfer to another appropriate facility.

(d)    The provisions of this Section 6.2 shall:  (i) survive the expiration or termination for any reason of this Agreement; (ii) be construed to be for the benefit of Members; and (iii) supersede any oral or written contrary agreement (now existing or hereafter entered into) between Hospital and the Member.

(e)    This Section 6.2 shall not be modified without the prior approval of the appropriate government regulatory agency.

6.3    **Third Party Liens.**  If a Member seeks and obtains a recovery from a third party or a third party's insurer for injuries caused to that Member, and only to the extent permitted by the Member's Evidence of Coverage and by state and federal law, Hospital shall have the right to assert a third party lien for and to recover from the Member the reasonable value of Covered Services provided to the Member by Hospital for the injuries caused by the third party.  Hospital's pursuit and recovery under third party liens shall be conducted in strict accordance with the procedures set forth in the Provider Manual.  Blue Shield shall similarly

18

blue 🛡 of california

have the right to assert a lien for and recover for payments made by Blue Shield for such injuries. Both parties shall cooperate in identifying such third party liability claims and in providing such information, within such time frames, as set forth in the Provider Manual.

6.4   **Benefits Determination.**   Blue Shield reserves the right to make all final decisions regarding Benefit Program coverage. Hospital shall refer Members who have inquiries or disputes regarding such coverage to Blue Shield for response or resolution. Notwithstanding the foregoing, this Section does not, and shall not be construed to, prohibit any physician from providing any medical treatment, or other advice that such physician believes to be in the best interest of the patient.

6.5   **Member Complaints & Grievances.**   Hospital shall promptly notify Blue Shield of receipt of any claims, including, without limitation, professional liability claims, filed or asserted by a Member against Hospital. Hospital shall cooperate with Blue Shield in identifying, processing, and resolving all Member grievances and other complaints in accordance with Blue Shield's complaint/grievance process and time limits set forth in the Provider Manual, as well as in accordance with such time limits as required by state and/or federal law. Hospital shall comply with Blue Shield's resolution of any such complaints or grievances and any specific findings, conclusions or orders of the California Department of Managed Health Care ("DMHC") (or any successor agency).

6.6   **Medical Necessity Assistance.**   Both parties agree, in the event that Blue Shield or its delegate is making or has made a determination regarding the Medical Necessity of a medical service requested or provided to a Member, Hospital will assist Blue Shield and/or its delegate in determining or verifying the Medical Necessity of such service, provide relevant medical records to Blue Shield and/or its delegate, and participate in any grievance, arbitration, and/or other proceedings in which such Medical Necessity determination is an issue. In addition, Hospital shall cooperate with and abide by the Medical Necessity determination of any external review entity to which Blue Shield is either obligated by law to submit such disputes or with which Blue Shield has implemented a program to submit such disputes to external review.

6.7   **Free Exchange of Information.**   No provision of this Agreement shall be construed to prohibit, nor shall any provision in any contract between Hospital and its employees or subcontractors prohibit, the free, open and unrestricted exchange of any and all information of any kind between health care providers and Members regarding the nature of the Member's medical condition, available health care treatment options and alternatives and their relative risks and benefits, whether or not covered or excluded under the Member's Benefit Program, and the Member's right to appeal any adverse decision made by Hospital or Blue Shield regarding coverage of treatment that has been recommended or provided. Hospital shall neither penalize nor sanction any health care provider in any way for engaging in such free, open, and unrestricted communication with a Member or for advocating for a particular service on a Member's behalf.

6.8   **Insurance.**

O'Connor Hospital-FFS Hospital Agreement_Base 12-01-10
Base FFS Hospital Agreement v23.0
Proprietary and Confidential – Blue Shield of California

blue 🛡 of california

(a)     Hospital shall maintain professional liability (malpractice) insurance and general liability insurance coverage in the minimum amount of One Million Dollars ($1,000,000) per occurrence and Three Million Dollars ($3,000,000) annual aggregate. If Hospital maintains a "claims made" malpractice insurance policy, Hospital shall keep such policy in effect for at least five (5) years following the expiration or termination for any reason of this Agreement, or purchase extended reporting coverage (tail insurance) sufficient to ensure that insurance coverage in the amount set forth in this Section 6.8(a) is maintained for claims which arise from services provided by Hospital during the term of this Agreement.

(b)     Hospital shall maintain Workers' Compensation insurance covering all employees of Hospital.

(c)     Hospital shall notify and provide evidence to Blue Shield at the time of any amendment, change, or modification to such insurance coverage, and at any other time upon reasonable request by Blue Shield.

## VII.  MEDICAL RECORDS & CONFIDENTIALITY

7.1     **Medical Records.**  Hospital shall prepare and/or maintain complete, timely and accurate medical and other records with respect to services provided to Members, in the same manner as for other patients of Hospital. Hospital will require that all physicians treating Members at Hospital's facility(ies) create and maintain, in an accurate and timely manner, for each Member who has obtained care from such physician, a medical record that is organized in a manner that contains such demographic and clinical information as is necessary, in the opinion of the Blue Shield medical director and the Hospital medical director, to adequately document the medical problems of, and medical services provided to, the Member. Such records shall include a historical record of diagnostic and therapeutic services recommended or provided by, or under the direction of, the physician. Such records shall be in such a form as to allow trained health professionals, other than the physician, to readily determine the nature and extent of the Member's medical problem and the services provided and to permit peer review of the care provided. Such records shall, upon request, and within reasonable time requirements, be made available without charge to Blue Shield, its designated agents and to a Member's other providers. Hospital understands and agrees that neither Blue Shield (including any delegate) nor a Member shall be required to reimburse Hospital for expenses related to providing copies of Member records or documents pursuant to a request from any Government Official (as defined in Section 8.1(a)) or in order to assist Blue Shield (or its delegate) in utilization management and/or quality control activities. Copies of medical records requested by Blue Shield for any other purpose shall be reimbursed at a rate of Twenty-Five Cents ($0.25) per page, not to exceed Twenty-Five Dollars ($25) per medical record.   In addition, upon request Hospital shall, without charge, transmit Member's

20

blue 🛡 of california

medical record information to Government Officials. Hospital shall secure from the Member, upon admission or prior to providing services, a release of medical information, if such a release is required by law.

7.2 **Confidentiality.** Hospital shall comply with all applicable state and federal laws regarding privacy and confidentiality of medical information and records, including without limitation, mental health records. Hospital shall develop policies and procedures to ensure Member medical records are not disclosed in violation of California Civil Code Section 56, et. seq., or any other applicable state or federal law. To the extent Hospital receives, maintains, or transmits medical or personal information of Members electronically, Hospital shall comply with all state and federal laws relating to protection of such information including, without limitation, the Health Insurance Portability & Accountability Act ("HIPAA") provisions on security and confidentiality and any Centers for Medicare and Medicaid Services ("CMS") regulations or directives relating to Medicare beneficiaries.

7.3 **Member Access to Records.** Hospital shall ensure that Members have access to their medical records, in accordance with the requirements of state and federal law.

## VIII. COOPERATION WITH AUDITS & CERTIFICATIONS

8.1 **Disclosure of Records.**

(a)     Hospital shall comply with all provisions of the Omnibus Reconciliation Act of 1980 regarding access to books, documents, and records. Without limiting the foregoing, Hospital shall maintain such records and provide access to such books, documents, and records to Blue Shield and to the DMHC (or any successor agency) CMS, any Peer Review Organization ("PRO") with which Blue Shield contracts as required by CMS, the U.S. Comptroller General, their respective designees and any other governmental officials entitled to such access by law (collectively, "Government Officials"), as required by law and as necessary for compliance by Blue Shield with state and federal laws governing Blue Shield. Hospital shall grant to Blue Shield and/or Government Officials, upon request and within a reasonable amount of time, access to and copies of the medical records, books, charts, and papers relating to Hospital's provision of health care services to Members, the cost of such services, and payment received by Hospital from the Member (or from others on the Member's behalf), and to the financial condition of Hospital. Such records described herein shall be maintained at least six (6) years from date of service or in the case of financial records of Hospital, six (6) consecutive fiscal years, and, if this Agreement is applicable to Blue Shield's Medicare Advantage program, ten (10) years from the close of CMS's fiscal year in which the contract was in effect (or for a particular record or group of records, a longer time period when CMS or DMHC requests such longer record retention and Hospital is notified of such request by Blue Shield), and in no event for a shorter period than as may be required by the Knox-Keene Act and the regulations promulgated thereunder. All

21

# blue 🛡 of california

books, document and records of Hospital shall be maintained in accordance with the general standards applicable to such book, document or record keeping and shall be maintained during any governmental audit or investigation.

(b)    Hospital shall, on request, disclose to Government Officials the method and amount of compensation or other consideration to be received by it from Blue Shield or payable by Hospital to its subcontractors. Hospital shall maintain and make available to Government Officials: (i) its subcontracts; and (ii) compensation/financial records relating to such subcontracts and compensation from Blue Shield.

(c)    Upon forty-eight (48) hours prior notice, Hospital shall make any records of its quality improvement and utilization review activities pertaining to Members and provider credentialing files available to Blue Shield's Quality and Utilization Review Committee. Such sharing of records shall be in accordance with, and limited as required by, Section 1157 of the California Evidence Code and Section 1370 of the California Health and Safety Code, and shall not be construed as a waiver of any rights or privileges conferred on either party by those statutes.

(d)    Blue Shield, at its sole cost and expense, and with reasonable prior notice to Hospital, may from time to time audit the books and records of Hospital as they relate to Hospital's services, billings, claims payments, and reporting pursuant to this Agreement. Blue Shield and Hospital agree that such audits shall be performed in accordance with Hospital's established and reasonable audit policies.

8.2    **Site Evaluations.**  Hospital shall permit Government Officials and accreditation organizations to conduct periodic site evaluations and inspections of its facilities and records. If a Government Official or accreditation organizations finds any deficiencies in such facilities or records, Hospital shall substantially correct such deficiencies within thirty (30) days of receipt of notice from such Government Official or accreditation organizations. Hospital shall permit Blue Shield to conduct periodic site evaluations of its facilities. Such site evaluations shall be at a reasonable time as mutually agreed by Hospital and Blue Shield. If Blue Shield finds any deficiencies in such facilities Hospital shall use commercially reasonable efforts to correct such deficiencies within thirty (30) days of receipt of notice from Blue Shield. Hospital and Blue Shield agree that Blue Shield's access to and right to review records pertaining to Members shall be pursuant to Sections 7.1 and 8.1, as applicable.

8.3    **Accreditation Surveys.**  Hospital shall cooperate in the manner described in Sections 8.1 and 8.2 hereof with respect to surveys and site evaluations relating to accreditation of Blue Shield by the National Committee For Quality Assurance ("NCQA") or any other accrediting organization. Hospital further agrees to promptly implement any changes Blue Shield deems reasonably required as a result of any such survey.

22

# blue ♥ of california

8.4    **Compliance Monitoring.** Hospital shall cooperate with Blue Shield in the performance of any monitoring, studies, evaluations, analyses, or surveys of Hospital's performance of services hereunder, required by Government Officials or accrediting organizations.

## IX. RESOLUTION OF DISPUTES

9.1    **Provider Appeal Resolution Process.**

(a)    Blue Shield's Provider Appeal resolution process ("Appeal Process") shall apply to any and all disputes arising under this Agreement. The Appeal Process shall comply with Sections 1367(h), 1371, 1371.1, 1371.2, 1371.22, 1371.35, 1371.36, 1371.37, 1371.4, and 1371.8 of the California Health & Safety Code, and Sections 1300.71, 1300.71.38, 1300.71.4, and 1300.77.4 of Title 28 of the California Code of Regulations. The Appeal Process shall be described in the Provider Manual and on the provider portal of Blue Shield's website at www.blueshieldca.com.

(b)    The Appeal Process consists of two (2) levels:

(i)    *Initial Appeals Process.* Provider Appeals must be submitted by Hospital, in writing, within three hundred sixty-five (365) days of Blue Shield's determination, lack of action or alleged breach, to the address for Initial Provider Appeals provided on the provider portal of Blue Shield's website at www.blueshieldca.com.

(ii)    *Final Appeal Process.* Any Provider Appeal that is not resolved to Hospital's satisfaction during the Initial Appeal Process must be submitted to the Final Appeal Process. All Provider Appeals must be submitted to the Final Appeal Process by Hospital, in writing, within ninety (90) working days of Blue Shield's Initial Provider Appeal determination, to the address for such Provider Appeals provided on Blue Shield's website at www.blueshieldca.com.

(c)    Each Provider Appeal must contain the following information:

(i)    Hospital's name;

(ii)    Hospital's identification number – the Blue Shield provider identification number (PIN), tax identification number, or National Provider Identifier (NPI);

(iii)    Hospital mailing address and phone number;

(iv)    Blue Shield's Internal Control Number (ICN), when applicable;

(v)    The patient's name, when applicable;

23

# blue 🛡 of california

(vi)     The patient's Blue Shield subscriber number, when applicable;

(vii)    The date of service, when applicable; and

(viii)   A clear explanation of the issue the provider believes to be incorrect, including supporting medical records, when applicable.

(ix)     In addition, as applicable, bundled appeals must identify individually each item by using either the ICN or the section of the contract and sequential numbers that are cross-referenced to a document or spreadsheet.

(d)  This Section 9.1 does not in any way modify the provisions of Section 9.2 hereof relating to arbitration of disputes that cannot be resolved through the Appeal Process. However, if Hospital fails to submit a Provider Appeal to either level of the Appeal Process within the timeframes set forth above, Hospital shall be deemed to have waived its right to any remedies and to pursue the matter further. Without limiting the foregoing, in such instance, Hospital may neither initiate a demand for arbitration pursuant to Section 9.2 of this Agreement nor pursue additional payment from the Member.

(e)  Blue Shield and Hospital agree to submit any disputes that cannot be resolved by the Appeal Process to binding arbitration pursuant to Section 9.2 of this Agreement. Pursuit by Hospital of a dispute through the process described in this Article IX shall neither modify nor relieve Hospital of any obligations to continue to provide services to Members in accordance with and to comply with all terms of this Agreement.

9.2   **Arbitration of Disputes.** Any dispute (other than a claim of medical malpractice) between the parties that exceeds the jurisdiction of Small Claims Court and that was reviewed through, but not resolved by, the Appeal Process set forth in Section 9.1, shall be settled by final and binding arbitration in San Francisco, Los Angeles, San Diego or Sacramento, California, whichever city is closest to Hospital. Arbitration shall be conducted by and under the Commercial Rules of the American Arbitration Association. The arbitration decision shall be binding on both parties. The arbitrator shall be bound by applicable state and federal law and shall issue written findings of fact and conclusions of law. The arbitrator shall have no authority to award damages or provide a remedy that would not be available to such prevailing party in a court of law nor shall the arbitrator have the authority to award punitive damages. The cost of the arbitration shall be shared equally by Hospital and Blue Shield; provided that each party shall be responsible for its own attorneys' fees and costs.

9.3   **Limitation of Actions.** A demand for arbitration pursuant to Section 9.2 must be filed within twenty-four (24) months of Blue Shield's determination, lack of action or alleged breach that is the subject of the dispute. Should the aggrieved party fail to file a demand for arbitration of the dispute within the timeframe set forth herein, the aggrieved party shall have waived its rights and remedies with respect to the alleged breach. The

24

# blue ⓦ of california

aggrieved party shall have no right to pursue any remedy with respect to such alleged breach, including, without limitation, initiation of any civil action in state or federal court, and, if the aggrieved party is Hospital, Hospital shall have no right to pursue payment of any disputed amounts from the Member.

## X. TERM & TERMINATION

10.1 **Term.** Unless earlier terminated under the Termination for Cause Section 10.3, and the Immediate Termination Section 10.4, this Agreement shall become effective as of the Effective Date (December 1, 2010), and shall continue in effect for three (3) years thereafter (November 30, 2013) (the "Initial Term"), unless earlier terminated as set forth in this Agreement. Unless either party notifies the other party at least one hundred eighty (180) days prior to the expiration of the Initial Term, this Agreement shall automatically renew for additional terms of one (1) year each, unless and until terminated as set forth in this Agreement

10.2 **Termination Without Cause.** During the Initial Term, neither party may terminate this Agreement without cause. Thereafter, either party may terminate this Agreement without cause by giving to the other party at least one hundred eighty (180) days prior written notice of termination. Any termination pursuant to this Section 10.2 shall become effective the first day of the calendar month following the expiration of the notice period.

10.3 **Termination for Cause.**

(a) Either party may terminate this Agreement for material cause, following written notice and the opportunity to cure described in Section 10.3(b). The following shall constitute material cause for termination:

(i) *By Hospital:* (A) revocation of Blue Shield's license necessary for the performance of this Agreement; (B) breach by Blue Shield of any material term, covenant, or condition of this Agreement; or (C) failure of Blue Shield and Hospital to agree upon any material change to the Provider Manual in accordance with Section 2.10.

(ii) *By Blue Shield:* (A) commencement of any voluntary or involuntary proceedings by or against Hospital, or a parent, affiliate or subsidiary thereof, under any bankruptcy, reorganization, insolvency or other similar law of any jurisdiction; (B) failure by Hospital to provide Hospital Services consistent with the standards and/or procedures set forth in this Agreement and/or any material standards and/or procedures in the Provider Manual; (C) revocation, termination, or restriction of any type of any license required in order for Hospital to provide Hospital Services pursuant to this Agreement; or (D) breach by Hospital of any material term, covenant, or condition of this Agreement, including, without limitation, repeated failure to comply with procedures set forth in the Provider Manual.

25

# blue 🛡 of california

(b)     A party seeking to terminate this Agreement pursuant to Section 10.3(a) shall notify the other party in writing of the nature of the cause and shall provide the non-terminating party thirty (30) days from the receipt of such notice to cure or otherwise eliminate such cause. If, within such thirty (30) days, the non-terminating party does not remedy the breach, to the reasonable satisfaction of the terminating party, this Agreement shall terminate at the end of the thirty (30) day period.

10.4    **Immediate Termination.**    Notwithstanding any provision of this Agreement to the contrary, Blue Shield may immediately terminate this Agreement, upon written notice to Hospital, if: (i) Hospital is excluded from participation in Medicare; (ii) Hospital enters into a "private contract" with a Member for the provision of services, contrary to Medicare regulations applicable to Blue Shield (iii) Hospital fails to maintain all insurance required herein; (iv) after consulting with Hospital, Blue Shield determines, in good faith, that continuation of this Agreement may reasonably be expected to jeopardize the health, safety, or welfare of Members; or (v) after consulting with Hospital, Blue Shield reasonable determines that Hospital is likely to be financially unable to provide Hospital Services in a competent and timely manner.

10.5    **Effect of Termination.**    As of the date of termination, this Agreement shall be considered of no further force or effect whatsoever, and each of the parties shall be relieved and discharged herefrom, except that:

(a)     Termination shall not affect: (i) those rights and obligations that have accrued and remain unsatisfied prior to the termination of this Agreement; (ii) those rights and obligations that expressly survive termination of this Agreement; or (iii) any rights or obligations that may arise following termination with respect to any occurrence prior to termination. All such rights and obligations shall continue to be governed by the terms of this Agreement.

(b)     Following termination, Hospital shall comply with all applicable requirements of the Knox-Keene Act and the regulations promulgated thereunder, including, without limitation, those set forth in California Health & Safety Code Section 1373.65.

(c)     Following termination, Hospital shall continue providing Hospital Services to Members who, as determined by Blue Shield, qualify for completion of Covered Services under California Health & Safety Code Section 1373.96(c) ("Continuity of Care Services"), in accordance with the provisions therein, at seventy-five (75%) percent of Allowed Charges.

(d)     Following termination, Hospital shall, at Blue Shield's option, continue providing Hospital Services to Members (other than Members entitled to Continuity of Care Services) undergoing medical treatment upon the date of termination of this Agreement, for the duration of the Health Services Contracts through which such Members are enrolled with Blue Shield and for which dues or subscription charges are paid to Blue Shield, or until such time as Blue Shield has arranged for an alternative source of services for each such Member from other Blue Shield

26

## blue 🛡 of california

Providers at the following rates, less any applicable Copayments: Seventy-Five Percent (75%) of Hospital's Allowed Charges for Commercial HMO and PPO Members and one hundred percent (100%) of the Medicare allowable for Medicare Advantage Members.

(e)    All written, printed, or electronic communications to Members concerning termination of this Agreement shall comply with California Health & Safety Code Section 1373.65(f).

10.6    **Termination Not an Exclusive Remedy.** The termination of this Agreement by either party pursuant to this Article X is not an exclusive remedy. The terminating party shall retain and may exercise whatever rights it may have in law or equity as may be necessary to enforce its rights under this Agreement.

10.7    **Survival.** This Section 10.7 and the following Sections of this Agreement shall survive the expiration or termination for any reason of this Agreement: Sections 5.1, 5.2, 5.3, 5.4,6.1, 6.2, 6.5, 6.6, 7.1, 7.2, 7.3, 8.1, 9.1, 9.2, 9.3, 10.5, 12.11, 12.13, 12.14, 12.15 and 12.16.

### XI.  OTHER PAYORS

11.1    **Other Payors.**    Blue Shield may contract with employers, insurance companies, associations, health and welfare trusts, or other organizations to provide administrative services for plans provided by those entities that are not underwritten by Blue Shield (including both local and Blue Cross/Blue Shield National Accounts Programs). In addition, Blue Shield may extend this Agreement to managed care arrangements established by Blue Shield subsidiaries, or by persons or entities using the network Blue Shield has established pursuant to agreements with CareTrust Networks and Blue Shield of California Life & Health Insurance Company. All such entities shall be referred to as "Other Payors". Blue Shield shall require that the health programs of Other Payors include provisions to encourage the use of Blue Shield Providers (including Hospital).

11.2    **Responsibility for Payment.** Hospital agrees to look solely to Other Payors for payment for services furnished to Members of such Other Payor. If Hospital is unable to obtain payment from any Other Payor, Blue Shield shall, upon notice from Hospital, make commercially reasonable efforts to assist Hospital in obtaining such payment. However, any continuing dispute with respect to such payment shall be settled solely between Hospital and such Other Payor with good faith facilitation by Blue Shield.

11.3    **Applicability of Agreement; Identity of Other Payors.**    The provisions of this Agreement shall apply to services rendered to Members enrolled in health benefit programs of Other Payors. Blue Shield will periodically give Hospital notice of the identity of Other Payors.

### XII.  GENERAL PROVISIONS

27

# blue 🛡 of california

12.1   **Entire Agreement.**  The attached Exhibits, together with all documents incorporated by reference in the Exhibits, and the Provider Manual, as from time to time amended in accordance with this Agreement, form an integral part of this Agreement and are incorporated by reference into this Agreement.  This Agreement constitutes the entire understanding and agreement of the parties regarding its subject matter, and supersedes any prior oral or written agreements, representations, understandings or discussions among the parties with respect to such subject matter.  Notwithstanding the foregoing, this Agreement shall neither supersede nor replace any capitated HMO (including, without limitation, Medicare Advantage) hospital agreement that may exist between Hospital and Blue Shield, which agreement shall solely apply with respect to the provision of services to any HMO Members for whom Hospital has financial responsibility for Covered Services under such capitated agreement.

12.2   **Amendments.**  Except as provided in Section 2.10, Section 5.6(c), and this Section 12.2, this Agreement may be amended only by mutual, written consent of Blue Shield and Hospital's duly authorized representatives.  Notwithstanding the foregoing, if Blue Shield's legal counsel determines in good faith that this Agreement must be modified to be in compliance with applicable federal or state law or to meet the requirements of accreditation organizations that accredit Blue Shield and its providers, Blue Shield may amend this Agreement by delivering to Hospital a written amendment to this Agreement incorporating the legally required modifications (the "Legally Required Amendment"), along with an explanation of why such Legally Required Amendment is necessary.  If Hospital does not object to the Legally Required Amendment, in writing, within sixty (60) days following receipt thereof, such Legally Required Amendment shall be deemed accepted by Hospital and an amendment to this Agreement.  If Hospital timely objects to the Legally-Required Amendment, then Hospital and Blue Shield shall confer in good faith regarding Hospital's objection(s).  If Hospital and Blue Shield are unable to resolve Hospital's objection(s) to the parties' mutual satisfaction within thirty (30) days of Hospital's notice, then, within sixty (60) days of Hospital's notice, Hospital may elect to terminate this Agreement upon ninety (90) days prior written notice to Blue Shield, and the Legally Required Amendment to which Hospital objected shall not be effective as to Hospital during the termination notice period.  Unless Hospital so terminates this Agreement, such Legally Required Amendment shall be deemed accepted by Hospital and an amendment to this Agreement.

12.3   **Assignment.**  Neither party shall assign, transfer, or subcontract any of its rights, interests, duties, or obligations under this Agreement, whether by sale, assignment, negotiation, pledge or otherwise, without the prior written consent of the other party.  Without limiting the foregoing, the following events shall constitute an assignment of this Agreement for purposes of this Section 12.3:  (i) the sale, transfer or other disposition of all or substantially all of the issued and outstanding voting securities or interests of either party; (ii) the merger, consolidation or other reorganization of either party if, immediately following such transaction, either party or its member(s) shareholders or other equity holders (as existing immediately preceding such transaction) do not own a majority of all classes of the issued and outstanding membership interests or voting securities of the surviving, consolidated or reorganized entity; and (iii) the issuance of any class of voting

28

## blue 🛡 of california

securities or interests by either party (or its successor) if, immediately following such transaction, either party's shareholders or other equity holders existing immediately preceding such issuance do not own a majority of all classes of the issued and outstanding voting securities or interests of either party. Subject to the foregoing, this Agreement shall be binding on and shall inure to the benefit of the parties and their respective heirs, successors, assigns and representatives.

12.4 **Third Party Beneficiaries.** This Agreement shall not confer or be construed to confer any rights or benefits to any person or entity other than the parties, and no action to enforce the terms of this Agreement may be brought against either party by any person or entity who is not a party hereto.

12.5 **Notices.** All notices or communications required or permitted under this Agreement shall be given in writing and shall be delivered to the party to whom notice is to be given either: (a) by personal delivery, in which cases such notice shall be deemed given on the date of delivery; (b) by next business day courier service (e.g., Federal Express, UPS or other similar service), in which case such notice shall be deemed given on the business day following date of deposit with the courier service; (c) by United States mail, first class, postage prepaid, registered or certified, return receipt requested, in which case such notice shall be deemed given on the third (3rd) day following the date of deposit with the United States Postal Service; or (d) by facsimile transmission, in which case such notice shall be deemed given upon receipt of facsimile transmission confirmation. Notice shall be delivered or sent to the party's address or facsimile number set forth in Exhibit A, or such other address or facsimile number as may be provided by a party, from time to time, pursuant to this Section.

12.6 **Independent Contractors.** In the performance of each party's work, duties, and obligations pursuant to this Agreement, each of the parties shall at all times be acting and performing as an independent contractor, and nothing in this Agreement shall be construed or deemed to create a relationship of employer and employee, principal and agent, partner, or joint venturer.

12.7 **Indemnification.** Each party agrees to indemnify the other party for, and to defend and hold harmless the other party from, any claims, causes of action, or costs, including reasonable attorneys' fees, arising out of the indemnifying party's alleged or actual negligence or otherwise improper performance of its obligations hereunder. In addition, Hospital shall indemnify Blue Shield for any sanctions imposed by CMS upon by Blue Shield arising out of or related to Hospital's employment of or contract with an individual or entity excluded or suspended from participation in Medicare.

12.8 **Waiver of Breach.** No delay or failure to require performance of any provision of this Agreement shall constitute a waiver of the performance of such provision or any other instance. Any waiver granted by a party must be in writing, and shall apply solely to the specific instance expressly stated. A waiver of any term or condition of this Agreement

29

# blue 🛡 of california

shall not be construed as a waiver of any other terms and conditions of this Agreement, nor shall any waiver constitute a continuing waiver.

12.9 **Force Majeure.** Neither party is liable for nonperformance or defective or late performance of any of its obligations under this Agreement to the extent and for such periods of time as such nonperformance, defective performance or late performance is due to reasons outside such party's control, including acts of God, war (declared or undeclared), action of any governmental authority, riots, revolutions, fire, floods, explosions, sabotage, nuclear incidents, lightning, weather, earthquakes, storms, sinkholes, epidemics, or strikes (or similar nonperformance or defective performance or late performance of employees, suppliers or subcontractors).

12.10 **Confidentiality.** Except as necessary to Hospital's and Blue Shield's performance hereunder, or as required by law, the reimbursement rates set forth in this Agreement shall be confidential, and neither Hospital nor Blue Shield shall disclose such rates (other than to Government Officials or to Other Payors) without the prior written consent of the other party. Notwithstanding the foregoing, nothing in this Agreement shall prohibit Hospital from disclosing to Members and others the method by which they are compensated (e.g., capitation, fee for service, etc.), it being acknowledged and understood that it is the precise compensation amounts for which confidential treatment is required by this provision.

12.11 **Non-Solicitation.** During the term of this Agreement, and for six (6) months thereafter, Hospital shall not solicit, induce, or encourage any Member (except those Members covered under a Daughters of Charity Health System benefit plan) to disenroll from Blue Shield or select another health care service plan for health care services. Notwithstanding the foregoing, Hospital shall be entitled to freely communicate with Members regarding any aspect of their health status or treatment.

12.12 **Association Disclosure.** Hospital hereby expressly acknowledges its understanding that this Agreement constitutes a contract between Hospital and Blue Shield, that Blue Shield is an independent corporation operating under a license from the Blue Cross and Blue Shield Association, an association of independent Blue Cross and Blue Shield Plans (the "Association") permitting Blue Shield to use the Blue Shield Service Mark in the State of California, and that Blue Shield is not contracting as the agent of the Association. Hospital further acknowledges and agrees it has not entered into this Agreement based upon representations by any person other than Blue Shield and no person, entity, or organization other than Blue Shield shall be held accountable or liable to Hospital for any of Blue Shield's obligations to Hospital created under this Agreement. This Section shall not create any additional obligations whatsoever on the part of Blue Shield other than those obligations created under other provisions of this Agreement.

12.13 **Governing Law.** This Agreement shall be governed by and construed according to the laws of the State of California, including, without limitation the Knox-Keene Act and the regulations promulgated thereunder. Any provision required to be in this Agreement by the

30

# blue 🛡 of california

Knox-Keene Act and/or the regulations promulgated thereunder shall bind Blue Shield and Hospital, whether or not provided in this Agreement.

12.14  **Preemption by Federal Law.**  To the extent any of the requirements of the Knox-Keene Act and the regulations promulgated thereunder are preempted by federal law applicable to the Medicare program, no such requirements shall apply with respect to Blue Shield's Medicare Advantage Program.

12.15  **Compliance With Law.**  Each party shall comply with all applicable state and federal laws. Without limiting the foregoing:

    (a)    Hospital shall comply with all applicable Medicare laws, regulations, and CMS instructions including, without limitation, Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973, the Age Discrimination Act of 1975, the Americans with Disabilities Act, and shall require its contractors and subcontractors to do the same. Hospital shall include the requirements of this Section and all other provisions required by federal and state laws, including, without limitation, the BBA and related regulations, in all contracts or subcontracts with other providers or entities.

    (b)    To the extent Employee Retirement Income Security Act ("ERISA") statutes and regulations apply to the claims payment and Member complaint functions performed by Hospital, Hospital shall comply with all such requirements.

12.16  **Interpretation of Agreement.**  This Agreement shall not be interpreted for or against any one party on the basis of which party drafted this Agreement. This Agreement shall be governed in all respects, whether as to validity, construction, capacity, performance, or otherwise, by the laws of the State of California and such federal laws as are applicable to Blue Shield. The captions herein are for convenience only and shall not affect the meaning or interpretation of this Agreement. If any provision of this Agreement, in whole or in part, or the application of any provision, in whole or in part, is determined to be illegal, invalid or unenforceable by a court of competent jurisdiction, such provision, or part of such provision, shall be severed from this Agreement. The illegality, invalidity or unenforceability of any provision, or part of any provision, of this Agreement shall have no affect on the remainder of this Agreement, which shall continue in full force and effect.

12.17  **Counterparts.**  This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

12.18  **Ethical and Religious Directives.**  Blue Shield acknowledges that Hospital is an institution operated in accordance with the Ethical and Religious Directives for Catholic Health Care Services (the "Directives"). Notwithstanding any provision of this Agreement to the contrary, Hospital shall not be required, nor shall any provision of this Agreement be construed to require, Hospital to provide services, pay for or authorize

31

# blue 🛡 of california

services or otherwise participate in activities that are not consistent with the Directives.
(A copy of the Directives is available at http://www.usccb.org/bishops/directives.shtml.)

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their
authorized representatives:

**BLUE SHIELD OF CALIFORNIA**                    **O'Connor Hospital**

Signature: _Juan C Davila_                       Signature: _____

Print Name: _Juan C. Davila_                     Print Name: _James F. Dover, FACHE_

Title: _Senior Vice President, Network Mgmt._    Title: _President & CEO_

Date: _11–11–10_                                 Date: _11/04/2010_

32