# EXHIBIT E-2

blue ⬤ of california

# O'CONNOR HOSPITAL

# Provider Agreement

## Fee For Service Hospital

December 1, 2017

An Independent Member of the Blue Shield Association

blueshieldca.com

**Blue Shield of California**
50 Beale Street, San Francisco, CA 94105

blue 🛡 of california

## TABLE OF CONTENTS

I.      DEFINITIONS
1.1     Agreement Year
1.2     Allowed Charges
1.3     Authorization/Authorized
1.4     Benefit Program
1.5     Blue Shield Providers
1.6     Case Rate
1.7     Charge Master
1.8     Charge Master Year
1.9     Copayment
1.10    Covered Services
1.11    Emergency Services
1.12    Evidence of Coverage
1.13    Health Services Contract
1.14    Hospital Services
1.15    Inpatient
1.16    Inpatient Services
1.17    Medically Necessary or Medical Necessity
1.18    Member
1.19    Outpatient Services
1.20    Per Diem Rate
1.21    Per Visit Rate
1.22    Provider Appeal
1.23    Provider Manual

II.     OBLIGATIONS OF HOSPITAL
2.1     Hospital Services
2.2     Location and Availability
2.3     Licensure & Accreditation
2.4     Standards for Provision of Care
2.5     Quality Improvement/Case Management/Utilization Management Programs
2.6     Service Authorization
2.7     Cooperation with Discharge Planning
2.8     Physician Access
2.9     Submission of Physician Hospital Privilege Roster
2.10    Provider Manual
2.11    Disclosures
2.12    INTENTIONALLY LEFT BLANK

III.    OBLIGATIONS OF BLUE SHIELD
3.1     Directory & Use of Names

1

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential – Blue Shield of California

# blue 🛡 of california

3.2     Administrative Services
3.3     Disclosure of Information

IV.     ELIGIBILITY OF BLUE SHIELD MEMBERS
4.1     Identification Cards & Verification
4.2     Verification of Eligibility
4.3     Payment of Premiums

V.      BILLING, COMPENSATION & CHARGE MASTER OBLIGATIONS
5.1     Claims Submission
5.2     Compensation Amounts
5.3     Copayments
5.4     Overpayment Recoveries
5.5     Charge Master Notifications
5.6     Adjustments Resulting From Charge Master Increases
5.7     Right to Audit Charge Master
5.8     Late Charge Master Notification Recoveries
5.9     BlueCard Claims
5.10    Payments to Subcontractors

VI.     PROTECTION OF MEMBERS
6.1     Non-discrimination
6.2     Charges to Members
6.3     Third Party Liens
6.4     Benefits Determination
6.5     Member Complaints & Grievances
6.6     Medical Necessity Assistance
6.7     Free Exchange of Information
6.8     Insurance

VII.    MEDICAL RECORDS & CONFIDENTIALITY
7.1     Medical Records
7.2     Confidentiality
7.3     Member Access to Records

VIII.   COOPERATION WITH AUDITS & CERTIFICATIONS
8.1     Disclosure of Records
8.2     Site Evaluations
8.3     Accreditation Surveys
8.4     Performance/Compliance Monitoring

IX.     RESOLUTION OF DISPUTES
9.1     Provider Appeal Resolutions Process
9.2     Arbitration of Disputes

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential – Blue Shield of California

blue 🛡 of california

9.3     Limitation of Actions
9.4     Appeals


X.      TERM & TERMINATION
10.1    Term
10.2    Termination Without Cause
10.3    Termination for Cause
10.4    Immediate Termination
10.5    Effect of Termination
10.6    Termination Not an Exclusive Remedy
10.7    Survival


XI.     OTHER PAYORS
11.1    Other Payors
11.2    Responsibility for Payment
11.3    Applicability of Agreement; Identity of Other Payors


XII.    GENERAL PROVISIONS
12.1    Entire Agreement
12.2    Amendments
12.3    Assignment
12.4    Third Party Beneficiaries
12.5    Notices
12.6    Independent Contractors
12.7    Indemnification
12.8    Waiver of Breach
12.9    Force Majeure
12.10   Confidentiality
12.11   Non-Solicitation
12.12   Association Disclosure
12.13   Governing Law
12.14   Preemption by Federal Law
12.15   Compliance With Law
12.16   Interpretation of Agreement
12.17   Counterparts
12.18   Tiered Benefit Designs and Narrow Network


EXHIBITS
A - Hospital Information
B - Applicable Benefit Programs
C - Compensation Amounts/Payment Schedule
D - General Notes to Compensation Amounts/Payment Schedules
E - Participation in the Blue Shield EPN Network

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential – Blue Shield of California

blue 🛡 of california

## BLUE SHIELD OF CALIFORNIA
## FEE FOR SERVICE HOSPITAL AGREEMENT

This Fee For Service Hospital Agreement (this "Agreement") is entered into by and between O'CONNOR HOSPITAL, a California corporation ("Hospital"), and California Physicians' Service, dba Blue Shield of California, a California nonprofit corporation ("Blue Shield"). This Agreement shall be effective December 1, 2017 (the "Effective Date").

## RECITALS

A.    Blue Shield is licensed as a prepaid health care service plan under the Knox-Keene Act of 1975, as amended (the "Knox-Keene Act"). Blue Shield contracts with individuals, associations, employer groups, and governmental entities to provide or to arrange for the provision of covered health care services to Members (as defined herein) enrolled in HMO, EPO, and PPO benefit plans.

B.    Hospital owns and operates an acute care hospital and is duly licensed and qualified to provide inpatient and outpatient hospital services to Members.

C.    Hospital and Blue Shield desire that Hospital provide fee for service inpatient and outpatient hospital services (excluding capitated hospital agreement as described in Section 12.1 of this Agreement) to Members in accordance with the terms of this Agreement.

## I. DEFINITIONS

For purposes of this Agreement, the following capitalized terms shall have the meanings ascribed to them below:

1.1    **Agreement Year:** is the twelve (12)-month period beginning on the Effective Date, and each twelve (12)-month period beginning on each annual anniversary date of the Effective Date thereafter.

1.2    **Allowed Charges:** are charges billed by Hospital, in accordance with Hospital's Charge Master, for Hospital Services furnished pursuant to this Agreement, less those charges, if any, disallowed by Blue Shield pursuant to Exhibit D hereto.

1.3    **Authorization/Authorized:** is the approval of Blue Shield, or its delegate, for the provision of Covered Services obtained in accordance with, and as further described in, the Provider Manual and Section 2.6 of this Agreement.

1.4    **Benefit Program:** is a group or individual Health Maintenance Organization (HMO), including Point-of-Service (POS), Exclusive Provider Organization (EPO), or Preferred

4

OCONNOR HOSPITAL - FFS Hosp Agreement Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential - Blue Shield of California

# blue 🛡 of california

Provider Organization (PPO) health care product offered by Blue Shield pursuant to a Health Services Contract (and riders, if any, thereto).

**1.5**   **Blue Shield Providers:** are those licensed health care providers, including, without limitation, institutional providers, that have entered into agreements with Blue Shield to provide Covered Services to Members.

**1.6**   **Case Rate:** is a rate of reimbursement paid by Blue Shield for certain Hospital Services identified in this Agreement, furnished during a single inpatient or outpatient admission, and, except as otherwise set forth in this Agreement, constitutes payment in full for all Hospital Services provided by Hospital during such admission.

**1.7**   **Charge Master:** is the uniform schedule of charges, in either electronic or printed form, represented by Hospital to be its gross billed charges for all Hospital procedures, services, supplies and drugs that are billed and charged on a UB-04 billing form or its electronic billing equivalent, regardless of payor type.

**1.8**   **Charge Master Year:** is the twelve (12)-month period beginning on August 1st, and each twelve (12)-month period beginning on each annual anniversary date of August 1st thereafter.

**1.9**   **Copayment:** is any copayment, deductible, and/or coinsurance amount for which a Member is financially responsible in connection with the receipt of Covered Services as specifically described in the Health Services Contract and/or Evidence of Coverage applicable to the Member and in effect as of the date of service.

**1.10**   **Covered Services:** are Medically Necessary health care services, supplies and drugs that a Member is entitled to receive pursuant to the Health Services Contract and/or Evidence of Coverage applicable to the Member.

**1.11**   **Emergency Services:** are Covered Services required to address an unexpected medical condition, including a psychiatric emergency medical condition, manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in: (a) placing the Member's health in serious jeopardy; or in the case of a pregnant woman, the health of the woman or her unborn child (b) serious impairment to bodily functions; or (c) serious dysfunction of any bodily organ or part. For Blue Shield Medicare Advantage Members, Emergency Services also include any other services defined as emergency services in Title 42 of the Code of Federal Regulations, Section 422.113.

**1.12**   **Evidence of Coverage:** is the document issued to a Member, pursuant to California law, that describes the benefits, limitations and other features of the Benefit Program in which the Member is enrolled.

5

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential -- Blue Shield of California

blue 🛡 of california

1.13    **Health Services Contract:** is the group or individual contract that describes the Benefit Program and the Covered Services to which a Member is entitled, as well as the Member's Copayment obligation.

1.14    **Hospital Services:** are those Covered Services that Hospital is licensed to provide.

1.15    **Inpatient:** is a Member who: (a) is admitted to Hospital as a registered bed patient with the expectation of staying overnight, and (b) is receiving services ordered by and under the direction of a physician or other health care provider with appropriate medical staff privileges at Hospital.

1.16    **Inpatient Services:** are Hospital Services provided to an Inpatient, including: (a) all Hospital Services provided to a Member on the same date as the commencement of the Member's admission as an Inpatient if related to the condition for which the Member is admitted; (b) all Emergency Services provided to a Member immediately preceding the Member's admission as an Inpatient; and (c) transportation services required for treatment of the Member following admission as an Inpatient at Hospital and until discharge.

1.17    **Medically Necessary or Medical Necessity:** means, with respect to the provision of medical services, supplies and drugs: (a) required by a Member; (b) provided in accordance with recognized professional medical and surgical practices and standards; (c) appropriate and necessary for the symptoms, diagnosis, or treatment of the Member's medical condition; (d) provided for the diagnosis and direct care and treatment of such medical condition; (e) not furnished primarily for the convenience of the Member, the Member's family, or the treating provider or other provider; (f) furnished at the most appropriate level that can be provided consistent with generally accepted medical standards of care; (g) with respect to Inpatient Services, could not have been provided in a physician's office, the outpatient department of a hospital, or in another less acute facility without adversely affecting the Member's condition or the quality of medical care rendered; and (h) consistent with Blue Shield Medical Policy and Blue Shield Medication Policy.

1.18    **Member:** is an individual who is eligible for and enrolled in a Benefit Program to which this Agreement applies (as identified in Exhibit B) or a health benefit plan of an Other Payor (as defined in Section 11.1 hereof).

1.19    **Outpatient Services:** are Hospital Services other than Inpatient Services.

1.20    **Per Diem Rate:** is a rate of reimbursement paid by Blue Shield on a per-day basis for certain Inpatient Services identified in this Agreement, and, except as otherwise set forth in this Agreement, constitutes payment in full for all Hospital Services provided by Hospital during each such day.

1.21    **Per Visit Rate:** is a rate of reimbursement paid by Blue Shield on a per-visit basis for

6

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential – Blue Shield of California

blue 🛡 of california

certain Outpatient Services identified in this Agreement, and, except as otherwise set forth in this Agreement, constitutes payment in full for all Hospital Services provided by Hospital during each such day.

1.22    **Provider Appeal:** is Hospital's written notice to Blue Shield challenging, appealing, or requesting reconsideration of a claim, requesting resolution of billing determinations, such as bundling/unbundling of claims/procedure codes or allowances, or disputing administrative policies & procedures, administrative terminations, retroactive contracting, or any other issue related to the parties' respective obligations under this Agreement.

1.23    **Provider Manual:** is the set of manuals developed by Blue Shield that set forth the operational rules and procedures applicable to Hospital and the performance of services hereunder and such other documents used by Blue Shield to determine reimbursement rates under the terms of this Agreement, including, without limitation, Blue Shield's ICD-10 Service Category Code File, Hospital Acquired Conditions (HAC) and Never Events (NE) Code File (HAC/NE Code File), Outpatient Surgical Grouper, APG Outpatient Surgical Services Grouper Mappings, Outpatient Radiology, Pathology, and Diagnostic Test Schedule, Clinical Laboratory Fee Schedule, and Outpatient Pharmaceutical Fee Schedule.

## II. OBLIGATIONS OF HOSPITAL

2.1    **Hospital Services** Hospital shall provide Hospital Services to Members, as directed by Members' treating physicians or as otherwise Medically Necessary, in accordance with the terms of this Agreement. Notwithstanding anything in this Agreement to the contrary, this Agreement shall not apply to or govern the provision of Hospital Services to Members enrolled in HMO programs (including, without limitation, Medicare Advantage) for which Hospital receives capitation payments pursuant to a separate capitated hospital agreement, if any, between Hospital and Blue Shield.

2.2    **Location and Availability.**

(a)    Hospital Services shall be provided and made reasonably available at the location(s) set forth in Exhibit A hereto. Subject to bed availability and compliance with admission criteria, Hospital will accept Authorized admissions of Members twenty-four (24) hours a day.

(b)    Hospital shall cooperate and comply with Blue Shield's language assistance program as set forth in the Provider Manual. Nothing in this Section shall be construed as a delegation to Hospital of Blue Shield's obligations pursuant to Section 1300.67.04 of Title 28 of the California Code of Regulations or Section 2538.3 of Title 10 of the California Code of Regulations, or deemed to limit Hospital's obligations pursuant to Section 1259 of the California Health and Safety Code.

7

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential – Blue Shield of California

# blue 🛡 of california

2.3    **Licensure & Accreditation.** At all times during the term of this Agreement, Hospital shall be licensed by the state of California, certified under Title XVIII of the Social Security Act, and accredited by The Joint Commission.

2.4    **Standards for Provision of Care.** Hospital shall maintain its facilities and equipment in accordance with all applicable legal requirements. Hospital shall comply with all federal and state laws, licensing requirements, and professional standards, and provide its services in accordance with generally accepted hospital practices and standards prevailing in the applicable professional community at the time of treatment. Consistent with Title 10 of the California Code of Regulations, Section 2240.4, Hospital's primary consideration shall be the quality of the health care services rendered to Members.

2.5    **Quality Improvement/Case Management/Utilization Management Programs.**

   (a)    Hospital shall comply with Blue Shield's Medical Policy and Blue Shield Medication Policy. Without limiting the foregoing, Hospital shall cooperate fully with and participate in Blue Shield's Quality Improvement and Utilization Management Programs, including its Authorization procedures, as set forth in this Agreement and as described in the Provider Manual. Hospital shall comply with the decisions of the Blue Shield Quality Improvement and Utilization Management Programs. If Hospital disputes any such decision, Hospital shall comply with the decision pending resolution of the dispute through the Appeal Process described in Article IX of this Agreement.

   (b)    Hospital shall cooperate fully with Blue Shield with regard to the Healthcare Effectiveness Data and Information Set ("HEDIS") measurements, audits, guideline development, preventive services utilization, disease/risk management, clinical service monitoring, and quality improvement studies and initiatives.

   (c)    Hospital shall maintain a quality management program pursuant to which Hospital will review, on a prospective, concurrent, and retrospective basis, the quality, appropriateness, and level of care furnished to Medicare Advantage Members. Such quality management program shall include, without limitation, an annual evaluation, annual quality management goals, proposed quality management studies, a description of Hospital's quality management committee, and the frequency with which such committee holds meetings. Hospital shall notify Blue Shield of any material changes to such quality management program, which approval shall not be unreasonably withheld.

2.6    **Service Authorization.** Hospital shall comply with the Authorization procedures and requirements set forth in the Provider Manual and this Section 2.6. Hospital understands and agrees that, except in the case of Emergency Services or as otherwise provided in the Provider Manual, Hospital Services must be Authorized in advance by Blue Shield or its delegate in order for Hospital to be eligible for payment hereunder. In the case of

8

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential – Blue Shield of California

# blue 🛡 of california

Emergency Services, Hospital shall obtain Authorization from Blue Shield or its delegate as soon as possible, but in no event later than twenty-four (24) hours after any admission, or the next occurring non-holiday weekday, whichever is later. Blue Shield will not retroactively deny Hospital's claims on the basis of Medical Necessity for services reviewed and Authorized pursuant to the Quality Improvement and Utilization Management Program, provided that Hospital submitted full and accurate information to Blue Shield for review under its Quality Improvement and Utilization Management Program. If Hospital fails to obtain Authorization prior to providing Hospital Services to a Member, as required, or if Hospital provides services outside of the scope of the Authorization obtained, then Blue Shield, or its delegate, shall have no obligation to compensate Hospital for such services; Hospital will be deemed to have waived payment for such services and shall not seek payment from Blue Shield, its delegate, or the Member.

2.7    **Cooperation with Discharge Planning.** Hospital shall cooperate fully with Blue Shield or its delegate in planning and implementing the discharge of Members from Hospital's facility(ies), including, without limitation, providing Blue Shield's on-site / telephonic nurse (s) reasonable access to Hospital's facility(ies) and Members. In the event Hospital cannot appropriately discharge a Member due to delays from Blue Shield's lack of determination of requested Authorization within established timeframe, Blue Shield shall be liable for payment of such additional inpatient days on as Per Diem basis.

2.8    **Physician Access.** Hospital shall provide each Member's treating physician such access to Hospital's facilities as may be appropriate to provide professional services to the Member, in accordance with the bylaws, rules, and regulations established by Hospital with the approval of Hospital's governing board. Members' physicians shall not be denied staff membership or clinical privileges on the basis of sex, race, age, religion, color, national origin, sexual orientation, disability, or any other criteria lacking professional justification, nor will such privileges be arbitrarily delayed. If a Member requires the care of a specialist physician, and no such physician who is a Blue Shield Provider has active privileges at Hospital, Hospital shall consider, in as rapid a manner as possible, taking into consideration possible emergency situations, requests from qualified persons for temporary privileges at Hospital, and shall grant such temporary privileges, provided such persons meet and conform to the requirements of Hospital's medical staff bylaws and rules and regulations for temporary privileges.

2.9    **Submission of Physician Hospital Privilege Roster.** Hospital shall provide Blue Shield with an updated physician Hospital privilege roster, preferably in electronic format, at least annually, as well as upon Blue Shield's request, which shall not exceed two (2) requests annually.

2.10    **Provider Manual.** Hospital shall comply with the Provider Manual, the terms of which are incorporated herein by reference. Blue Shield may, in its sole discretion, periodically modify the Provider Manual. Blue Shield will notify Hospital forty-five (45) working days prior to the effective date of any change to the Provider Manual. If Hospital reasonably

9

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential – Blue Shield of California

# blue 🛡 of california

concludes that a change to the Provider Manual is material, Hospital shall notify Blue Shield, in writing, prior to the effective date of the change. Following receipt of Hospital's notice, Hospital and Blue Shield shall confer in good faith regarding the change. If Hospital and Blue Shield are unable to reach agreement regarding the change within thirty (30) days of Hospital's notice, then, within sixty (60) days of Hospital's notice, Hospital may elect to terminate this Agreement for cause pursuant to Section 10.3 hereof. To the extent of any conflict between this Agreement and the Provider Manual, the terms of this Agreement shall govern.

2.11    **Disclosures.** Hospital shall immediately notify Blue Shield in writing of the occurrence of any of the following events: (a) loss or restriction of any license or certification required in order for Hospital to provide Hospital Services; (b) loss of accreditation by The Joint Commission; (c) Hospital is excluded or suspended from participation in, ceases to be certified by, or is sanctioned by any state or federal healthcare program, including, without limitation, Medicare or Medi-Cal; (d) Hospital's liability insurance is canceled, terminated, not renewed, or materially modified; (e) Hospital becomes a defendant in a lawsuit filed by a Member or is required or agrees to pay damages to a Member for any reason; (f) any changes to the hospital-based (*e.g.*, emergency, radiology, pathology) physicians or physician groups providing services at Hospital; (g) any labor action or work stoppage that may materially impact Hospital's operations; (h) a petition is filed to declare Hospital bankrupt or for reorganization under the bankruptcy laws of the United States or a receiver is appointed over all or any portion of Hospital's assets; or (i) any act of nature or other event or circumstance which has or reasonably could be expected to have a materially adverse effect on Hospital's ability to perform its obligations under this Agreement. In addition, Hospital shall use best efforts to provide Blue Shield with no fewer than ninety (90) days' prior written notice of any proposed material change in the ownership of Hospital, or the sale of all or substantially all of the assets of Hospital.

2.12    **INTENTIONALLY LEFT BLANK**

## III. OBLIGATIONS OF BLUE SHIELD

3.1    **Directory & Use of Names.**

(a)    Blue Shield maintains a directory of Blue Shield Providers that is made available to Members. Hospital agrees that the following information may be included in Blue Shield's written and electronic directories, marketing materials, and publications provided to present or potential Members and subscriber groups: (i) Hospital's name, address, and phone number; and (ii) such other types of identifying information regarding Hospital that are reasonable to include in directories, marketing materials, or publications. Blue Shield shall maintain said directory pursuant to state and federal law, including, but not limited to, California Health & Safety Code 1367.27.

10

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential – Blue Shield of California

blue 🛡 of california

**(b)**    Hospital may identify itself as a Blue Shield Provider.

**(c)**    Except as provided in Sections 3.1(a) and (b), neither party shall use the other party's name, trademark(s), or service mark(s), without the other party's prior written consent, which consent shall not be unreasonably withheld.

**3.2**    **Administrative Services .**  Blue Shield shall perform those services incident to the administration of a health care service plan, including, without limitation, processing enrollment applications and adjudicating claims for Covered Services that are the payment responsibility of Blue Shield.

**3.3**    **Disclosure of Information.**  Blue Shield shall make available to Hospital, upon contracting and upon written request, such information as is required by Sections 1300.71(l) and (o) of Title 28 of the California Code of Regulations. Blue Shield shall make such information available in the Provider Manual and on the provider portal of Blue Shield's website at www.blueshieldca.com.

## IV. ELIGIBILITY OF BLUE SHIELD MEMBERS

**4.1**    **Identification Cards & Verification.**  Blue Shield shall issue identification cards to Members as set forth in the Provider Manual. Production of such identification cards shall be indicative of, but not conclusive of, a person's status as a Member. Blue Shield shall provide or shall make available to Hospital, in formats that may be accessed by Hospital electronically or telephonically, information regarding Member status.

**4.2**    **Verification of Eligibility.**  Hospital shall verify the eligibility of Members in accordance with the Provider Manual. If Hospital fails to verify Member eligibility in accordance with the Provider Manual, Blue Shield shall have no obligation to compensate Hospital for any services provided to patients who are not Members at the time such services are rendered. Hospital shall be entitled to reasonably rely on verification of Member eligibility provided by Blue Shield. If Hospital provides Authorized Hospital Services in reasonable reliance upon verification of a patient's eligibility provided by Blue Shield, and such patient is subsequently determined not to have been a Member at the time services were provided, Blue Shield shall compensate Hospital for such Authorized Hospital Services at the rates set forth herein, less amounts, if any, due to Hospital from any other health care service plan, insurer or third party payor (including Medicare) by which such patient is covered.

**4.3**    **Payment of Premiums.**  Payment of Member premiums by Hospital shall be deemed a material breach of the Agreement.

## V. BILLING, COMPENSATION & CHARGE MASTER OBLIGATIONS

**5.1**    **Claims Submission.**  Hospital shall bill Blue Shield for Hospital Services as follows:

11

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential - Blue Shield of California

# blue 🛡 of california

(a)     Hospital shall bill Blue Shield according to Hospital's Charge Master.

(b)     Hospital shall bill Blue Shield once for every thirty (30) consecutive days that a Member receives Hospital Services. If Hospital provides Hospital Services to a Member for a period fewer than thirty (30) consecutive days (including any such time period following a thirty (30)-day period for which Hospital has already billed Blue Shield), then Hospital shall bill Blue Shield for such shorter period of time.

(c)     Hospital shall submit claims to Blue Shield within one hundred and eighty (180) days following the end of each period described in Section 5.1(b) or, if Blue Shield is not the primary payor under the coordination of benefits rules described in Section 5.2(e), the date payment or denial is received by Hospital from the primary payor. Blue Shield may deny payment for any claims not received by Blue Shield within one hundred eighty (180) days of the end of any such period or date. If Hospital fails to submit a claim in a timely fashion, as set forth in this Section 5.1, Hospital waives its right to any remedies and to pursue the claim further and may not initiate a demand for arbitration or other legal action against Blue Shield or bill the Member for Hospital Services for which Blue Shield so denied payment; provided, however, that Blue Shield shall, upon submission of a Provider Appeal by Hospital, consider good cause for late submission of a claim denied as untimely.

(d)     Hospital shall use best efforts to submit claims electronically following the procedures set forth in the Provider Manual. If, despite best efforts, Hospital cannot submit claims electronically, Hospital shall submit paper claims using a Form UB-04, or any successor form approved by the American Hospital Association, that includes all information required by the Provider Manual. In either case, payment by Blue Shield will be made only upon receipt of a complete claim submitted by Hospital in accordance with this Agreement.

(e)     In the adjudication of claims for payment hereunder, Blue Shield may request from Hospital, and Hospital shall provide to Blue Shield, such records as Blue Shield reasonably deems necessary to confirm that individually billed services(s) were rendered and/or were Medically Necessary.

(f)     Notwithstanding the foregoing provisions of this Section 5.1, if Hospital provides Hospital Services to a Member and such Hospital Services are the financial responsibility of a Blue Shield Provider (including Hospital) who is capitated by Blue Shield for such Hospital Services, Hospital shall submit billings for such Hospital Services to, and seek payment from, such capitated Blue Shield Provider, in accordance with procedures set forth in the Provider Manual. If Hospital is unable to obtain payment from such capitated Blue Shield Provider, Hospital shall notify Blue Shield. Blue Shield shall, within sixty (60) days, seek to resolve the non-payment by the capitated Blue Shield Provider. If a capitated Blue Shield Provider is financially responsible for Hospital Services provided hereunder, and

12

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential – Blue Shield of California

# blue 🛡 of california

such Blue Shield Provider does not have an agreement with Hospital relating to the payment for such Hospital Services, Hospital shall accept as payment from such Blue Shield Provider (or from Blue Shield on behalf of the Blue Shield Provider) the reimbursement rates set forth in this Agreement.

**5.2**   **Compensation Amounts** Blue Shield shall pay Hospital in accordance with the following:

(a)   Except as otherwise specified in Section 5.2(g) and Exhibit E, in exchange for Hospital Services provided to Members enrolled in a Blue Shield commercial Benefit Program, Blue Shield shall pay Hospital the lesser of: (i) the percentage of Hospital's Allowed Charges specified in the table below, and (ii) the reimbursement rates set forth in this Agreement, in either case, less any applicable Copayment.

|  | 12/01/2017 | 08/01/2018 |
|---|---|---|
| **Percentage of Allowed Charges - Inpatient** | 100.0% | 100.0% |
| **Percentage of Allowed Charges - Outpatient** | 100.0% | 92.6% |

(b)   In exchange for Hospital Services provided to Members enrolled in a Blue Shield Medicare Advantage Benefit Program, Blue Shield shall pay Hospital the lesser of: (i) the percentage of Hospital's Allowed Charges, as specified in the table below, (ii) the reimbursement rates set forth in this Agreement, and (iii) the reimbursement established by the Medicare program for such services, in any case, less any applicable Copayment.

|  | 12/01/2017 | 08/01/2018 |
|---|---|---|
| **Percentage of Allowed Charges - Inpatient** | 97.0% | 97.0% |
| **Percentage of Allowed Charges - Outpatient** | 100.0% | 100.0% |

(c)   Irrespective of whether Hospital is reimbursed pursuant to Subsection (a) or (b) of this Section 5.2, reimbursement is subject to the terms specified in Exhibit D.

(d)   Payment for Hospital Services shall be made by Blue Shield within the time-frames mandated by applicable state or federal law following receipt of all reasonably necessary information. Hospital shall accept electronic payment for Hospital Services and receive related explanations of payments ("EOPs") via electronic funds transfer ("EFT") and electronic remittance advice ("ERA"), respectively.

(e)   Coordination of benefits, benefit determinations under the Medicare Secondary Payor rules, and Workers' Compensation recoveries shall be conducted by Hospital in accordance with the procedures set forth in the Provider Manual. Notwithstanding Section 5.1 or the foregoing provisions of this Section 5.2, if Blue

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential – Blue Shield of California

blue 🛡 of california

Shield is not the primary payor under coordination of benefit rules, Hospital shall not make any demand for payment from Blue Shield until all primary sources of payment have been pursued.  In such cases, Blue Shield's financial obligation for Hospital Services shall be limited to the amount, if any, which, when added to the amount obtained by Hospital from all primary payors, equals the amount of compensation to which Hospital is entitled under this Agreement for such Hospital Services.

(f)     Hospital agrees to accept payment pursuant to this Section 5.2, together with applicable Copayments payable by a Member, and coordination of benefit collections and third party recoveries allowed under this Agreement, as payment in full for Hospital Services.

(g)     If, after the Effective Date, Hospital adds to its hospital license a new category of service or service unit (a "New Service) or if Hospital adds a category of service or a new service unit which involves new technology and requires a significant investment in equipment, has a materially higher cost of operation, and is of the type or nature which is customarily carved out as a separate reimbursement category (a "New Technology Service"), the terms of this Agreement will apply to such New Service and /or New Technology Service as reasonably determined by Blue Shield.   Prior to the implementation of such New Service and/or New Technology Service, Hospital shall have the option of providing Blue Shield with sixty (60) days prior written notice of any such addition and requesting that both parties meet and confer in good faith to discuss altering the terms of this Agreement to establish a unique reimbursement rate applicable to such service on a prospective basis only.  Beginning sixty (60) days after proper notice is received by Blue Shield and continuing until such a time as Blue Shield and Hospital have negotiated and agreed upon a new reimbursement rate, Hospital shall accept seventy five percent (75%) of Hospital's Allowed Charges as payment for such New Service or New Technology Service; provided such category of service or service(s) are Covered Services.

5.3     **Copayments.**

(a)     Hospital shall collect and retain, as additional compensation, the Member's applicable Copayment for Hospital Services provided by Hospital.  Copayments for Hospital Services shall be calculated based on the lesser of:  (i) the applicable Charge Master rate, and (ii) the applicable reimbursement rates set forth in this Agreement. Hospital shall not collect or attempt to collect any Copayment amount if at time of collection the Member's exact Copayment obligation cannot be determined with certainty.

(b)     Hospital shall not waive a Member's Copayment obligation.

14

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential -- Blue Shield of California

# blue 🛡 of california

(c)     Notwithstanding the foregoing, Hospital acknowledges that cost sharing for Members eligible for both Medicare and Medicaid/Medi-Cal ("Dual Eligible Members") is limited to the cost sharing limits established by Medicaid/Medi-Cal. With respect to Hospital Services provided to Dual Eligible Members, Hospital shall accept payment by Blue Shield as payment in full for such Hospital Services, or will separately bill the appropriate State source for any amounts above the Medicaid/Medi-Cal cost sharing limits.

5.4     **Overpayment Recoveries.** Blue Shield may request a refund of any overpayment it has made to Hospital within three hundred sixty-five (365) days of the date the payment was made, or as otherwise provided by law, unless the overpayment was the result of fraud or misrepresentation on the part of Hospital (in which case, Blue Shield shall not be so time-barred from seeking such a refund). Blue Shield's procedures for notification of overpayments and notification of recovery of overpayments shall comply with Section 1300.71(d) of Title 28 of the California Code of Regulations. If, within forty-five (45) days of receipt of such request, Hospital fails to either repay the overpaid amounts or give written notice to Blue Shield contesting the overpayment, Blue Shield shall have the right to recoup the overpayment from subsequent payments due to Hospital under this or any other agreement between Hospital and Blue Shield. In the event that Hospital files a formal appeal/dispute with Blue Shield within forty-five (45) days of Blue Shield's written refund request, Blue Shield will not offset the disputed amount against other payments until the matter has been resolved through the Provider Appeals and Dispute Resolution process. In addition, if Blue Shield determines Hospital has overcharged an individual properly identified as a Member of an Other Payor (as defined in Section 11.1), upon notification by Blue Shield of such overcharge, Hospital shall promptly refund such overpayment to Blue Shield, such Other Payor or to the Member, as applicable.

5.5     **Charge Master Notifications.** Hospital shall provide Blue Shield with notification relating to changes in Hospital's Charge Master as follows:

(a)     Hospital shall notify Blue Shield in writing no fewer than forty-five (45) working days prior to implementing any change(s) to Hospital's Charge Master. Such notification shall include a detailed description of all changes to be made to the Charge Master, as well as the overall percentage increase to the Charge Master resulting from such change(s). No modification to the Charge Master or the rates charged by Hospital shall be applicable to Hospital Services provided to Members, nor effective with respect to this Agreement, until forty-five (45) working days following Hospital's written notice to Blue Shield pursuant to this Section 5.5(a). Notwithstanding the foregoing, Hospital shall have no obligation to notify Blue Shield of any Charge Master increases resulting from routine Charge Master maintenance items that are both: (i) Nominal (as defined below); and (ii) implemented to accommodate new Hospital Services, to update miscellaneous charge codes for unique, patient-specific items, or to update Hospital's underlying pharmaceutical or Implant (as defined in this Agreement) purchase costs. For

15

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential – Blue Shield of California

# blue 🛡 of california

purposes of this Section 5.5, "Nominal" Charge Master increases are, in aggregate, less than one percent (1%) in any Charge Master Year.

**(b)**    In addition to any notice required by Section 5.5(a), upon request, Hospital shall provide Blue Shield with written confirmation, on such form as may be provided to Hospital by Blue Shield, indicating whether Hospital did or did not implement any changes in its Charge Master. Hospital's failure to provide Blue Shield with such written confirmation within thirty (30) days of such request shall constitute a breach of a material term of this Agreement.

## 5.6    Adjustments Resulting From Charge Master Increases.

**(a)**    In the event of a cumulative increase in Hospital's Charge Master, either on a single date or over a period of time during any Charge Master Year, that exceeds Charge Master "Modification Allowance" set forth in Section 5.6(d), Blue Shield may decrease all percentage of Allowed Charges-based reimbursement payable pursuant to Section 5.2 by the amount of the increase, less the Modification Allowance. Such decrease shall be effective as of the effective date of the most recent modification to Hospital's Charge Master that caused Hospital to exceed the Modification Allowance, shall be applied to all successive rate periods thereafter, and shall be calculated as follows:

$$[(1 + \text{Modification Allowance}) / (1 + \text{Actual Charge Master Increase})]$$
$$\text{x (Current \% of Allowed Charges)}$$
$$= \text{Adjusted \% of Allowed Charges}$$

### Example

5% Modification Allowance, 15% Actual Charge Master Increase,
55% of Allowed Charge rate,
$$(1.05 / 1.15) \text{ x } 55.0\% = 50.2\%$$

**(b)**    In the event of a cumulative increase in Hospital's Charge Master, either on a single date or over a period of time during any Charge Master Year, that exceeds Charge Master "Modification Allowance" set forth in Section 5.6(d), Blue Shield may increase the Stop Loss Attachment Level(s) set forth in this Agreement by the amount of the increase, less the Modification Allowance. Such increase shall be effective as of the effective date of the most recent modification to Hospital's Charge Master that caused Hospital to exceed the Modification Allowance, shall be applied to all successive rate periods thereafter, and shall be calculated as follows:

$$[(1 + \text{Actual Charge Master Increase}) / (1 + \text{Modification Allowance})]$$
$$\text{x (Current Stop Loss Attachment Level)}$$

16

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential – Blue Shield of California

# blue 🛡 of california

= Adjusted Stop Loss Attachment Level

### Example

5% Modification Allowance, 15% Actual Charge Master Increase,
$70,000 current Stop Loss Attachment Level,
(1.15 / 1.05) x $70,000 = $76,667

**(c)**      If Blue Shield is entitled to make any adjustment pursuant to Section 5.6(a) or (b), Blue Shield will provide Hospital with an amendment to this Agreement revising Section 5.2 and the then current and all subsequently effective compensation exhibits to reflect the changes to the percentage of Allowed Charges-based reimbursement and Stop Loss Attachment Level(s) resulting from Charge Master increases exceeding the Modification Allowance. Such amendment shall be effective as of the effective date of the most recent modification to Hospital's Charge Master that caused Hospital to exceed the Modification Allowance and, notwithstanding anything in Section 12.2 to the contrary, shall be deemed effective without the written consent of Hospital.

**(d)**      Hospital's Charge Master "Modification Allowance" is indicated in the table below:

| Charge Master Year | Charge Master Modification Allowance |
|---|---|
| 8/1/17-11/30/17 | 0% |
| 12/1/17-7/31/18 | 8% |
| 8/1/18-7/31/19 | 8% |
| Each 12-Month period beginning on August 1st thereafter | 8% |

**5.7**      **Right to Audit Charge Master.** Blue Shield shall have the right to audit Hospital's Charge Master to enforce the parties' respective rights and obligations under Sections 5.5 and 5.6 of this Agreement.

**5.8**      **Late Charge Master Notification Recoveries** Notwithstanding the provisions of Section 5.4, if Hospital fails to give Blue Shield timely notice of any change to Hospital's Charge Master in accordance with Section 5.5 hereof, and pursuant to Section 5.6 such change would have resulted in a change to the percentage of Allowed Charges-based reimbursement paid to Hospital pursuant to Section 5.2, Blue Shield shall have the right to recalculate all payments made to Hospital for Hospital Services furnished after the

17

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential – Blue Shield of California

blue 🛡 of california

effective date of such change and to recover any overpayments resulting from the resulting reduction in the percentage of Allowed Charges-based reimbursement. Blue Shield shall have the right to recoup the overpayment from subsequent payments due to Hospital under this agreement between Hospital and Blue Shield. Within one hundred twenty (120) days of becoming aware of such Charge Master change, Blue Shield shall provide Hospital with a detailed accounting and reconciliation of all resulting overpayments. Hospital shall have the right to audit Blue Shield's determinations and object to any determination.

5.9    **BlueCard Claims.**

(a)    If and for so long as Hospital is contracted with both Blue Shield and another licensee of the Association (as defined in Section 12.12) in the State of California, Hospital shall use best efforts to increase the number of claims for Hospital Services reimbursable through the BlueCard Program (as defined in the Provider Manual) sent to Blue Shield for processing, as follows:

(i)    by twenty-five percent (25%) during the first Agreement Year, relative to the twelve-month period immediately preceding the first Agreement Year; and

(ii)    by thirty percent (30%) during the second Agreement Year, relative to the first Agreement Year.

(b)    If and for so long as Hospital is not contracted with another licensee of the Association in the State of California, Hospital shall submit to Blue Shield for processing all claims for medical services (including, without limitation, Hospital Services) furnished by Hospital and reimbursable through the BlueCard Program.

(c)    Nothing in either Section 5.9(a) or 5.9(b) shall be construed to require Hospital to submit to Blue Shield for processing claims for Hospital Services furnished to a Member enrolled in a benefit plan having an exclusive arrangement with another licensee of the Association in the State of California, it being expressly understood that claims for Hospital Services furnished to a Member enrolled in a benefit plan having an exclusive arrangement with a particular licensee of the Association in the State of California should be sent to and processed by such licensee.

5.10    **Payments to Subcontractors.**    If Hospital subcontracts with any individual or entity to provide Covered Services on behalf of Hospital, Hospital shall process claims from and pay such individual or entity for such Covered Services in compliance with the timeliness requirements set forth in applicable state and federal law.

18

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential – Blue Shield of California

blue 🛡 of california

## VI. PROTECTION OF MEMBERS

6.1     **Non-discrimination.** Except as otherwise provided in this Agreement, Hospital shall provide Hospital Services to Members in the same manner, in accordance with the same standards, and with the same level of availability as Hospital provides services to its other patients. Hospital shall not discriminate against any Member in the provision of Hospital Services on the basis of race, sex, including gender identity and gender expression, color, religion, national origin, ancestry, age, marital status, physical or mental handicap, health status, disability, need for medical care, utilization of medical or mental health services or supplies, sexual preference or orientation, veteran's status, health insurance coverage, status as a Member, or other unlawful basis, including, without limitation, the filing by a Member of any complaint, grievance, or legal action against Hospital.

6.2     **Charges to Members.**

(a)     Except as expressly set forth in this Agreement, in no event, including, without limitation, nonpayment by Blue Shield or Blue Shield's insolvency or breach of this Agreement, shall Hospital bill, charge, collect a deposit from, impose a surcharge on, seek compensation, remuneration, or reimbursement from, or have any recourse against, a Member, or any individual responsible for such Member's care, for Covered Services. Without limiting the foregoing, Hospital shall not seek payment from a Member, or any individual responsible for such Member's care, for Covered Services for which payment was denied by Blue Shield because the bill or claim for such Covered Services was not timely or properly submitted or because such Covered Services were related to a HAC or Never Event (each as defined in Exhibit D hereto). If Blue Shield receives notice of a violation of this Section 6.2, it shall have the right to take all appropriate action, including, without limitation, reimbursing the Member for the amount of any payment made and offsetting the amount of such payment from any amounts then or thereafter owed by Blue Shield to Hospital.

(b)     Hospital shall not bill or collect from a Member, or any individual responsible for such Member's care, any charges in connection with non-Covered Services, non-Authorized services, or services determined not to be Medically Necessary, unless Hospital has first obtained a written acknowledgment from the Member, or the individual responsible for the Member's care, that such services are not Covered Services, not Authorized, or not Medically Necessary, as the case may be, and that the Member, or the individual responsible for the Member's care, is financially responsible for the cost of such services. Such acknowledgment shall be obtained prior to the time such services are provided to the Member, shall specify the specific services for which the Member, or the individual responsible for the Member's care, is agreeing to accept financial responsibility, and shall otherwise satisfy the applicable requirements set forth in the Provider Manual. Hospital's compliance with the terms of this Section 6.2(b) shall preserve for the Hospital its right to seek

19

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential -- Blue Shield of California

# blue 🛡 of california

payment from the responsible part for applicable services.

(c) In the event of Blue Shield's insolvency or other cessation of operations, Hospital shall continue to provide Hospital Services to Members through the period for which such Members' premiums have been paid or, with respect to Members enrolled in Blue Shield's Medicare Advantage Benefit Program, the duration of the contract period for which CMS payments have been made, and, with respect to any Member who is an Inpatient on the date of insolvency or other cessation of operations, until the Member's discharge or transfer to another appropriate facility.

(d) The provisions of this Section 6.2 shall: (i) survive the expiration or termination for any reason of this Agreement; (ii) be construed to be for the benefit of Members; and (iii) supersede any oral or written contrary agreement (now existing or hereafter entered into) between Hospital and the Member.

(e) This Section 6.2 shall not be modified without the prior approval of the appropriate government regulatory agency.

6.3 **Third Party Liens.** If a Member seeks and obtains a recovery from a third party or a third party's insurer for injuries caused to that Member, and only to the extent permitted by the Member's Evidence of Coverage and by state and federal law, Hospital shall have the right to assert a third party lien for and to recover from the Member the reasonable value of Covered Services provided to the Member by Hospital for the injuries caused by the third party. Hospital's pursuit and recovery under third party liens shall be conducted in strict accordance with the procedures set forth in the Provider Manual. Blue Shield shall similarly have the right to assert a lien for and recover for payments made by Blue Shield for such injuries. Hospital shall cooperate with Blue Shield in identifying such third party liability claims and in providing such information, within such time frames, as set forth in the Provider Manual. Nothing in this Agreement shall be construed as a waiver of Hospital's rights pursuant to California Civil Code Section 3045.1, et seq.

6.4 **Benefits Determination.** Blue Shield reserves the right to make all final decisions regarding Benefit Program coverage. Hospital shall refer Members who have inquiries or disputes regarding such coverage to Blue Shield for response or resolution. Notwithstanding the foregoing, this Section does not, and shall not be construed to, prohibit any physician from providing any medical treatment or other advice that such physician believes to be in the best interest of the patient.

6.5 **Member Complaints & Grievances.** Hospital shall promptly notify Blue Shield of receipt of any claims, including, without limitation, professional liability claims, filed or asserted by a Member against Hospital. Hospital shall cooperate with Blue Shield in identifying, processing, and resolving all Member grievances and other complaints in accordance with Blue Shield's complaint/grievance process and time limits set forth in the Provider Manual, as well as in accordance with such time limits as required by state and/or

20

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential – Blue Shield of California

# blue 🛡 of california

federal law.  Hospital shall comply with Blue Shield's resolution of any such complaints or grievances and any specific findings, conclusions or orders of the California Department of Managed Health Care ("DMHC") (or any successor agency).

6.6    **Medical Necessity Assistance.**  In all cases where Blue Shield or its delegate is making or has made a determination regarding the Medical Necessity of a medical service requested or provided to a Member, Hospital shall, upon the request of Blue Shield or its delegate, assist Blue Shield and/or its delegate in determining or verifying the Medical Necessity of such service, provide relevant medical records to Blue Shield and/or its delegate, and participate in any grievance, arbitration, and/or other proceedings in which such Medical Necessity determination is an issue.  In addition, Hospital shall cooperate with and abide by the Medical Necessity determination of any external review entity to which Blue Shield is either obligated by law to submit such disputes or with which Blue Shield has implemented a program to submit such disputes to external review.

6.7    **Free Exchange of Information.**  No provision of this Agreement shall be construed to prohibit, nor shall any provision in any contract between Hospital and its employees or subcontractors prohibit, the free, open and unrestricted exchange of any and all information of any kind between health care providers and Members regarding the nature of the Member's medical condition, available health care treatment options and alternatives and their relative risks and benefits, whether or not covered or excluded under the Member's Benefit Program, and the Member's right to appeal any adverse decision made by Hospital or Blue Shield regarding coverage of treatment that has been recommended or provided.  Hospital shall neither penalize nor sanction any health care provider in any way for engaging in such free, open, and unrestricted communication with a Member or for advocating for a particular service on a Member's behalf.

6.8    **Insurance.**

   (a)    Hospital shall maintain professional liability (malpractice) insurance and general liability insurance coverage in the minimum amount of One Million Dollars ($1,000,000) per occurrence and Three Million Dollars ($3,000,000) annual aggregate. If Hospital maintains a "claims made" malpractice insurance policy, Hospital shall keep such policy in effect for at least five (5) years following the expiration or termination for any reason of this Agreement or purchase extended reporting coverage (tail insurance) sufficient to ensure that insurance coverage in the amount set forth in this Section 6.8(a) is maintained for claims which arise from services provided by Hospital during the term of this Agreement.

   (b)    Hospital shall maintain Workers' Compensation insurance covering all employees of Hospital.

   (c)    Hospital shall notify and provide evidence to Blue Shield at the time of any amendment, change, or modification to such insurance coverage, and at any other

21

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential -- Blue Shield of California

blue 🛡 of california

time upon reasonable request by Blue Shield.

## VII. MEDICAL RECORDS & CONFIDENTIALITY

7.1    **Medical Records.**  Hospital shall prepare and/or maintain complete, timely and accurate medical and other records with respect to services provided to Members, in the same manner as for other patients of Hospital.  Hospital will require that all physicians treating Members at Hospital's facility(ies) create and maintain, in an accurate and timely manner, for each Member who has obtained care from such physician, a medical record that is organized in a manner that contains such demographic and clinical information as is necessary, in the opinion of the Blue Shield medical director and the Hospital medical director, to adequately document the medical problems of, and medical services provided to, the Member.  Such records shall include a historical record of diagnostic and therapeutic services recommended or provided by, or under the direction of, the physician.  Such records shall be in such a form as to allow trained health professionals, other than the physician, to readily determine the nature and extent of the Member's medical problem and the services provided and to permit peer review of the care provided.  Such records shall, upon request, and without unreasonable delay, be made available without charge to Blue Shield and its designated agents.  Failure to provide such records shall be deemed a material breach of the Agreement. Without limiting the foregoing, Hospital shall, without charge, transmit Member's medical records information to a Member's other providers, to Government Officials (as defined in Section 8.1(a)), and to Blue Shield for purposes of utilization management, quality improvement, and other Blue Shield administrative purposes.  Hospital shall secure from the Member, upon admission or prior to providing services, a release of medical information if such a release is required by law.

7.2    **Confidentiality.**  Hospital and Blue Shield shall comply with all applicable state and federal laws regarding privacy and confidentiality of medical information and records, including without limitation, mental health records.  Hospital and Blue Shield shall develop policies and procedures to ensure Member medical records are not disclosed in violation of California Civil Code Section 56, et seq., or any other applicable state or federal law.  To the extent Hospital or Blue Shield receives, maintains, or transmits medical or personal information of Members electronically, Hospital and Blue Shield shall comply with all state and federal laws relating to protection of such information, including, without limitation, the Health Insurance Portability & Accountability Act ("HIPAA") provisions on security and confidentiality and any Centers for Medicare and Medicaid Services ("CMS") regulations or directives relating to Medicare beneficiaries.  Each party agrees that it is separately responsible for the implementation of all necessary policies, procedures, and training to comply with HIPAA and other laws, rules and regulations pertaining to its use, maintenance, and disclosure of patient-related information.

7.3    **Member Access to Records.**  Hospital shall ensure that Members have access to their medical records in accordance with the requirements of state and federal law.

22

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential – Blue Shield of California

# blue 🛡 of california

## VIII. COOPERATION WITH AUDITS & CERTIFICATIONS

**8.1**   **Disclosure of Records.**

(a)   Hospital shall comply with all provisions of the Omnibus Reconciliation Act of 1980 regarding access to books, documents, and records.  Without limiting the foregoing, Hospital shall maintain such records and provide such information to Blue Shield and to the DMHC (or any successor agency), the Department of Health and Human Services ("DHHS"), CMS, any Quality Improvement Organization ("QIO") with which CMS contracts, the U.S. Comptroller General, their designees and any other governmental officials entitled to such access by law (collectively, "Government Officials") as required by law and as necessary for compliance by Blue Shield with state and federal laws governing Blue Shield.  Hospital shall grant to Blue Shield and/or Government Officials, upon request and within a reasonable amount of time, access to and copies of the medical records, books, charts, papers, and computer or other electronic systems relating to Hospital's provision of health care services to Members, the cost of such services, and payment received by Hospital from the Member (or from others on the Member's behalf), and to the financial condition of Hospital.  Such records described herein shall be maintained at least six (6) years from the date of service or in the case of financial records of Hospital, six (6) consecutive fiscal years, and, if this Agreement is applicable to Blue Shield's Medicare Advantage program, ten (10) years from the end of the final contract period between Blue Shield and CMS or the completion of any audit of Blue Shield or its subcontractors by DHHS, the General Accounting Office or their designees (or for a particular record or group of records, a longer time period when CMS or DMHC requests such longer record retention and Hospital is notified of such request by Blue Shield), and in no event for a shorter period than as may be required by the Knox-Keene Act and the regulations promulgated thereunder.  All books, documents, and records of Hospital shall be maintained in accordance with the general standards applicable to such book, document, or record keeping and shall be maintained during any audit or investigation by Government Officials.

(b)   Hospital shall, on request, disclose to Government Officials the method and amount of compensation or other consideration to be received by it from Blue Shield or payable by Hospital to its subcontractors.  Hospital shall maintain and make available to Government Officials:  (i) its subcontracts; and (ii) compensation/financial records relating to such subcontracts and compensation from Blue Shield.

(c)   Upon forty-eight (48) hours' prior notice, Hospital shall make any records of its quality improvement and utilization review activities pertaining to Members and provider credentialing files available to Blue Shield's Quality and Utilization Review Committee.  Such sharing of records shall be in accordance with, and limited as required by, Section 1157 of the California Evidence Code and Section

23

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential – Blue Shield of California

# blue 🛡 of california

1370 of the California Health and Safety Code, and shall not be construed as a waiver of any rights or privileges conferred on either party by those statutes.

**(d)**    Hospital shall permit Blue Shield, or its delegate, at Blue Shield's sole cost and expense and with reasonable prior notice to Hospital, to audit the books and records of Hospital as they relate to Hospital's services, billings, claims payments, and reporting pursuant to this Agreement. Hospital may charge Blue Shield a fee of up to Two Hundred Fifty Dollars ($250) per audit, which fee shall be waived by Hospital if the audit identifies an overpayment due Blue Shield. Notwithstanding any Hospital audit policy to the contrary, except as provided in this Section 8.1(d), Blue Shield shall have no obligation to compensate Hospital for costs associated with, or otherwise pay Hospital in order to conduct, an audit pursuant to Section 8.1(d).

**8.2**    **Site Evaluations.**    Hospital shall permit Government Officials and accreditation organizations to conduct periodic site evaluations and inspections of its facilities and records. If a Government Official or accreditation organization finds any deficiencies in such facilities or records, Hospital shall substantially correct such deficiencies within thirty (30) days of receipt of notice from such Government Official or accreditation organization. Hospital shall permit Blue Shield to conduct periodic site evaluations of its facilities. Such site evaluations shall be at a reasonable time as mutually agreed by Hospital and Blue Shield. If Blue Shield finds any deficiencies in such facilities Hospital shall use reasonable efforts to correct such deficiencies within thirty (30) days of receipt of notice from Blue Shield. Hospital and Blue Shield agree that Blue Shield's access to and right to review records pertaining to Members shall be pursuant to Section 7.1 and 8.1, as applicable.

**8.3**    **Accreditation Surveys.**    Hospital shall cooperate in the manner described in Sections 8.1 and 8.2 hereof with respect to surveys and site evaluations relating to accreditation of Blue Shield by the National Committee For Quality Assurance ("NCQA") or any other accrediting organization. Hospital further agrees to promptly implement any changes Blue Shield deems reasonably required as a result of any such survey.

**8.4**    **Performance/Compliance Monitoring.**    Hospital shall cooperate with Blue Shield in the performance of any monitoring, studies, evaluations, analyses, or surveys of Hospital's performance of services hereunder required by Government Officials, accrediting organizations, or the Association (as defined in 12.13). Nothing in this Agreement shall prohibit Blue Shield from using, releasing, and/or publishing Hospital performance data, pursuant to Health & Safety Code Section 1367.49.

## IX. **RESOLUTION OF DISPUTES**

**9.1**    **Provider Appeal Resolutions Process.**

**(a)**    Blue Shield's Provider Appeal resolution process ("Appeal Process") shall apply to

24

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential – Blue Shield of California

# blue ⬤ of california

any and all disputes arising under this Agreement. The Appeal Process shall comply with Sections 1367(h), 1371, 1371.1, 1371.2, 1371.22, 1371.35, 1371.36, 1371.37, 1371.4, and 1371.8 of the California Health & Safety Code, and Sections 1300.71, 1300.71.38, 1300.71.4, and 1300.77.4 of Title 28 of the California Code of Regulations. The Appeal Process shall be described in the Provider Manual and on the provider portal of Blue Shield's website at www.blueshieldca.com.

**(b)**   The Appeal Process consists of two (2) levels:

**(i)**   *Provider Appeal Resolutions Process - Paragraph b(i).  Initial Appeals Process.* Provider Appeals must be submitted by Hospital, in writing, within three hundred sixty-five (365) days of Blue Shield's determination, lack of action or alleged breach, to the address for Initial Provider Appeals provided on the provider portal of Blue Shield's website at www.blueshieldca.com.

**(ii)**   *Provider Appeal Resolutions Process - Paragraph b(ii).  Final Appeal Process.* Any Provider Appeal that is not resolved to Hospital's satisfaction during the Initial Appeal Process must be submitted to the Final Appeal Process. All Provider Appeals must be submitted to the Final Appeal Process by Hospital, in writing, within ninety (90) working days of Blue Shield's Initial Provider Appeal determination, to the address for such Provider Appeals provided on Blue Shield's website at www.blueshieldca.com.

**(c)**   Each Provider Appeal must contain the following information:

**(i)**   Hospital's name;

**(ii)**   Hospital's identification number – the Blue Shield provider identification number (PIN), tax identification number (TIN), or National Provider Identifier (NPI);

**(iii)**   Hospital mailing address and phone number;

**(iv)**   Blue Shield's Internal Control Number (ICN), when applicable;

**(v)**   The patient's name, when applicable;

**(vi)**   The patient's Blue Shield subscriber number, when applicable;

**(vii)**   The date of service, when applicable; and

25

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential – Blue Shield of California

blue 🛡 of california

    **(viii)**    A clear explanation of the issue the provider believes to be incorrect, including supporting medical records, when applicable.

    **(ix)**    In addition, as applicable, bundled appeals must identify individually each item by using either the ICN or the section of the contract and sequential numbers that are cross-referenced to a document or spreadsheet.

**(d)**    This Section 9.1 does not in any way modify the provisions of Section 9.2 hereof relating to arbitration of disputes that cannot be resolved through the Appeal Process. However, if Hospital fails to submit a Provider Appeal to either level of the Appeal Process within the timeframes set forth above, Hospital shall be deemed to have waived its right to any remedies and to pursue the matter further. Without limiting the foregoing, in such instance, Hospital may neither initiate a demand for arbitration pursuant to Section 9.2 of this Agreement nor pursue additional payment from the Member.

**(e)**    Blue Shield and Hospital agree to submit any disputes that cannot be resolved by the Appeal Process to binding arbitration pursuant to Section 9.2 of this Agreement. Pursuit by Hospital of a dispute through the process described in this Article IX shall neither modify nor relieve Hospital of any obligations to continue to provide services to Members in accordance with and to comply with all terms of this Agreement.

**9.2**    **Arbitration of Disputes**  Any dispute (other than a claim of medical malpractice) between the parties that exceeds the jurisdiction of Small Claims Court and that was reviewed through, but not resolved by, the Appeal Process set forth in Section 9.1 shall be settled by final and binding arbitration in San Francisco, Los Angeles, San Diego or Sacramento, California, whichever city is closest to Hospital.  Arbitration shall be conducted by and under the Commercial Rules of the American Arbitration Association.  The arbitrator shall be a retired judge of the State of California, unless otherwise agreed to by the parties.  The arbitration decision shall be binding on both parties.  The arbitrator shall be bound by applicable state and federal law and shall issue written findings of fact and conclusions of law. The arbitrator shall have no authority to conduct or issue a decision with respect to any class arbitration or other claim brought by Hospital on behalf of the general public under a statute or regulation that allows an individual to sue on behalf of the Attorney General or other federal, state or municipal actor, or in any other representative capacity. The arbitrator shall have no authority to award damages or provide a remedy that would not be available to such prevailing party in a court of law nor shall the arbitrator have the authority to award punitive damages. The cost of the arbitration shall be shared equally by Hospital and Blue Shield; provided that each party shall be responsible for its own attorneys' fees and costs.

**9.3**    **Limitation of Actions.**  A demand for arbitration pursuant to Section 9.2 must be filed within twelve (12) months of the date of the written decision rendered in the Final Appeal

26

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential – Blue Shield of California

blue 🛡 of california

Process described in Section 9.1(b)(ii) (the "Final Appeal Decision"), notwithstanding any communication between the parties that may take place, or payment(s) that may be made, subsequent to the Final Appeal Decision related to the lack of action or alleged breach that is the subject of the dispute. Should the aggrieved party fail to file a demand for arbitration of the dispute within the timeframe set forth herein, the aggrieved party shall have waived its rights and remedies with respect to the alleged breach. The aggrieved party shall have no right to pursue any remedy with respect to such alleged breach, including, without limitation, initiation of any arbitration or civil action in state or federal court, and, if the aggrieved party is Hospital, Hospital shall have no right to pursue payment of any disputed amounts from the Member.

9.4   **Appeals.** In the event Hospital, intentionally or unintentionally, initiates a demand for arbitration pursuant to Section 9.2 of this Agreement regarding the alleged underpayment of a claim for reimbursement for Hospital Services and for which Hospital has failed to submit a Provider Appeal to both levels of the Appeal Process (an "Unappealed Claim"), upon notice from Blue Shield, Hospital will immediately dismiss the demand for arbitration as to any Unappealed Claim(s) and will reimburse Blue Shield for its reasonable costs and attorneys' fees associated with its defense of the Unappealed Claim(s).

## X. TERM & TERMINATION

10.1   **Term.** This Agreement shall become effective as of the Effective Date and shall continue in effect for twenty (20) months thereafter (the "Initial Term"), unless earlier terminated as set forth in this Agreement. Unless either party notifies the other party at least one hundred eighty (180) days prior to the expiration of the Initial Term, this Agreement shall automatically renew for additional terms of one (1) year each, unless and until terminated as set forth in this Agreement.

10.2   **Termination Without Cause.** During the Initial Term, neither party may terminate this Agreement without cause. Thereafter, either party may terminate this Agreement without cause by giving to the other party at least one hundred eighty (180) days' prior written notice of termination. Any termination pursuant to this Section 10.2 shall become effective the first day of the calendar month following the expiration of the notice period.

10.3   **Termination for Cause.**

(a)   Either party may terminate this Agreement for material cause following written notice and the opportunity to cure described in Section 10.3(b). The following shall constitute material cause for termination:

(i)   *By Hospital:* (A) revocation of Blue Shield's license necessary for the performance of this Agreement; (B) breach by Blue Shield of any material term, covenant, or condition of this Agreement; or (C) failure of Blue Shield and Hospital to agree upon any material change to the Provider

27

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential -- Blue Shield of California

# blue 🛡 of california

Manual in accordance with Section 2.10.

      (ii)    *By Blue Shield:* (A) commencement of any voluntary or involuntary proceedings by or against Hospital or a parent, affiliate or subsidiary thereof, under any bankruptcy, reorganization, insolvency or other similar law of any jurisdiction; (B) any substantial deterioration in the financial condition of Hospital or a parent, affiliate or subsidiary thereof that is reasonably shown to impact the Hospital's ability to provide and/or arrange for the services contemplated hereunder; (C) failure by Hospital to provide Hospital Services consistent with the standards and/or procedures set forth in this Agreement and in the Provider Manual; (D) revocation, termination, or restriction of any type of any license required in order for Hospital to provide Hospital Services pursuant to this Agreement; or (E) breach by Hospital of any material term, covenant, or condition of this Agreement, including, without limitation, repeated failure to comply with procedures set forth in the Provider Manual.

    (b)    A party seeking to terminate this Agreement pursuant to Section 10.3(a) shall notify the other party in writing of the nature of the cause and shall provide the non-terminating party thirty (30) days from the receipt of such notice to cure or otherwise eliminate such cause.  If, within such thirty (30) days, the non-terminating party does not remedy the breach, to the reasonable satisfaction of the terminating party, this Agreement shall terminate at the end of the thirty (30)-day period.

10.4    **Immediate Termination.**  Notwithstanding any provision of this Agreement to the contrary, Blue Shield may immediately terminate this Agreement, upon written notice to Hospital, if: (a) Hospital is excluded from participation in Medicare; (b) Hospital enters into a "private contract" with a Member for the provision of services, contrary to Medicare regulations applicable to Blue Shield; (c) Hospital fails to maintain all insurance required herein; (d) after consulting with Hospital, Blue Shield determines, in good faith, that continuation of this Agreement may reasonably be expected to jeopardize the health, safety, or welfare of Members; or (e) after consulting with Hospital, Blue Shield reasonably determines that Hospital is likely to be financially unable to provide Hospital Services in a competent and timely manner.

10.5    **Effect of Termination.**  As of the date of termination, this Agreement shall be considered of no further force or effect whatsoever, and each of the parties shall be relieved and discharged herefrom, except that:

    (a)    Termination shall not affect:  (i) those rights and obligations that have accrued and remain unsatisfied prior to the termination of this Agreement; (ii) those rights and obligations that expressly survive termination of this Agreement; or (iii) any rights or obligations that may arise following termination with respect to any occurrence

28

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential – Blue Shield of California

blue 🛡 of california

prior to termination. All such rights and obligations shall continue to be governed by the terms of this Agreement.

**(b)** Following termination, Hospital shall comply with all applicable requirements of the Knox-Keene Act and the regulations promulgated thereunder, including, without limitation, those set forth in California Health & Safety Code Section 1373.65.

**(c)** Following termination, Hospital shall continue providing Hospital Services to Members who, as determined by Blue Shield, qualify for completion of Covered Services under California Health & Safety Code Section 1373.96(c) ("Continuity of Care Services"), in accordance with the provisions therein, at seventy-five (75%) of Allowed Charges.

**(d)** Following termination, Hospital shall, at Blue Shield's option, continue providing Hospital Services to Members (other than Members entitled to Continuity of Care Services) undergoing medical treatment upon the date of termination of this Agreement, for the duration of the Health Services Contracts through which such Members are enrolled with Blue Shield and for which dues or subscription charges are paid to Blue Shield, or until such time as Blue Shield has arranged for an alternative source of services for each such Member from other Blue Shield Providers at the following rates: Seventy-Five Percent (75%) of Hospital Allowed charges for Commercial HMO and PPO Members and One Hundred Percent (100%) of the Medicare Allowable for Medicare Advantage Members

**(e)** All written, printed, or electronic communications to Members concerning termination of this Agreement shall comply with California Health & Safety Code Section 1373.65(f).

**10.6** **Termination Not an Exclusive Remedy.** The termination of this Agreement by either party pursuant to this Article X is not an exclusive remedy. The terminating party shall retain and may exercise whatever rights it may have in law or equity as may be necessary to enforce its rights under this Agreement.

**10.7** **Survival.** This Section 10.7 and the following Sections of this Agreement shall survive the expiration or termination for any reason of this Agreement: Sections 5.1, 5.2, 5.3, 5.4, 5.5, 5.6, 5.7, 5.8, 6.1, 6.2, 6.5, 6.6, 7.1, 7.2, 7.3, 8.1, 9.1, 9.2, 9.3, 10.5, 12.13, 12.14, 12.15, 12.16 and 12.17.

## XI. OTHER PAYORS

**11.1** **Other Payors.** Blue Shield may contract with employers, insurance companies, associations, health and welfare trusts, or other organizations to provide administrative

29

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential – Blue Shield of California

blue 🛡 of california

services for plans provided by those entities that are not underwritten by Blue Shield
(including both local and Blue Cross/Blue Shield National Accounts Programs). In
addition, Blue Shield may extend this Agreement to managed care arrangements
established by Blue Shield subsidiaries, or by persons or entities using the network Blue
Shield has established pursuant to agreements with CareTrust Networks and Blue Shield
of California Life & Health Insurance Company. All such entities shall be referred to as
"Other Payors." Blue Shield shall require that the health programs of Other Payors include
provisions to encourage the use of Blue Shield Providers (including Hospital).

11.2    **Responsibility for Payment.** Hospital agrees to look solely to Other Payors for payment
for services furnished to Members of such Other Payor. If Hospital is unable to obtain
payment from any Other Payor, Blue Shield shall, upon notice from Hospital, make
commercially reasonable efforts to assist Hospital in obtaining such payment. However,
any continuing dispute with respect to such payment shall be settled solely between
Hospital and such Other Payor with good faith facilitation from Blue Shield.

11.3    **Applicability of Agreement; Identity of Other Payors.** The provisions of this
Agreement shall apply to services rendered to Members enrolled in health benefit programs
of Other Payors. Blue Shield will periodically give Hospital notice of the identity of Other
Payors.

## XII. GENERAL PROVISIONS

12.1    **Entire Agreement.** The attached Exhibits, together with all documents incorporated by
reference in the Exhibits, and the Provider Manual, as from time to time amended in
accordance with this Agreement, form an integral part of this Agreement and are
incorporated by reference into this Agreement. This Agreement constitutes the entire
understanding and agreement of the parties regarding its subject matter, and supersedes
any prior oral or written agreements, representations, understandings or discussions among
the parties with respect to such subject matter. Notwithstanding the foregoing, this
Agreement shall neither supersede nor replace any capitated HMO (including, without
limitation, Medicare Advantage) hospital agreement that may exist between Hospital and
Blue Shield, which agreement shall solely apply with respect to the provision of services
to any HMO Members for whom Hospital has financial responsibility for Covered Services
under such capitated agreement.

12.2    **Amendments.** Except as provided in Section 2.10, Section 5.6(c), and this Section 12.2,
this Agreement may be amended only by mutual, written consent of Blue Shield and
Hospital's duly authorized representatives. Notwithstanding the foregoing, if Blue Shield's
legal counsel determines in good faith that this Agreement must be modified to be in
compliance with applicable federal or state law or to meet the requirements of accreditation
organizations that accredit Blue Shield and its providers, Blue Shield may amend this
Agreement by delivering to Hospital a written amendment to this Agreement incorporating
the legally required modifications (the "Legally Required Amendment"), along with an

30

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential – Blue Shield of California

# blue 🛡 of california

explanation of why such Legally Required Amendment is necessary. If Hospital does not object to the Legally Required Amendment, in writing, within sixty (60) days following receipt thereof, such Legally Required Amendment shall be deemed accepted by Hospital and an amendment to this Agreement. If Hospital timely objects to the Legally Required Amendment, then Hospital and Blue Shield shall confer in good faith regarding Hospital's objection(s). If Hospital and Blue Shield are unable to resolve Hospital's objection(s) to the parties' mutual satisfaction within thirty (30) days of Hospital's notice, then, within sixty (60) days of Hospital's notice, Hospital may elect to terminate this Agreement upon ninety (90) days' prior written notice to Blue Shield. Unless Hospital so terminates this Agreement, such Legally Required Amendment shall be deemed accepted by Hospital and an amendment to this Agreement.

12.3   **Assignment.** Neither party shall assign, transfer, or subcontract any of its rights, interests, duties, or obligations under this Agreement, whether by sale, assignment, negotiation, pledge or otherwise, without the prior written consent of the other party. Without limiting the foregoing, the following events shall constitute an assignment of this Agreement for purposes of this Section 12.3: (a) the sale, transfer or other disposition of all or substantially all of the issued and outstanding voting securities or interests of either party or either party's direct or indirect corporate parent; (b) the merger, consolidation or other reorganization of either party if, immediately following such transaction, either party or its member(s) shareholders or other equity holders (as existing immediately preceding such transaction) do not own a majority of all classes of the issued and outstanding membership interests or voting securities of the surviving, consolidated or reorganized entity; and (c) the issuance of any class of voting securities or interests by either party (or its successor) if, immediately following such transaction, either party's shareholders or other equity holders existing immediately preceding such issuance do not own a majority of all classes of the issued and outstanding voting securities or interests of either party. Subject to the foregoing, this Agreement shall be binding on and shall inure to the benefit of the parties and their respective heirs, successors, assigns and representatives.

12.4   **Third Party Beneficiaries.** This Agreement shall not confer or be construed to confer any rights or benefits to any person or entity other than the parties, and no action to enforce the terms of this Agreement may be brought against either party by any person or entity who is not a party hereto.

12.5   **Notices.** All notices or communications required or permitted under this Agreement shall be given in writing and shall be delivered to the party to whom notice is to be given either: (a) by personal delivery, in which case such notice shall be deemed given on the date of delivery; (b) by next business day courier service (e.g., Federal Express, UPS or other similar service), in which case such notice shall be deemed given on the business day following date of deposit with the courier service; (c) by United States mail, first class, postage prepaid, in which case such notice shall be deemed given on the third (3rd) day following the date of deposit with the United States Postal Service; (d) by United States mail, registered, in which case such notice shall be deemed given on the third (3rd) day

31

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_y4Final.docx v47 rev 7/10/17
Proprietary and Confidential - Blue Shield of California

blue 🛡 of california

following the date of deposit with the United States Postal Service;  (e) by United States mail, certified, return receipt requested, in which case such notice shall be deemed given on the third (3rd) day following the date of deposit with the United States Postal Service; or (f) by facsimile transmission, in which case such notice shall be deemed given upon receipt of facsimile transmission confirmation.  Notice shall be delivered or sent to the party's address or facsimile number set forth in Exhibit A, or such other address or facsimile number as may be provided by a party, from time to time, pursuant to this Section.

12.6    **Independent Contractors**.   In the performance of each party's work, duties, and obligations pursuant to this Agreement, each of the parties shall at all times be acting and performing as an independent contractor, and nothing in this Agreement shall be construed or deemed to create a relationship of employer and employee, principal and agent, partner, or joint venturer.

12.7    **Indemnification**.   Each party agrees to indemnify the other party for, and to defend and hold harmless the other party from, any claims, causes of action, or costs, including reasonable attorneys' fees, arising out of the indemnifying party's alleged or actual negligence or otherwise improper performance of its obligations hereunder.  In addition, Hospital shall indemnify Blue Shield for any sanctions imposed by CMS upon Blue Shield arising out of or related to Hospital's employment of or contract with an individual or entity excluded or suspended from participation in Medicare.

12.8    **Waiver of Breach**.   No delay or failure to require performance of any provision of this Agreement shall constitute a waiver of the performance of such provision or any other instance.  Any waiver granted by a party must be in writing, and shall apply solely to the specific instance expressly stated.  A waiver of any term or condition of this Agreement shall not be construed as a waiver of any other terms and conditions of this Agreement, nor shall any waiver constitute a continuing waiver.

12.9    **Force Majeure**.   Neither party is liable for nonperformance or defective or late performance of any of its obligations under this Agreement to the extent and for such periods of time as such nonperformance, defective performance or late performance is due to reasons outside such party's control, including acts of God, war (declared or undeclared), action of any governmental authority, riots, revolutions, fire, floods, explosions, sabotage, nuclear incidents, lightning, weather, earthquakes, storms, sinkholes, epidemics, or strikes (or similar nonperformance or defective performance or late performance of employees, suppliers or subcontractors).

12.10    **Confidentiality**.   Except as otherwise set forth in this Section 12.10, as necessary to Hospital's and Blue Shield's performance hereunder, or as required by law, the reimbursement rates set forth in this Agreement shall be confidential, and neither Hospital nor Blue Shield shall disclose such rates (other than to Government Officials or to Other Payors) without the prior written consent of the other party. Notwithstanding the foregoing, nothing in this Agreement shall prohibit Hospital from disclosing to Members and others

32

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential – Blue Shield of California

# blue ⬡ of california

the method by which they are compensated (e.g., capitation, fee for service, etc.), it being acknowledged and understood that it is the precise compensation amounts for which confidential treatment is required by this provision. Notwithstanding the foregoing, nothing in this Agreement may be construed to prohibit Blue Shield from disclosing the Agreement to the California Public Employees Retirement System (CalPERS). Notwithstanding any other provision in the Agreement, Hospital authorizes Blue Shield to disclose this Agreement to CalPERS upon a request by CalPERS for disclosure of the Agreement.

12.11  **Non-Solicitation.**  During the term of this Agreement, and for one (1) year thereafter, Hospital shall not solicit, induce, or encourage any Member (except those Members covered under Verity Health System Benefit Plan) to disenroll from Blue Shield or select another health care service plan for health care services. Notwithstanding the foregoing, Hospital shall be entitled to freely communicate with Members regarding any aspect of their health status or treatment.

12.12  **Association Disclosure.**  Hospital hereby expressly acknowledges its understanding that this Agreement constitutes a contract between Hospital and Blue Shield, that Blue Shield is an independent corporation operating under a license from the Blue Cross and Blue Shield Association, an association of independent Blue Cross and Blue Shield Plans (the "Association") permitting Blue Shield to use the Blue Shield Service Mark in the State of California, and that Blue Shield is not contracting as the agent of the Association. Hospital further acknowledges and agrees it has not entered into this Agreement based upon representations by any person other than Blue Shield and no person, entity, or organization other than Blue Shield shall be held accountable or liable to Hospital for any of Blue Shield's obligations to Hospital created under this Agreement. This Section shall not create any additional obligations whatsoever on the part of Blue Shield other than those obligations created under other provisions of this Agreement.

12.13  **Governing Law.**  This Agreement shall be governed by and construed according to the laws of the State of California, including, without limitation, the Knox-Keene Act and the regulations promulgated thereunder. Any provision required to be in this Agreement by the Knox-Keene Act and/or the regulations promulgated thereunder shall bind Blue Shield and Hospital, whether or not provided in this Agreement.

12.14  **Preemption by Federal Law.**  To the extent any of the requirements of the Knox-Keene Act and the regulations promulgated thereunder are preempted by federal law applicable to the Medicare program, no such requirements shall apply with respect to Blue Shield's Medicare Advantage Program.

12.15  **Compliance With Law.**  Each party shall comply with all applicable state and federal laws. Without limiting the foregoing:

(a)  Hospital shall comply with all applicable Medicare laws, regulations, and CMS instructions including, without limitation, Title VI of the Civil Rights Act of 1964,

33

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential – Blue Shield of California

# blue 🛡 of california

Section 504 of the Rehabilitation Act of 1973, the Age Discrimination Act of 1975, the Americans with Disabilities Act, and shall require its contractors and subcontractors to do the same. In addition, all such Covered Services shall be performed in a manner consistent and otherwise in compliance with Blue Shield's agreement with CMS. Hospital shall include the requirements of this Section and all other provisions required by federal and state laws, including, without limitation, the BBA and related regulations, in all contracts or subcontracts with other providers or entities.

(b)    To the extent Employee Retirement Income Security Act ("ERISA") statutes and regulations apply to the claims payment and Member complaint functions performed by Hospital, Hospital shall comply with all such requirements.

(c)    Hospital shall comply with all applicable provisions of the Patient Protection and Affordable Care Act and regulations promulgated thereunder, and shall require its contractors and subcontractors to do the same. In addition, all such Covered Services shall be performed in a manner consistent and otherwise in compliance with Blue Shield's agreement with Covered California, and require its contractors and subcontractors to do the same.

**12.16    Interpretation of Agreement.** This Agreement shall not be interpreted for or against any one party on the basis of which party drafted this Agreement. This Agreement shall be governed in all respects, whether as to validity, construction, capacity, performance, or otherwise, by the laws of the State of California and such federal laws as are applicable to Blue Shield. The captions herein are for convenience only and shall not affect the meaning or interpretation of this Agreement. If any provision of this Agreement, in whole or in part, or the application of any provision, in whole or in part, is determined to be illegal, invalid or unenforceable by a court of competent jurisdiction, such provision, or part of such provision, shall be severed from this Agreement. The illegality, invalidity or unenforceability of any provision, or part of any provision, of this Agreement shall have no affect on the remainder of this Agreement, which shall continue in full force and effect.

**12.17    Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

**12.18    Tiered Benefit Designs and Narrow Network.**

(a)    Hospital acknowledges and agrees that nothing in this Agreement shall limit or otherwise prohibit Blue Shield from at any time developing, marketing and implementing: (i) tiered products, plans, benefit designs or Benefit Programs; (ii) provider networks that tier or rank participating providers (including Hospital) and where such tier or rank directly affects the Member's and/or employer's premium, copayment or cost share or restricts or limits network access; and or (iii) narrow,

34

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential – Blue Shield of California

# blue 🛡 of california

restricted or limited provider networks or products that require Members (or those who pay for their coverage) to pay more for the same (or substantially similar) product or benefit design to access all Blue Shield contracted providers compared to a network that does not include Hospital (collectively, "Tiered/Narrow Products"); and

(b)     Prior to excluding Hospital from, or tiering or ranking Hospital within, any Tiered/Narrow Product, Blue Shield shall provide written notice to Hospital, reasonably prior to implementing or modifying the Tiered/Narrow Product, that explains in detail how the Tiered/Narrow Product will work and Hospital's status within the Tiered/Narrow Product. Upon written request from Hospital, Blue Shield will meet with Hospital to discuss the requirements for participation in the Tiered/Narrow Product and what actions, if any, Hospital must take in order to meet those requirements. However, any such meeting shall not delay Blue Shield's implementation of a Tiered/Narrow Product.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their authorized representatives:

| BLUE SHIELD OF CALIFORNIA | O'CONNOR HOSPITAL |
|---|---|
| Signature: | Signature: |
| Print Name: Aliza Arjoyan | Print Name: David Sachs |
| Title: Vice President, Provider Network Management | Title: Chief Financial Officer, Verity Health System |
| Date: 12/21/17 | Date: 12/7/17 |

35

OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4
Base OCONNOR HOSPITAL - FFS Hosp Agreement_Base 12-01-17_v4Final.docx v47 rev 7/10/17
Proprietary and Confidential -- Blue Shield of California