Michael B. Reynolds (SBN 174534)
mreynolds@swlaw.com
Andrew B. Still (SBN 312444)
astill@swlaw.com
SNELL & WILMER L.L.P.
600 Anton Blvd, Suite 1400
Costa Mesa, California  92626-7689
Telephone:      714.427.7000
Facsimile:      714.427.7799

Attorneys for Defendant California Physicians' Service
dba Blue Shield of California

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Lead Case No. 2:18-bk-20151-ER |
| VERITY HEALTH SYSTEM OF CALIFORNIA, INC., et al., | Jointly Administered With:<br>Case No.: 2:18-bk-20162-ER<br>Case No.: 2:18-bk-20163-ER<br>Case No.: 2:18-bk-20164-ER<br>Case No.: 2:18-bk-20165-ER<br>Case No.: 2:18-bk-20167-ER<br>Case No.: 2:18-bk-20168-ER<br>Case No.: 2:18-bk-20169-ER<br>Case No.: 2:18-bk-20171-ER<br>Case No.: 2:18-bk-20172-ER<br>Case No.: 2:18-bk-20173-ER<br>Case No.: 2:18-bk-20175-ER<br>Case No.: 2:18-bk-20176-ER<br>Case No.: 2:18-bk-20178-ER<br>Case No.: 2:18-bk-20179-ER<br>Case No.: 2:18-bk-20180-ER<br>Case No.: 2:18-bk-20181-ER |
| Debtors and Debtors In Possession. | |
| Affects: | |
| ☐ All Debtors | |
| ☐ Verity Health System of California, Inc.<br>☒ O'Connor Hospital<br>☒ Saint Louise Regional Hospital<br>☐ St. Francis Medical Center<br>☒ St. Vincent Medical Center<br>☒ Seton Medical Center<br>☐ O'Connor Hospital Foundation<br>☐ Saint Louise Regional Hospital Foundation<br>☐ St. Francis Medical Center of Lynwood Foundation<br>☐ St. Vincent Foundation<br>☐ St. Vincent Dialysis Center, Inc.<br>☐ Seton Medical Center Foundation<br>☐ Verity Business Services<br>☐ Verity Medical Foundation<br>☐ Verity Holdings, LLC<br>☐ De Paul Ventures, LLC<br>☐ De Paul Ventures - San Jose Dialysis, LLC | Chapter 11 Cases<br><br>Adv. No. 2:20-ap-01575-ER<br><br>**Blue Shield of California's Notice of Motion and Motion to:**<br><br>**(1) Dismiss Claims for Turnover, Violation of the Automatic Stay and Unjust Enrichment; and**<br><br>**(2) Compel Arbitration and Stay Adversary Proceeding; Memorandum of Points and Authorities** |
| Debtors and Debtors In Possession. | Hearing Information:<br>Date:         November 24, 2020<br>Time:         11:00 a.m.<br>Courtroom: 1568<br>Address:     255 East Temple Street<br>                   Los Angeles, CA 90012 |

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1    ST. VINCENT MEDICAL CENTER, a
California nonprofit public benefit
2    corporation, SETON MEDICAL CENTER, a
California nonprofit public benefit
3    corporation, O'CONNOR HOSPITAL, a
California nonprofit public benefit
4    corporation, and SAINT LOUISE
REGIONAL HOSPITAL, a California
5    nonprofit public benefit corporation,
6

7            Plaintiffs,

8       v.

9    CALIFORNIA PHYSICIANS' SERVICE dba
BLUE SHIELD OF CALIFORNIA, a
10    California nonprofit public benefit
corporation,
11

12            Defendant.

13

14        TO THE HONORABLE ERNEST M. ROBLES, UNITED STATES BANKRUPTCY

15 JUDGE, PLAINTIFFS, THEIR COUNSEL OF RECORD, AND ALL PARTIES IN INTEREST:

16        PLEASE TAKE NOTICE that on November 24, 2020, at 11:00 a.m., or as soon thereafter

17 as counsel may be heard, before the Honorable Ernest M. Robles, United States Bankruptcy

18 Judge for the Central District of California, in Courtroom 1568 of the United States Bankruptcy

19 Court located at 255 East Temple Street, Los Angeles, California 90012, defendant California

20 Physicians' Service dba Blue Shield of California ("Blue Shield"), by and through undersigned

21 counsel, will and hereby does move (the "Motion") the Court for an order:

22           (1)      Dismissing the Second, Sixth, Tenth and Fourteenth Claims for Relief for

23        Turnover under Section 542,[1] the Fourth, Eighth, Twelfth and Sixteenth Claims for Relief

24        for Violation of the Automatic Stay under Section 362, and the Third, Seventh, Eleventh

25        and Fifteenth Claims for Relief for Unjust Enrichment asserted by plaintiffs St. Vincent

26        Medical Center ("St. Vincent"), Seton Medical Center ("Seton"), O'Connor Hospital

27

28

---

[1] Unless otherwise indicated, all "Code," "chapter," and "Section" references are to Title 11 of the United States Code (the "Bankruptcy Code"), 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure ("FRBP") which make applicable certain Federal Rules of Civil Procedure ("FRCP").

MOTION TO DISMISS AND
COMPEL ARBITRATION

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1  ("O'Connor") and Saint Louise Regional Hospital ("Saint Louise") (St. Vincent, Seton,

2  O'Connor and Saint Louise are each referred to as "Plaintiff" and collectively as the

3  "Plaintiffs"), respectively, in their Complaint for Breach of Written Contracts, Turnover,

4  Unjust Enrichment, and Damages for Violation of the Automatic Stay, filed on August 28,

5  2020, as Docket No. 1 (the "Complaint"), in the above-captioned adversary proceeding

6  (the "Adversary Proceeding"); and

7        (2)    Compelling Plaintiffs to arbitrate the First, Fifth, Ninth and Thirteenth

8  Claims for Breach of Contract against Blue Shield in accordance with each Plaintiff's

9  arbitration agreement with Blue Shield and related dispute resolution procedures, and to

10  stay the Adversary Proceeding pending arbitration.

11       PLEASE TAKE FURTHER NOTICE that this Motion is made pursuant to FRBP 7012

12  and 9 U.S.C. Sections 2-4, and is based on this Notice of Motion and Motion, the attached

13  Memorandum of Points and Authorities, the Request for Judicial Notice filed concurrently

14  herewith, pleadings and papers on file in this Adversary Proceeding and the main bankruptcy

15  case, and on such other and further matters as the Court may allow.

16       PLEASE TAKE FURTHER NOTICE that, pursuant to Local Bankruptcy Rule 9013-1(f),

17  any party wishing to oppose or respond to this Motion is required to file a written response with

18  the Court and serve it on counsel for Blue Shield at least fourteen (14) days before the hearing on

19  the Motion.

20

21  Dated: October 30, 2020           Respectfully submitted,

22                           SNELL & WILMER L.L.P.

23

24                          By:   /s/ Michael B. Reynolds
                               Michael B. Reynolds

25                                 Andrew B. Still
                               Attorneys for California Physicians'

26                                 Service, dba Blue Shield of California

27

28

*Left margin (vertical):* SNELL & WILMER L.L.P.  LAW OFFICES  600 ANTON BLVD, SUITE 1400  COSTA MESA, CALIFORNIA 92626-7689

MOTION TO DISMISS AND
COMPEL ARBITRATION

1

# TABLE OF CONTENTS

2

**Page**

3  I. INTRODUCTION ...................................................................................................9

4  II. STATEMENT OF FACTS .................................................................................10

5      A.    The Debtors and Their Bankruptcy Cases. ..........................................10

    B.    Blue Shield and the Agreements. .........................................................10

6      C.    The Arbitration Provisions. ..................................................................11

7      D.    Plaintiffs' Complaint. ............................................................................12

8  III. THE CLAIMS FOR TURNOVER, VIOLATION OF THE AUTOMATIC STAY
    AND UNJUST ENRICHMENT MUST BE DISMISSED ..............................13

9      A.    Legal Standard for Dismissal. ..............................................................13

10      B.    Plaintiffs Fail to State a Plausible Claim for Turnover under Section 542. ...........15

11      C.    Plaintiffs Fail to State a Plausible Claim for Violation of the Automatic
Stay .......................................................................................................17

12      D.    Plaintiffs Fail to State a Plausible Claim for Unjust Enrichment .......18

13          1.    California Law Does Not Recognize a Cause of Action for Unjust
Enrichment. ...............................................................................18

14

15          2.    Unjust Enrichment Claims Fail Where There Is an Express
Agreement. ................................................................................18

16          3.    Blue Shield Did Not Receive any Benefit and Therefore Was Not
Unjustly Enriched. ....................................................................19

17

18  IV. ARBITRATION SHOULD BE COMPELLED FOR THE BREACH OF CONTRACT
CAUSES OF ACTION AND THIS ADVERSARY PROCEEDING SHOULD BE
DISMISSED OR STAYED ...........................................................................20

19

20      A.    Longstanding and Binding Precedent Favors Enforcing Arbitration
Agreements. ..........................................................................................20

21      B.    Arbitration Agreements Must Be Enforced In Bankruptcy For *Non*-Core
Matters; They Must Also Be Enforced For Core Matters Where Doing So
22         Does Not Conflict With Bankruptcy Law. ...........................................21

23      C.    Plaintiffs' Arbitrable Claims are Not Core Proceedings. .....................22

24      D.    The Arbitration Provisions are Enforceable. ........................................24

        1.    The Arbitration Provisions Are Valid. ......................................24

25

26          2.    The Arbitration Provisions Encompass the Breach of Contract
Claims. ......................................................................................26

27      E.    The Adversary Proceeding Should be Dismissed or Stayed Pending
Arbitration. ............................................................................................26

28  V. CONCLUSION ....................................................................................................27

MOTION TO DISMISS AND
COMPEL ARBITRATION

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allied-Bruce Terminix Companies, Inc. v. Dobson*,
    513 U.S. 265 (1995) ........................................................................................ 24, 25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................ 14, 16

*Aspire Home Healthcare, Inc. v. Therastaff, LLC*,
    No. 13CV2917-MMA (JLB), 2014 WL 12539917 (S.D.Cal. June 9, 2014) ............ 26

*AT&T Techs., Inc. v. Communications Workers of Am.*,
    475 U.S. 643 (1986) .............................................................................................. 26

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................ 14, 16

*California Fed. Bank v. Matreyek*,
    8 Cal. App. 4th 125 (1992) .............................................................................. 18, 19

*California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*,
    94 Cal. App. 4th 151 (2001) ............................................................................ 18, 19

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ......................................................................... 21, 24

*Citizens Bank v. Alafabco, Inc.*,
    539 U.S. 52 (2003) ................................................................................................ 25

*Continental Ins. Co. v. Thorpe Insulation Co., (In re Thorpe Insulation Co.)*,
    671 F.3d 1011 (9th Cir. 2012) ......................................................................... 21, 22

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985) ........................................................................................ 20, 24

*Genesco, Inc. v. T. Kakiuchi & Co.*,
    815 F.2d 840 (2d Cir. 1987) .................................................................................. 26

*Ghirardo v. Antonioli*,
    14 Cal. 4th 39 (1996) ............................................................................................ 18

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ................................................................................................ 20

*Hedging Concepts, Inc. v. First Alliance Mortg. Co.*,
    41 Cal. App. 4th 1410 (1996) ............................................................................... 19

*In re Castlerock Properties*,
    781 F.2d 159 (9th Cir. 1986) ................................................................................. 23

*In re Charter Co.*,
    913 F.2d 1575 (11th Cir. 1990) ............................................................................. 15

*In re Del Mission Ltd.*,
    98 F.3d 1147 (9th Cir. 1996) ................................................................................. 17

*In re Falzerano*,
    686 F.3d 885 (8th Cir. 2012) ................................................................................. 15

*In re Graves*,
    609 F.3d 1153 (10th Cir. 2010) ............................................................................. 15

*In re Gurga*,
    176 B.R. 196 (9th Cir. BAP 1994) ................................................................... 15, 23

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

MOTION TO DISMISS AND
COMPEL ARBITRATION

# TABLE OF AUTHORITIES
(continued)

Page(s)

*In re Harris Pine Mills*,
44 F.3d 1431 (9th Cir. 1995).................................................................. 22

*In re Hechinger Investment Co. of Delaware, Inc.*,
282 BR 149 (Bankr. D. Del. 2002) .......................................................... 15

*In re Lauria*,
243 B.R. 705 (Bankr. N.D. Ill. 2000)...................................................... 15

*In re Mintze*,
434 F.3d 222 (3rd Cir. 2006) ............................................................ 21, 22

*In re National Gypsum Co.*,
118 F.3d 1056 (5th Cir. 1997)................................................................. 22

*In re Tirex Int'l, Inc.*,
395 B.R. 182 (Bankr. S.D. Fla. 2008).................................................... 26

*In re Tracht Gut, LLC*,
503 B.R. 804 (9th Cir. BAP 2017) ......................................................... 15

*In re U.S. Lines*,
197 F.3d 631 (2nd Cir. 1999)................................................................. 22

*In re Welded Construction, L.P.*,
609 B.R. 101 (Bankr. D. Del. 2019) ...................................................... 17

*In re West Coast Video Enterprises, Inc.*,
145 B.R. 484 (Bankr. E.D. Pa. 1992)..................................................... 17

*Johnmohammadi v. Bloomingdale's, Inc.*,
755 F.3d 1072 (9th Cir. 2014)................................................................ 26

*Klein v. Chevron U.S.A., Inc.*,
202 Cal. App. 4th 1342 (2012) .............................................................. 19

*Kuehner v. Dickinson & Co.*,
84 F.3d 316 (9th Cir. 1996).................................................................... 24

*Lance Camper Manuf. Corp. v. Republic Indemn. Co.*,
44 Cal. App. 4th 194 (1996) .................................................................. 18

*Levine v. Blue Shield of California*,
189 Cal. App. 4th 1117 (2010) .............................................................. 18

*Momot v. Mastro*,
652 F.3d 982 (9th Cir. 2011).................................................................. 20

*Mor-Ben Ins. Mkts. Corp. v. Trident Gen. Ins. Co. (In re Mor-Ben Ins. Mkts. Corp.)*,
73 B.R. 644 (9th Cir. BAP 1987) ........................................................... 21

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)................................................................................... 20

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009).................................................................. 14

*Phillips v. Congelton, L.L.C. (In re White Mountain Mining Co.)*,
403 F.3d 164 (4th Cir. 2005)............................................................ 21, 22

*Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*,
55 Cal. 4th 223 (2012) ........................................................................... 25

*Republic of Nicar. v. Std. Fruit Co.*,
937 F.2d 469 (9th Cir. 1991).................................................................. 24

SNELL & WILMER
——— L.L.P. ———
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

MOTION TO DISMISS AND
COMPEL ARBITRATION

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Shearson/American Express, Inc. v. McMahon*,
  482 U.S. 220 (1987) ............................................................................................ 21, 22

*Shroyer v. New Cingular Wireless Services, Inc.*,
  622 F.3d 1035 (9th Cir. 2010) ...................................................................................... 13

*Sovak v. Chugai Pharm. Co.*,
  280 F.3d 1266 (9th Cir. 2002) ...................................................................................... 25

*Target Corporation v. Wolters Kluwer Health, Inc.*,
  No. CV 15-6350-AB (FFMx) 2015 WL 12646483 (C.D.Cal. Dec. 16, 2015) ............ 27

*Toledo v. Kaiser Permanente Med. Group*,
  987 F. Supp. 1174 (N.D. Cal. 1997) ............................................................................. 25

*Trans Chemical Ltd. v. China Nat. Mach. Import and Export Corp.*,
  161 F.3d 314 (5th Cir. 1998) ........................................................................................ 24

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ........................................................................................ 15

*United States v. Whiting Pools, Inc.*,
  462 U.S. 198, 207 (1983) .............................................................................................. 15

*Villarreal v. Perfection Pet Foods, LLC*,
  No. 116CV01661LJOEPG, 2017 WL 1353802 (E.D. Cal. Apr. 10, 2017) ................. 25

*Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*,
  489 U.S. 468 (1989) ...................................................................................................... 26

*Whiting-Turner Contracting Co. v. Elec. Mach. Enters., Inc. (In re Elec. Mach.
  Enters., Inc.)*,
  479 F.3d 791 (11th Cir. 2007) ................................................................................. 21, 22

*Wolsey, Ltd. v. Foodmaker, Inc.*,
  144 F.3d 1205 (9th Cir. 1998) ...................................................................................... 25

*Ziober v. BLB Res., Inc.*,
  839 F.3d 814 (9th Cir. 2016), cert. denied, 137 S.Ct. 2274 (2017) ........................... 20

## STATUTES

11 U.S.C. § 362 ....................................................................................................................... 12
11 U.S.C. § 362(a) .................................................................................................................. 17
11 U.S.C. § 362(a)(3) ............................................................................................................. 17
11 U.S.C. § 362(c)(1) ............................................................................................................. 17
11 U.S.C. § 542 .................................................................................................... 12, 13, 15, 16
28 U.S.C. § 157(b) ................................................................................................................. 22
9 U.S.C. § 2 ...................................................................................................................... 20, 24
9 U.S.C. § 3 ...................................................................................................................... 20, 24
9 U.S.C. § 4 ...................................................................................................... 20, 21, 24, 26

## RULES

Fed. R. Bankr. P. 7012 ............................................................................................... 16, 18, 20
Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 13

MOTION TO DISMISS AND
COMPEL ARBITRATION

SNELL & WILMER
————— L.L.P. —————
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1

**TABLE OF AUTHORITIES**
(continued)

2                                                                                           **Page(s)**

3                           **REGULATIONS**

4   42 C.F.R. 1395 ................................................................................................................... 25

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS AND
COMPEL ARBITRATION

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## <u>INTRODUCTION</u>

Though framed as a core bankruptcy matter, this action is in fact, an adversary proceeding brought by Plaintiffs against Blue Shield for breach of contract. The essence of Plaintiffs' Complaint is that Blue Shield improperly denied or underpaid medical claims submitted by Plaintiffs pursuant to their provider agreements with Blue Shield. Plaintiffs are hospitals contracted with Blue Shield to provide health care services to Blue Shield's members in exchange for contracted claims payments. In the normal course of business, hospitals and health plans routinely disagree about claims denials (for example, for lack of medical necessity or failure to obtain prior authorization), and they resolve those disputes through contractual provider appeals processes. If those efforts are unsuccessful, arbitration ensues before either AAA or JAMS arbitrators specializing in these types of disputes. But instead of complying with the arbitration provisions contained in those agreements, Plaintiffs have improperly sued Blue Shield for turnover and violation of the automatic stay in a misguided attempt to invoke the Bankruptcy Court's jurisdiction and to avoid arbitration. In support, Plaintiffs allege that these medical claims are not subject to bona fide dispute and Blue Shield's refusal to pay them constitutes the knowing retention of estate property.

But Plaintiffs' own Complaint demonstrates that those allegations are illogical and without merit. As Plaintiffs admit in their Complaint, the alleged receivables at issue are plainly subject to bona fide dispute in that Blue Shield has already denied them on two separate occasions. Accordingly, Plaintiffs' claims for turnover and violation of the automatic stay must be dismissed. In addition, because there is an express binding contract between Plaintiffs and Blue Shield, Plaintiffs' quasi-contractual, unjust enrichment claims fail as a matter of law and must be dismissed. Finally, Blue Shield seeks to compel arbitration of Plaintiffs' breach of contract claims related to the disputed receivables as required by the parties' agreements, and stay this Adversary Proceeding pending arbitration.

MOTION TO DISMISS AND
COMPEL ARBITRATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

## II.

## STATEMENT OF FACTS[2]

**A.    The Debtors and Their Bankruptcy Cases.**

Plaintiffs were nonprofit public benefit corporations providing hospital and ancillary medical services on an inpatient and outpatient basis.[3]  On August 31, 2018, Plaintiffs and each of the other above-captioned debtors (each a "Debtor" and collectively the "Debtors") filed voluntary chapter 11 bankruptcy petitions commencing the above-captioned cases.[4]  The bankruptcy cases are jointly administered before the Court.[5] During the administration of these bankruptcy cases, substantially all the assets of each Plaintiff were sold to their respective purchasers pursuant to asset purchase agreements.[6] However, Plaintiffs allege that the assets sold exclude the disputed accounts receivable set forth in the Complaint.[7] On August 14, 2020, the Court entered an order confirming the Debtors' chapter 11 plan.[8]

**B.    Blue Shield and the Agreements.**

Blue Shield is a nonprofit mutual benefit corporation offering health plans and benefits in California.[9] Blue Shield pays for health care services provided to its enrolled members under contractual agreements with hospitals, physicians and other medical care providers.[10]  To that end, prior to rejection or assumption and assignment, as the case may be, Blue Shield was a party to the following agreements with Plaintiffs: (1) the St. Vincent/Blue Shield Agreements, [11] (2) the Seton/Blue Shield Agreements,[12] (3) the O'Connor/Blue Shield Agreements,[13] and (4) the

---

[2] Given the stage of the proceedings (i.e., the pleading stage), the following facts are assumed to be true for purposes of this Motion and are taken directly from Plaintiffs' Complaint.  In the event the Motion is denied, Blue Shield reserves its rights to contest any and all factual allegations contained in the Complaint.  Capitalized terms not otherwise defined herein shall have the meaning given to them in the Complaint.
[3] Complaint ¶¶ 5-8.
[4] Id. ¶ 10; Docket No. 1 in the main bankruptcy case.
[5] Docket No. 17 in the main bankruptcy case.
[6] Complaint ¶¶ 15-17.
[7] Id.
[8] Docket No. 5504 in the main bankruptcy case.
[9] Id. ¶ 9.
[10] Id.
[11] Complaint ¶ 21, Ex. A-1, A-2.
[12] Id. ¶ 46, Ex. C-1, C-2.
[13] Id. ¶ 71, Ex. E-1, E-2.

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1  Saint Louise/Blue Shield Agreements[14] (the St. Vincent/Blue Shield Agreements, Seton/Blue

2  Shield Agreements, O'Connor/Blue Shield Agreements and the Saint Louise/Blue Shield

3  Agreements are each referred to as an "Agreement" and collectively as the "Agreements").

4  Pursuant to the Agreements, each of which was effective December 1, 2010 or December 1, 2017,

5  as the case may be, Blue Shield agreed to reimburse Plaintiffs for covered medical services

6  provided to Blue Shield members at agreed upon rates.[15]

7         Pursuant to the Agreements, Plaintiffs were required to submit claims to Blue Shield

8  within 180 days following the end of each billing period, and Blue Shield was required to pay

9  Plaintiffs for covered services in accordance with the agreed upon compensation schedules and

10  within the timeframes mandated by law.[16]  Plaintiffs submitted thousands of claims to Blue Shield

11  for medical services provided to Blue Shield members.[17] Blue Shield processed the claims

12  submitted by Plaintiffs, including denying those for non-covered services or only paying for what

13  is owed pursuant to the Agreements.[18]

14

15  **C.    The Arbitration Provisions.**

16         Each Plaintiff voluntarily entered into the respective Agreement, each of which contains a

17  detailed dispute resolution process.[19] In addition to providing for a mandatory, two-level appeal,[20]

18  the Agreements required any disputes to be submitted to arbitration:

19               Arbitration of Disputes. Any dispute (other than a claim of medical
                malpractice) between the parties that exceeds the jurisdiction of
20              Small Claims Court and that was reviewed through, but not resolved
                by, the Appeal Process set forth in Section 9.1 ***shall be*** settled by
21              final and binding arbitration in San Francisco, Los Angeles, San
                Diego or Sacramento, California, whichever city is closest to
22              Hospital. Arbitration shall be conducted by and under the
                Commercial Rules of the American Arbitration Association. The
23              arbitrator shall be a retired judge of the State of California, unless
                otherwise agreed to by the parties. The arbitration decision shall be
24              binding on both parties. The arbitrator shall be bound by applicable
                state and federal law and shall issue written findings of fact and

25

26  [14] *Id*. ¶ 96, Ex. G-1, G-2.
    [15] *Id*. ¶¶ 21, 46, 71 and 96.
    [16] *Id*. ¶¶ 22, 47, 72 and 97.
27  [17] *Id*. ¶¶ 23, 48, 73 and 98.
    [18] *Id*. ¶¶ 24, 49, 74 and 99.
28  [19] *Id*. ¶¶ 21, 46, 71 and 96, Ex. A-1, A-2, C-1, C-2, E-1, E-2, G-1 and G-2 (Agreements Part IX).
    [20] *Id*. (Agreements § 9.1).

MOTION TO DISMISS AND
COMPEL ARBITRATION

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1  conclusions of law. The arbitrator shall have no authority to conduct
2  or issue a decision with respect to any class arbitration or other claim
   brought by Hospital on behalf of the general public under a statute
3  or regulation that allows an individual to sue on behalf of the
   Attorney General or other federal, state or municipal actor, or in any
4  other representative capacity. The arbitrator shall have no authority
   to award damages or provide a remedy that would not be available
5  to such prevailing party in a court of law nor shall the arbitrator have
   the authority to award punitive damages. The cost of the arbitration
6  shall be shared equally by Hospital and Blue Shield; provided that
   each party shall be responsible for its own attorneys' fees and
7  costs.[21]

8  **D.    Plaintiffs' Complaint.**

9      Plaintiffs contend that Blue Shield breached the Agreements by failing to pay for covered

10 services or paying less than what Plaintiffs contend is owed under the Agreements.[22] To that end,

11 on August 28, 2020, Plaintiffs commenced the Adversary Proceeding, with each Plaintiff

12 asserting nearly identical claims against Blue Shield for: (1) Breach of Contract (claims 1, 5, 9

13 and 13) (the "Breach of Contract Causes of Action");[23] (2) Turnover pursuant to Section 542

14 (claims 2, 6, 10 and 14) (the "Turnover Causes of Action");[24] (3) Unjust Enrichment (claims 3, 7,

15 11 and 15) (the "Unjust Enrichment Causes of Action");[25] and (4) Violation of the Automatic

16 Stay pursuant to Section 362 (claims 4, 8, 12 and 16) (the "Stay Violation Causes of Action").[26]

17     Under their Breach of Contract Causes of Action, Plaintiffs allege that, after submitting

18 "thousands" of claims to Blue Shield for medical services provided to Blue Shield members, Blue

19 Shield breached the applicable Agreements by failing to pay or paying less than what Plaintiffs

20 contend is owed.[27]  Plaintiffs also contend that all disputed claims procedures have been

21 performed or satisfied,[28] presumably referring to the contractual dispute resolution process under

22 the Agreements.

23     This same allegation, the nonpayment or underpayment of the same medical claims for

24 services allegedly rendered, is the basis for all of Plaintiffs' causes of action.

25 [21] *Id*. (Agreements § 9.2) [emphasis added].
   [22] *Id*. ¶¶ 24, 49, 74 and 99.
26 [23] *Id*. ¶¶ 20-27, 45-52, 70-77, and 95-102.
   [24] *Id*. ¶¶ 28-34, 53-59, 78-84, and 103-109.
27 [25] *Id*. ¶¶ 35-39, 60-64, 85-89, and 110-114.
   [26] *Id*. ¶¶ 40-44, 65-69, 90-94, and 115-119.
28 [27] *Id*. ¶¶ 23-24, 48-49, 73-74 and 98-99.
   [28] *Id*. ¶¶ 25, 50, 75 and 100.

1    Plaintiffs' quasi-contract Unjust Enrichment Causes of Action boil down to their assertion

2    that the same claims for services rendered, benefited Blue Shield, and by failing to pay those

3    claims, Blue Shield was unjustly enriched to Plaintiffs' detriment.[29]

4    Similarly, Plaintiffs' Turnover Causes of Action are that the amounts owed on the same

5    claims constitute property of each respective Debtor's estate and are therefore subject to turnover

6    under Section 542.[30] Plaintiffs contend that, despite their demand for payment and Blue Shield's

7    denial thereof, the claims "are matured and not subject to bona fide dispute."[31]

8    Finally, Plaintiffs' Stay Violation Causes of Action are that the same claims constitute

9    property of each respective Debtor's estate and Blue Shield's "knowing retention of estate

10    property violates the automatic stay and constitutes an act to exercise control over estate

11    property."[32]

12    Plaintiffs' Turnover, Unjust Enrichment, and Stay Violation Causes of Action should be

13    dismissed for failure to state a claim.  Plaintiffs' Breach of Contract Causes of Action are subject

14    to valid and binding arbitration provisions, such that the Court should compel arbitration of those

15    claims and dismiss or stay this Adversary Proceeding.

16

17    **III.**

18    **THE CLAIMS FOR TURNOVER, VIOLATION OF THE AUTOMATIC STAY AND**

19    **UNJUST ENRICHMENT MUST BE DISMISSED**

20    **A.    Legal Standard for Dismissal.**

21    A complaint must be dismissed when it fails to state a claim upon which relief can be

22    granted.  FRCP 12(b)(6).  A Rule 12(b)(6) motion is proper when the complaint fails to allege

23    either a cognizable legal theory or absence of sufficient facts alleged under a cognizable legal

24    theory.  *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

25    To survive a motion to dismiss, the pleading must allege "enough facts to state a claim to relief

26

27    [29] *Id*. ¶¶ 35-38, 60-63, 85-88, and 110-113.

28    [30] *Id*. ¶¶ 29, 54, 79, and 104.
     [31] *Id*.
     [32] *Id*. ¶¶ 42, 67, 92 and 117.

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

MOTION TO DISMISS AND
COMPEL ARBITRATION

that is *plausible* on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)

(emphasis added); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Although the plaintiff's

factual allegations need not be detailed, they must offer more than "labels and conclusions" or a

"formulaic recitation of the elements of [the] cause of action." *Twombly*, 550 U.S. at 555.  These

facts must "be enough to raise a right to relief above the *speculative* level." *Id*. (emphasis added).

In determining whether a complaint adequately states a plausible claim for relief, the court

should take "note of the elements a plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675.

Once noted, the court should perform a two-pronged analysis: First, identify and disregard the

allegations in the complaint that constitute legal conclusions, as mere "labels and conclusions" or

"formulaic recitation[s] of the elements of a cause of action" will not overcome a motion to

dismiss. *Id*. 678-80. Then, evaluate whether the non-conclusory factual allegations support a

plausible entitlement to relief. *Id*. at 681. The complaint must state a claim that is "plausible on its

face." *Id*. at 678.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely

consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of entitlement to relief." *Id*.

When "however true," the allegations in a complaint "could not raise a claim of

entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure

of time and money by the parties and the court." *See Twombly*, 550 U.S. at 558; *see also Iqbal*,

556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions."). "[A] court considering a motion to dismiss can

choose to begin by identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth." *Id*.; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th

Cir. 2009).

MOTION TO DISMISS AND
COMPEL ARBITRATION

1    In deciding a motion to dismiss, a court may consider "documents attached to the

2    complaint, documents incorporated by reference in the complaint, or matters of judicial notice...."

3    *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Dismissal without leave to amend

4    is appropriate where amendment would be futile. *See, e.g., In re Tracht Gut, LLC*, 503 B.R. 804,

5    815 (9th Cir. BAP 2017).

6    Here, Plaintiffs fail to state a plausible claim for relief as to the Turnover, Stay Violation

7    and Unjust Enrichment Causes of Action. As such, these claims should be dismissed and, because

8    amendment would be futile, the Court should not grant Plaintiffs leave to amend.

9

10    **B.    Plaintiffs Fail to State a Plausible Claim for Turnover under Section 542.**

11    Section 542 enables the recovery of property for the estate's benefit, which includes

12    property in possession of noncustodial third parties at the time the bankruptcy case is

13    commenced. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 207 (1983). Property subject to

14    a turnover action is limited to identifiable estate property and money due to the debtor without

15    dispute; the turnover provision cannot be used to create or expand the debtor's interest in property

16    beyond what existed on the petition date. *In re Graves*, 609 F.3d 1153, 1157-58 (10th Cir. 2010).

17    To this end, turnover is only a remedy to obtain what is acknowledged to be property of the estate

18    — it is not intended as a remedy to determine *disputed* rights to property. *In re Lauria*, 243 B.R.

19    705, 708 (Bankr. N.D. Ill. 2000); *In re Hechinger Investment Co. of Delaware, Inc.*, 282 BR 149,

20    161–162 (Bankr. D. Del. 2002).

21    Importantly, "turnover proceedings are not to be used to liquidate disputed contract

22    claims." *In re Charter Co.*, 913 F.2d 1575, 1579 (11th Cir. 1990) ("Clearly, Congress envisioned

23    the turnover provision of § 542 ... to apply to tangible property and money due to the debtor

24    without dispute which are fully matured and payable on demand."); *see also In re Falzerano*, 686

25    F.3d 885, 887 (8th Cir. 2012); *In re Gurga*, 176 B.R. 196, 199 (9th Cir. BAP 1994) ("[T]urnover

26    proceedings involve return of ***undisputed*** funds.") (emphasis added).

27    Here, Plaintiffs cannot state a plausible turnover claim under Section 542 because the

28    property south to be recovered – payment on claims for medical services – is disputed.

MOTION TO DISMISS AND
COMPEL ARBITRATION

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1      A complaint must be dismissed unless the non-conclusory, well-pleaded factual

2 allegations establish a claim that is plausible on its face. *Iqbal*, 556 U.S. at 678-81. The factual

3 allegations must establish that a claim is not speculative and is "more than a sheer possibility...."

4 *Id*. at 678. Plaintiffs' allegation that the subject claims "constitute property of [Plaintiffs']

5 estate[s]"[33] is conclusory and falls far short of the necessary pleading requirements.  Under the

6 first prong of the Supreme Court's two-pronged test set forth in *Iqbal* and *Twombly*, this

7 threadbare recital is insufficient to be entitled to an assumption of truth and should be disregarded

8 for purposes of determining whether the claim is plausible.

9      Indeed, the blanket statements by Plaintiffs that the medical claims at issue are "matured

10 and not subject to bona fide dispute"[34] are equally conclusory and belied by other allegations in

11 the Complaint. Plaintiffs allege that they "timely submitted thousands of claims to Blue Shield",[35]

12 and Blue Shield "fail[ed] and refus[ed]"[36] to pay those claims or paid "less than what is owed

13 pursuant to the terms of the"[37] Agreements. In other words, Blue Shield and Plaintiffs dispute the

14 payment amounts owed on those claims.

15      Plaintiffs also contend that "all disputed claim procedures have been substantially or

16 wholly performed[.]"[38] If true, this means that Plaintiffs allege they complied with the two-level

17 appeal process and the claims were denied ***twice*** by Blue Shield, after reviewing all of the

18 evidence submitted by Plaintiffs.  It defies credulity that such claims can somehow ***not*** be subject

19 to bona fide dispute.  Clearly, in bringing this Complaint, Plaintiffs ignored the critical limitation

20 applicable to turnover proceedings under Section 542 – that such proceedings are only

21 appropriate for property that is *indisputably property of the estate*.  Here, the disputed medical

22 claims remain just that – disputed – and are not subject to turnover under Section 542.

23      Accordingly, the Court must dismiss Plaintiffs' Turnover Causes of Action under FRBP

24 7012 for failure to state an actionable claim. And because amendment would be futile, the Court

25 should not allow Plaintiffs leave to amend.

26 _____

[33] Complaint ¶¶ 29, 54, 79 and 104.
[34] *Id*.
27 [35] *Id*. ¶¶ 23, 48, 73 and 98.
[36] *Id*. ¶¶ 24, 49, 74 and 99.
28 [37] *Id*.
[38] *Id*. ¶¶ 25, 50, 75 and 100.

MOTION TO DISMISS AND
COMPEL ARBITRATION

**C.**     **Plaintiffs Fail to State a Plausible Claim for Violation of the Automatic Stay.**

The automatic stay arises by operation of law upon the filing of a bankruptcy petition.  11

U.S.C. § 362(a).  To that end, any act to obtain possession of property of the estate or of property

from the estate, or to exercise control over property of the estate, is prohibited by the automatic

stay.  *See* 11 U.S.C. § 362(a)(3).  The stay of an act against estate property "continues until such

property is no longer property of the estate."  11 U.S.C. § 362(c)(1).

Although contractual rights may constitute property of the estate, the law is clear that

withholding payment on an unliquidated or disputed contract claim is not a stay violation.  *See In*

*re West Coast Video Enterprises, Inc.*, 145 B.R. 484, 487 (Bankr. E.D. Pa. 1992) ("There is an

attempt to characterize the Defendants' actions as violations of the automatic stay.  We reject this

... as we do not believe that the Defendants' actions, which boil down to an assertion of rights

contrary to those claimed by the Debtor, are violative of 11 U.S.C. § 362(a).").  This is because, to

be actionable, the retention of property must be both affirmative and with knowledge. [39] *See In re*

*Welded Construction, L.P.*, 609 B.R. 101, 127-28 (Bankr. D. Del. 2019) (holding that "[f]ailure to

pay a disputed contract debt is merely a passive act that, even if taken post-petition, does not

satisfy the affirmative act requirement necessary for an automatic stay violation finding under

Section 362(a)(3)."); *see also* 11 U.S.C. § 362(a)(3) (requiring "knowing retention of estate

property"); *In re Del Mission Ltd.*, 98 F.3d 1147, 1151 (9th Cir. 1996) (finding stay violation

where state refused to comply with court order to turnover specified funds to trustee).

Here, Plaintiffs' Stay Violation Causes of Action fail to meet either requirement.  Simply

failing to surrender to the Plaintiffs' unreasonable demands for payment is not an affirmative act

and therefore cannot violate the automatic stay. *In re Welded Construction, L.P.*, *supra*.

Moreover, any alleged retention cannot be "knowing" under 11 U.S.C. § 362(a)(3) because as

discussed above, Plaintiffs' own Complaint demonstrates that the parties dispute the amounts

allegedly owed and those amounts have not been liquidated or finally determined.  As any alleged

failure to pay disputed amounts cannot constitute a stay violation under Section 362(a)(3), the

---

[39] *Id*. ¶¶ 42, 67, 92 and 117.

MOTION TO DISMISS AND
COMPEL ARBITRATION

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1    Court must dismiss Plaintiffs' Stay Violation Causes of Action for failure to state a claim.  FRBP

2    7012.  Because amendment would be futile, the dismissal should be with prejudice.

3

4    **D.**      **Plaintiffs Fail to State a Plausible Claim for Unjust Enrichment.**

5          Plaintiffs' Unjust Enrichment Causes of Action fail for three fundamental reasons: (1)

6    there is in fact no cause of action for unjust enrichment under California law, (2) a quasi-contract

7    action alleging unjust enrichment fails where there is an express contract covering the same

8    subject matter, and (3) Blue Shield did not in fact, receive a benefit.

9

10         1.      California Law Does Not Recognize a Cause of Action for Unjust Enrichment.

11         An individual may be required to make restitution if he or she is unjustly enriched at the

12   expense of another.  *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51 (1996). "A person is enriched if he

13   or she has received a benefit." *California Fed. Bank v. Matreyek*, 8 Cal. App. 4th 125, 131

14   (1992). "The *recipient* of the benefit is liable only if the circumstances are such that, as between

15   the *two* persons, it is unjust for the recipient to retain it." *Id*. (emphasis added).  There is,

16   however, no independent cause of action in California for unjust enrichment.  *Levine v. Blue*

17   *Shield of California*, 189 Cal. App. 4th 1117, 1138 (2010) ("There is no cause of action in

18   California for unjust enrichment. Unjust enrichment is synonymous with restitution. Thus,

19   [plaintiffs] unjust enrichment claim does not properly state a cause of action ... [and] the trial

20   court properly sustained Blue Shield's demurrer to the [plaintiffs] unjust enrichment claim.")

21   (citations omitted).  For this reason alone, Plaintiffs' Unjust Enrichment Causes of Action fail as a

22   matter of law and should be dismissed.

23

24         2.      Unjust Enrichment Claims Fail Where There Is an Express Agreement.

25         "[A]s a matter of law, a quasi-contract action for unjust enrichment does not lie where, as

26   here, express binding agreements exist and define the parties' rights." *California Med. Ass'n, Inc.*

27   *v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172 (2001); *see also Lance Camper*

28   *Manuf. Corp. v. Republic Indemn. Co.*, 44 Cal. App. 4th 194, 203 (1996) ("[I]t is well settled that

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

- 18 -

MOTION TO DISMISS AND
COMPEL ARBITRATION

1    an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the

2    parties a valid express contract covering the same subject matter."); *Hedging Concepts, Inc. v.*

3    *First Alliance Mortg. Co.*, 41 Cal. App. 4th 1410, 1419 (1996) ("[Q]uasi-contractual recovery

4    rests upon the equitable theory that a contract to pay for services rendered is implied by law for

5    reasons of justice. However, it is well settled that there is no equitable basis for an implied-in-law

6    promise to pay reasonable value when the parties have an actual agreement covering

7    compensation.") (citations omitted). Nor can a plaintiff plead unjust enrichment in the alternative

8    to breach of contract if there is an enforceable agreement regarding the particular subject matter.

9    *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388 (2012).

10        Plaintiffs' Unjust Enrichment Causes of Action are plainly negated by their Breach of

11    Contract Causes of Action and the Agreements.  The facts here parallel those in *California Med.*

12    *Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, where the court rejected providers' attempts to

13    hold a health benefit plan liable under an unjust enrichment theory when the providers had an

14    express contract with that health plan. *Id.*, 94 Cal. App. 4th at 172. Indeed, Plaintiffs allege that

15    they "provided the services with the understanding that it would be paid by Blue Shield for the

16    services provided."[40] Plaintiffs' Unjust Enrichment Causes of Action are expressly based on the

17    Agreements, in that Plaintiffs seek recovery of the exact same disputed provider claims in their

18    Contract and Unjust Enrichment Causes of Action.[41]  It is thus the Agreements that define the

19    rights of Plaintiffs and Blue Shield – not some quasi-contract implied at law.

20

21        3.    Blue Shield Did Not Receive any Benefit and Therefore Was Not Unjustly

22            Enriched.

23        In order to recover under an unjust enrichment theory against Blue Shield, Plaintiffs must

24    allege that Blue Shield received a benefit.  *Matreyek*, 8 Cal. App. 4th at 131. Here however,

25    Plaintiffs allege that they provided "health care services to Blue Shield members."[42] While

---

[40] *Id.* ¶¶ 37, 62, 87 and 112.

[41] *See, e.g.*, ¶¶ 24, 27, 37-39 of the Complaint, and Exhibit B, showing that the St. Vincent disputed provider claims are the exact same claims for all four of St. Vincent's causes of action. *See also*, ¶¶ 20-27 of the Complaint, demonstrating Plaintiffs' expectation of payment derives from their submission of claims to Blue Shield pursuant to the Agreement (which Plaintiffs incorporate by reference into the Unjust Enrichment Causes of Action (¶¶ 35-39)).

[42] Complaint ¶¶ 36, 61, 86 and 111.

MOTION TO DISMISS AND
COMPEL ARBITRATION

SNELL & WILMER
LAW OFFICES
L.L.P.
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1  Plaintiffs allege that Blue Shield "obtained the benefit of [such] services,"[43] they fail to allege

2  how Blue Shield received a benefit or what benefit Blue Shield received.  Because any "benefits"

3  alleged by Plaintiff were provided to Blue Shield *members* and not to Blue Shield, Plaintiffs have

4  not alleged any unjust enrichment claim against Blue Shield.

5      Plaintiffs' Unjust Enrichment Causes of Action should be dismissed for failure to state a

6  claim for relief. FRBP 7012.  And because amendment would be futile, the dismissal should be

7  with prejudice.

8

9                                    **IV.**

10  **ARBITRATION SHOULD BE COMPELLED FOR THE BREACH OF CONTRACT**

11        **CAUSES OF ACTION AND THIS ADVERSARY PROCEEDING**

12                 **SHOULD BE DISMISSED OR STAYED**

13  **A.     Longstanding and Binding Precedent Favors Enforcing Arbitration Agreements.**

14      More than three decades of Supreme Court precedent supports a "'liberal federal policy

15  favoring arbitration agreements'" under the Federal Arbitration Act ("FAA"). *Ziober v. BLB Res.,*

16  *Inc.*, 839 F.3d 814, 816 (9th Cir. 2016), cert. denied, 137 S.Ct. 2274 (2017) (citing *Moses H.*

17  *Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "Because arbitration is

18  fundamentally a matter of contract, 'the central or 'primary' purpose of the FAA [Federal

19  Arbitration Act] is to ensure that 'private agreements to arbitrate are enforced according to their

20  terms.''" *Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011) (citations omitted); 9 U.S.C.

21  §§ 2-4. "The FAA also provides for stays of proceedings in federal district courts when an issue

22  in the proceeding is referable to arbitration, § 3, and for orders compelling arbitration when one

23  party has failed, neglected, or refused to comply with an arbitration agreement, § 4." *Gilmer v.*

24  *Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). The strong federal policy in favor of

25  arbitration requires that courts enforce arbitration agreements according to their terms whenever

26  possible.  *See Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Under the FAA, the

27  role of the trial court is "limited to determining (1) whether a valid agreement to arbitrate exists

28
_____

[43] *Id*. ¶¶ 38, 63, 88 and 113.

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

                                    MOTION TO DISMISS AND
                                    COMPEL ARBITRATION

1  and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v.*

2  *Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citations omitted); 9 U.S.C. § 4.

3

4  **B.     Arbitration Agreements Must Be Enforced In Bankruptcy For *Non*-Core Matters;**

5  **They Must Also Be Enforced For Core Matters Where Doing So Does Not Conflict**

6  **With Bankruptcy Law.**

7          The FAA applies even when federal statutory claims are at issue, including claims under

8  the Bankruptcy Code, unless the FAA's mandate has been "overridden by a contrary

9  congressional command." *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226

10  (1987); *see also Continental Ins. Co. v. Thorpe Insulation Co., (In re Thorpe Insulation Co.)*, 671

11  F.3d 1011, 1020-21 (9th Cir. 2012).  In the bankruptcy context, it is already well-settled law that

12  "[n]either the text nor the legislative history of the Bankruptcy Code reflects a congressional

13  intent to preclude arbitration in the bankruptcy setting." *Id.* (citing *Whiting-Turner Contracting*

14  *Co. v. Elec. Mach. Enters., Inc. (In re Elec. Mach. Enters., Inc.)*, 479 F.3d 791, 796 (11th Cir.

15  2007); *In re Mintze*, 434 F.3d 222, 231 (3rd Cir. 2006); *Mor-Ben Ins. Mkts. Corp. v. Trident Gen.*

16  *Ins. Co. (In re Mor-Ben Ins. Mkts. Corp.)*, 73 B.R. 644, 648 (9th Cir. BAP 1987)).  The relevant

17  inquiry then becomes "whether there is an inherent conflict between arbitration and the

18  underlying purposes of the Bankruptcy Code." *Thorpe*, 671 F.3d at 1020.

19          The Ninth Circuit test for "inherent conflict" turns on whether the matter is a "core" or

20  "non-core" proceeding, where "non-core" matters are definitively referred to arbitration.  *Id.* at

21  1021 ("In non-core proceedings, the bankruptcy court generally does not have discretion to deny

22  enforcement of a valid prepetition arbitration agreement.").  On the other hand, "[i]n core

23  proceedings, by contrast, the bankruptcy court, at least when it sees a conflict with bankruptcy

24  law, has discretion to deny enforcement of an arbitration agreement."  *Id.* (citing *Phillips v.*

25  *Congelton, L.L.C. (In re White Mountain Mining Co.)*, 403 F.3d 164, 169 (4th Cir. 2005). "The

26  rationale for the core/non-core distinction ... is that non-core proceedings 'are unlikely to present

27  a conflict sufficient to override by implication the presumption in favor of arbitration,' whereas

28

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

MOTION TO DISMISS AND
COMPEL ARBITRATION

1    core proceedings 'implicate more pressing bankruptcy concerns.'" *Thorpe*, 671 F.3d at 1021

2    (citing *In re U.S. Lines*, 197 F.3d at 640).

3        However, even in core proceedings, an applicable arbitration provision still must be

4    enforced *unless* "arbitration would conflict with the underlying purposes of the Bankruptcy

5    Code." *Thorpe*, 671 F.3d at 1021 (emphasis added) (citing *McMahon*, 482 U.S. at 227; *In re*

6    *Elec. Mach. Enters.*, 479 F.3d at 796, *In re Mintze*, 434 F.3d at 231; *In re White Mountain*

7    *Mining*, 403 F.3d at 169-70; *In re U.S. Lines*, 197 F.3d 631, 640 (2nd Cir. 1999); *In re National*

8    *Gypsum Co.*, 118 F.3d 1056, 1069-70 (5th Cir. 1997). In other words, "the core/non-core

9    distinction, though relevant, is not alone dispositive" in deciding whether a core claim should be

10    submitted to arbitration.  There must be a finding of some conflict with bankruptcy law, and even

11    then, the decision to compel arbitration is still subject to the bankruptcy court's sound discretion.

12    *Thorpe*, 671 F.3d at 1021.

13        Here, Plaintiffs' Breach of Contract Causes of Action are not core proceedings, and are

14    therefore subject to valid and enforceable arbitration provisions.

15

16    **C.    Plaintiffs' Arbitrable Claims are Not Core Proceedings.**

17        Plaintiffs would misclassify the Adversary Proceeding as a core proceeding in a thinly-

18    veiled effort to vitiate the arbitration provisions in the applicable Agreements (the "Arbitration

19    Provisions") and to invoke this court's jurisdiction. Core proceedings are those matters and

20    causes of action that "arise under" or "arise in" a case under Title 11. 28 U.S.C. § 157(b). Core

21    proceedings generally involve causes of action created or determined by the Bankruptcy Code or

22    administrative matters arising only in bankruptcy cases. *See id.*; *see also, In re Harris Pine Mills*,

23    44 F.3d 1431, 1435-36 (9th Cir. 1995). If the proceeding does not involve a substantive right

24    created by the Bankruptcy Code and is one that could exist outside of bankruptcy, it is *not* a core

25    proceeding.  *Id*. at 1435 ("[I]t may be *related* to the bankruptcy because of its potential effect, but

26    ... it is an otherwise related or non-core proceeding.") (emphasis in original, citations omitted).

27    This proceeding involves a contract dispute between a hospital and a health plan regarding

28    whether certain health care services were covered benefits under a variety of health plans and

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1    whether the amount paid on any covered claims was consistent with the Agreements – rights that

2    arise under contract, and disputes that routinely proceed outside of bankruptcy and in arbitrations.

3         Courts in this Circuit and across the country have consistently held that breach of contract

4    actions are not core proceedings. *See, e.g., In re Gurga*, 176 B.R. 196, 199 (9th Cir. BAP 1994)

5    ("Breach of contract actions are noncore claims."). *Gurga* exemplifies Plaintiffs' attempt to

6    disguise breach of contract claims as core proceedings:

> Despite [debtor's] attempts to frame the issues herein as core, we
> find that the claims are noncore.  It is undisputed that the underlying
> action is a breach of contract action.  The adversary proceeding ...
> entitled 'Complaint for turnover of property, accounting, breach of
> contract, conversion, and breach of fiduciary duty,' includes claims
> for relief for only one potential core issue—turnover of property
> pursuant to 11 U.S.C. § 542(b).  However, turnover proceedings
> involve return of *undisputed* funds.  Here, the amounts, if any, owed
> to [debtor] by [creditor] are in dispute and this dispute rests on
> breach of contract issues." *Id*. (emphasis in original).

13         Here, just as in *Gurga*, Plaintiffs' Breach of Contract Causes of Action could certainly

14    exist outside of bankruptcy.  They are based on the Agreements entered into almost a decade ago,

15    pursuant to which the parties have a long and detailed course of dealing. Indeed, the Agreements

16    themselves expressly contemplate such disputes existing outside of bankruptcy by providing for a

17    dispute resolution process and arbitration.[44] Plaintiffs' attempt to transmute the Breach of

18    Contract Causes of Action into a core proceeding by also asserting Turnover and Stay Violation

19    Causes of Action are meritless.  As set forth above, the amounts owed to Plaintiffs by Blue Shield

20    under the Agreements, if any, are in dispute – and this dispute rests on whether Blue Shield

21    breached the Agreements.

22         While a claim for turnover or violation of the automatic stay would be considered a core

23    proceeding, a disputed contract claim is not. *Gurga*, 176 B.R. at 199; *see also In re Castlerock*

24    *Properties*, 781 F.2d 159, 161-62 (9th Cir. 1986) (collecting cases).  However, Blue Shield only

25    seeks to compel arbitration of the Breach of Contract Causes of Action (and not the Turnover or

26

27

28

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

---

[44] Notably, several of these hospital Plaintiffs have previously filed demands for arbitration under the Agreements
and similar agreements between the parties, including in 2013 and 2014, for alleged underpayment or non-payment
for medical services rendered to Blue Shield members. *See, e.g.,* Request for Judicial Notice, Exs. 1-3.

MOTION TO DISMISS AND
COMPEL ARBITRATION

1  Stay Violation Causes of Action, which should be dismissed with prejudice for the reasons

2  discussed above).

3

4  **D.      The Arbitration Provisions are Enforceable.**

5          Contracts to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as

6  exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; *see also Kuehner v.*

7  *Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996).  "By its terms, the [FAA] leaves no place for

8  the exercise of discretion by a district court, but instead mandates that district courts shall direct

9  the parties to proceed to arbitration on issues as to which an arbitration agreement has been

10  signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *see also Republic of*

11  *Nicar. v. Std. Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991) ("The standard for demonstrating

12  arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration

13  motion, since the [FAA] is phrased in mandatory terms.").  The court's role under the FAA is

14  "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2)

15  whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys.,*

16  *Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citations omitted); 9 U.S.C. § 4.

17

18          1.      <u>The Arbitration Provisions Are Valid.</u>

19          The FAA applies to any "written arbitration provision in 'a contract evidencing a

20  transaction involving commerce.'" *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S.

21  265, 268 (1995) (citing 9 U.S.C. § 2). This phrase is read 'broadly,' extending the FAA's reach

22  "to the limits of Congress' Commerce Clause power." *Id*. A narrow interpretation would not be

23  consistent with the FAA's purpose.  *Id*.  Consistent with this broad approach, a contract

24  containing an arbitration provision need only be related to "commerce" to fall within the coverage

25  of the Act.  *See Trans Chemical Ltd. v. China Nat. Mach. Import and Export Corp.*, 161 F.3d

26  314, 319 (5th Cir. 1998).  "Congress' Commerce Clause power 'may be exercised in individual

27  cases without showing any specific effect upon interstate commerce if in the aggregate the

28  economic activity in question would represent 'a general practice . . . subject to federal control.'"

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

MOTION TO DISMISS AND
COMPEL ARBITRATION

1    *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003). Even an arbitration provision in a

2    termite inspection contract performed entirely within a state was governed by the FAA because

3    materials and supplies were purchased out of state. *Allied-Bruce Terminix Companies, Inc.,*

4    *supra*, 513 U.S. at 273-78.

5        It is undisputed that the Agreements involve commerce.  The Agreements concern Blue

6    Shield members, regardless of where they reside, including those that receive Medicare benefits

7    under Title 42 of the Code of Federal Regulations.  In addition, the aggregate economic activity

8    of healthcare is a general practice subject to federal control, and in fact is subject to extensive

9    federal control and regulation. *See, e.g.,* 42 C.F.R. 1395 *et seq.*; *see also, e.g., Toledo v. Kaiser*

10   *Permanente Med. Group*, 987 F. Supp. 1174, 1180 (N.D. Cal. 1997) (health plan membership

11   agreement "evidences a number of links to interstate commerce sufficient to invoke the

12   application of the FAA.").

13       In addition, even with the inclusion of a general California choice-of-law provision,[45] the

14   FAA still governs because there is not a "clear and unmistakable" intent expressed that the FAA

15   should not be applied. *Villarreal v. Perfection Pet Foods, LLC*, No. 116CV01661LJOEPG, 2017

16   WL 1353802, at *2 (E.D. Cal. Apr. 10, 2017); *see Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d

17   1205, 1210, 1213 (9th Cir. 1998); *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir.

18   2002).

19       Moreover, by executing the Agreements, Plaintiffs knowingly entered into agreements

20   containing an explicit dispute resolution process, which includes binding arbitration. Where a

21   party signs an agreement, its acceptance of the agreement is express.  *Pinnacle Museum Tower*

22   *Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012).  Each Plaintiff here agreed to

23   the Arbitration Provisions when it entered into the Agreements.[46] There is no doubt that Plaintiffs

24   agreed to arbitrate by virtue of their execution of the Agreements, and in fact, availed themselves

25   of those same provisions by previously seeking arbitration against Blue Shield.[47]

26

27   [45] *Id.* ¶¶ 21, 46, 71 and 96, Ex. A-1, A-2, C-1, C-2, E-1, E-2, G-1 and G-2 (Agreements § 12.13).
     [46] Complaint ¶¶ 21, 46, 71 and 96, Ex. A-1, A-2, C-1, C-2, E-1, E-2, G-1 and G-2.

28   [47] As noted above in footnote 44, Plaintiffs have previously made similar claims against Blue Shield by way of
     arbitration demands under the Agreements and similar agreements.  *See* Request for Judicial Notice, Exs. 1-3.

MOTION TO DISMISS AND
COMPEL ARBITRATION

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1       2.     The Arbitration Provisions Encompass the Breach of Contract Claims.

2       There can be little doubt Plaintiffs' claims fall within the scope of the Arbitration

3  Provisions. When determining the scope of an arbitration provision, a court must look to the

4  factual allegations of the complaint and determine whether the claims alleged therein touch and

5  concern matters covered by the arbitration provisions. *See Genesco, Inc. v. T. Kakiuchi & Co.*,

6  815 F.2d 840, 846 (2d Cir. 1987); *In re Tirex Int'l, Inc.*, 395 B.R. 182, 194 (Bankr. S.D. Fla.

7  2008).  Additionally, "due regard must be given to the federal policy favoring arbitration, and

8  ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt*

9  *Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).  The

10  presumption of arbitrability, created by the mere existence of an arbitration clause, can be

11  overcome only if "it may be said with positive assurance that the arbitration clause is not

12  susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in

13  favor of coverage." *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650

14  (1986) (citations omitted).

15       Here, Plaintiffs' Breach of Contract Causes of Action are premised upon the Agreements

16  themselves. *See, e.g., Aspire Home Healthcare, Inc. v. Therastaff, LLC*, No. 13CV2917-MMA

17  (JLB), 2014 WL 12539917 (S.D. Cal. June 9, 2014) (dispute for payment related to the parties'

18  agreement).  The Breach of Contract Causes of Action involve medical claims that Plaintiffs

19  submitted to, and sought payment from, Blue Shield under the Agreements.  The Arbitration

20  Provisions specifically provide that they apply to any dispute for claims under the Agreements

21  that are not resolved through the appeals process. It cannot be credibly denied that the Breach of

22  Contract Causes of Action fall within the scope of the Arbitration Provisions.

23

24  **E.**    **The Adversary Proceeding Should be Dismissed or Stayed Pending Arbitration.**

25       The Court should compel arbitration and "stay the action or dismiss it outright when, as

26  here, the court determines that all of the claims raised in the action are subject to arbitration."

27  *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014); 9 U.S.C. §§ 3, 4.

28  *See also Target Corporation v. Wolters Kluwer Health, Inc.*, No. CV 15-6350-AB (FFMx) 2015

MOTION TO DISMISS AND
COMPEL ARBITRATION

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

WL 12646483, at *1 (C.D.Cal. Dec. 16, 2015) (dismissing action for failure to mediate).  Here, the Court should dismiss the Turnover, Stay Violation and the Unjust Enrichment Causes of Action with prejudice, as set forth above. The only viable claims remaining are the arbitrable ones; i.e., the Breach of Contract Causes of Action.  The Court should send the Breach of Contract Causes of Action to arbitration and dismiss or stay this Adversary Proceeding as to them.  If the arbitration proceedings result in an award in favor of Plaintiffs, Plaintiffs can then seek confirmation of their award in this Court.

V.

**CONCLUSION**

Based on the foregoing, Blue Shield respectfully requests that the Court dismiss Plaintiffs' Turnover, Stay Violation and Unjust Enrichment Causes of Action.  Moreover, because amendment would be futile, Blue Shield requests that leave to amend not be granted.  In addition, Blue Shield respectfully requests that the Court enter an order compelling arbitration of Plaintiffs' Breach of Contract Causes of Action in conformance with the Agreements, and otherwise dismiss or stay this Adversary Proceeding pending arbitration.  Finally, Blue Shield requests such other and additional relief as the Court deems just and proper.

Dated: October 30, 2020                    Respectfully submitted,

                                           SNELL & WILMER L.L.P.


                                           By:  */s/ Michael B. Reynolds*
                                               Michael B. Reynolds
                                               Andrew B. Still
                                               Attorneys for California Physicians'
                                               Service, dba Blue Shield of California

4843-9598-8430

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

MOTION TO DISMISS AND
COMPEL ARBITRATION

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
600 Anton Boulevard, Suite 1400, Costa Mesa, CA  92626-7689.

A true and correct copy of the foregoing document entitled (*specify*): **Blue Shield of California's Notice of Motion and Motion to: (1) Dismiss Claims for Turnover, Violation of the Automatic Stay and Unjust Enrichment; and (2) Compel Arbitration and Stay Adversary Proceeding; Memorandum of Points and Authorities**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) October 30, 2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Steven J Kahn    skahn@pszyjw.com**
- **Michael B Reynolds    mreynolds@swlaw.com, kcollins@swlaw.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) October 30, 2020, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Via Federal Express:**

The Honorable Ernest M. Robles
United States Bankruptcy Court
255 E. Temple Street, Suite 1560/Crtrm 1568
Los Angeles, California  90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 30, 2020 | Kelley Nestuk | /s/ Kelley Nestuk |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                              **F 9013-3.1.PROOF.SERVICE**