1  Michael B. Reynolds (SBN 174534)
   mreynolds@swlaw.com
2  Andrew B. Still (SBN 312444)
   astill@swlaw.com
3  SNELL & WILMER L.L.P.
   600 Anton Blvd, Suite 1400
4  Costa Mesa, California  92626-7689
   Telephone:     714.427.7000
5  Facsimile:     714.427.7799

6  Attorneys for Defendant California Physicians' Service
   dba Blue Shield of California

7              UNITED STATES BANKRUPTCY COURT

8        CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

9  In re:                                      Lead Case No. 2:18-bk-20151-ER

10 VERITY HEALTH SYSTEM OF                     Jointly Administered With:
   CALIFORNIA, INC., et al.,                   Case No.: 2:18-bk-20162-ER
11                                             Case No.: 2:18-bk-20163-ER
             Debtors and Debtors In            Case No.: 2:18-bk-20164-ER
12           Possession.                       Case No.: 2:18-bk-20165-ER
                                               Case No.: 2:18-bk-20167-ER
13 ─────────────────────────────              Case No.: 2:18-bk-20168-ER
                                               Case No.: 2:18-bk-20169-ER
14 Affects:                                    Case No.: 2:18-bk-20171-ER
                                               Case No.: 2:18-bk-20172-ER
15 ☐ All Debtors                               Case No.: 2:18-bk-20173-ER
                                               Case No.: 2:18-bk-20175-ER
16 ☐ Verity Health System of California, Inc.  Case No.: 2:18-bk-20176-ER
   ☒ O'Connor Hospital                         Case No.: 2:18-bk-20178-ER
17 ☒ Saint Louise Regional Hospital            Case No.: 2:18-bk-20179-ER
   ☐ St. Francis Medical Center                Case No.: 2:18-bk-20180-ER
18 ☒ St. Vincent Medical Center                Case No.: 2:18-bk-20181-ER
   ☒ Seton Medical Center
19 ☐ O'Connor Hospital Foundation              Chapter 11 Cases
   ☐ Saint Louise Regional Hospital Foundation
20 ☐ St. Francis Medical Center of Lynwood     Adv. No. 2:20-ap-01575-ER
     Foundation
21 ☐ St. Vincent Foundation                    **Request for Judicial Notice in Support
   ☐ St. Vincent Dialysis Center, Inc.         of Blue Shield of California's Motion to:**
22 ☐ Seton Medical Center Foundation
   ☐ Verity Business Services                  **(1) Dismiss Claims for Turnover,
23 ☐ Verity Medical Foundation                 Violation of the Automatic Stay and
   ☐ Verity Holdings, LLC                      Unjust Enrichment; and**
24 ☐ De Paul Ventures, LLC
   ☐ De Paul Ventures - San Jose Dialysis, LLC **(2) Compel Arbitration and Stay
25                                             Adversary Proceeding**
             Debtors and Debtors In
26           Possession.                       Hearing Information:
                                               Date:      November 24, 2020
27                                             Time:      11:00 a.m.
                                               Courtroom: 1568
28                                             Address:   255 East Temple Street
                                                          Los Angeles, CA 90012

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

4817-7817-8000

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

ST. VINCENT MEDICAL CENTER, a
California nonprofit public benefit
corporation, SETON MEDICAL CENTER, a
California nonprofit public benefit
corporation, O'CONNOR HOSPITAL, a
California nonprofit public benefit
corporation, and SAINT LOUISE
REGIONAL HOSPITAL, a California
nonprofit public benefit corporation,

        Plaintiffs,

    v.

CALIFORNIA PHYSICIANS' SERVICE dba
BLUE SHIELD OF CALIFORNIA, a
California nonprofit public benefit
corporation,

        Defendant.

Pursuant to Federal Rule of Evidence 201, defendant California Physicians' Service dba Blue Shield of California ("Blue Shield"), respectfully requests this Court take judicial notice of the following documents in connection with its concurrently-filed Motion to (1) Dismiss Claims for Turnover, Violation of the Automatic Stay and Unjust Enrichment, and (2) Compel Arbitration and Stay Adversary Proceeding, in the above-captioned adversary proceeding:

1.     Demand for Arbitration dated February 7, 2013, made by Seton Medical Center and O'Connor Hospital against Blue Shield, attached hereto as **Exhibit 1**.

2.     Demand for Arbitration dated May 21, 2014, made by Daughters of Charity Health System dba O'Connor Hospital and Seton Medical Center against Blue Shield, attached hereto as **Exhibit 2**.

3.     Demand for Arbitration dated December 15, 2014, made by Daughters of Charity, et al. against[1] Blue Shield, attached hereto as **Exhibit 3**.

---

[1] The "facilities" identified on this arbitration demand include Saint Louise, Seton, St. Vincent and O'Connor.

REQUEST FOR JUDICIAL NOTICE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated: October 30, 2020

Respectfully submitted,

SNELL & WILMER L.L.P.

By:   */s/ Michael B. Reynolds*
     Michael B. Reynolds
     Andrew B. Still
     Attorneys for California Physicians'
     Service, dba Blue Shield of California

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

- 3 -

REQUEST FOR JUDICIAL NOTICE

4817-7817-8000

# Exhibit 1

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

### COMMERCIAL ARBITRATION RULES    Filing Code 8502
#### Demand for Arbitration

| MEDIATION: *If you would like the AAA to contact the other parties and attempt to arrange mediation, please check this box. There is no additional administrative fee for this service.* | |
|---|---|

| Name of Respondent<br>California Physicians' Service, Inc., d.b.a. Blue Shield of California ("Blue Shield of California") | Name of Representative (if known) | | |
|---|---|---|---|
| Address: 50 Beale Street | Name of Firm (if applicable): | | |
| Attn: | Representative's Address: | | |
| City:<br>San Francisco | State:<br>CA | Zip Code:<br>91405 | City | State | Zip Code |
| Phone No. | Fax No. | | Phone No. | | Fax No. |
| Email Address: | | | Email Address: | | |

The named claimants, parties to arbitration agreements dated January 1st, 2002 and amended on May 1st, 2005 for Seton Medical Center and January 1st, 2002 and amended on May 1st, 2005 for O'Connor Hospital, which provide for arbitration under the COMMERCIAL Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

THE NATURE OF THE DISPUTE: Blue Shield of California breached the parties' written agreement and the implied covenant of good faith and fair dealing by improperly pricing, denying and underpaying the claims identified on Exhibit 1 to this Arbitration Demand. As a result, Blue Shield of California owes Claimants, Seton Medical Center & O'Connor Hospital, California non-profit religious corporations, a principal sum of $155,707.84 plus interest pursuant to California Health and Safety Code § 1371.35, Cal. Civ. Code § 3289.

| Dollar Amount of Claim $155,707.84 | Other Relief Sought:   ~ Attorneys Fees   X Interest<br>X Arbitration Costs ~ Punitive/ Exemplary ~ Other |
|---|---|

AMOUNT OF FILING FEE ENCLOSED WITH THIS DEMAND (please refer to the fee schedule in the rules for the appropriate fee) $2,800.00

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE: REASONED DECISION, RETIRED JUDGES

| Hearing locale   SAN FRANCISCO, CA      (X) ~ Requested by Claimant | | ~ Locale provision included in the contract |
|---|---|---|
| Estimated time needed for hearings overall:<br><br>__ hours or TWO __ days | Type of Business: Claimant<br><br>Respondent | HOSPITAL<br><br>HEALTH PLAN |

Is this a dispute between a business and a consumer?            ~Yes   X No
Does this dispute arise out of an employment relationship?     ~Yes   X No
If this dispute arises out of an employment relationship, what was/is the employee's annual wage range? Note: This question is required by California law. ~Less than $100,000 ~ $100,000 - $250,000 ~ Over $250,000

You are hereby notified that copies of our arbitration agreement and this demand are being filed with the American Arbitration Association's Case Management Center, located in (check one)  ~ Atlanta, GA  ~ Dallas, TX  ~ East Providence, RI
X Fresno, CA   ~ International Centre, NY, with a request that it commence administration of the arbitration. Under the rules, you may file an answering statement within the timeframe specified in the rules, after notice from the AAA.

| Signature (may be signed by a representative)   Date:<br>02/07/2013 | Name of Representative:<br>Araceli Almazan, Esq. | | |
|---|---|---|---|
| Name of Claimant: Seton Medical Center and O'Connor Hospital, California non-profit religious corporations | Name of Firm (if applicable)<br>LAW OFFICES OF STEPHENSON, ACQUISTO AND COLMAN | | |
| Address (to be used in connection with this case): c/o LAW OFFICES OF SAC 303 N. GLENOAKS BLVD., STE. #700 | Representative's Address:<br>303 N. GLENOAKS BLVD., SUITE #700 | | |
| City:<br>BURBANK | State:<br>CA | Zip Code:<br>91502 | City<br>Burbank | State<br>CA | Zip Code<br>91502 |
| Phone No.:<br>818-559-4477 | Fax No.:<br>818-559-5484 | | Phone No.<br>818-559-4477 | | Fax No.<br>818-559-5484 |
| Email Address: AAlmazan@Sacfirm.com | | | Email Address:  AAlmazan@Sacfirm.com | | |

To begin proceedings, please send two copies of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to the AAA. Send the original Demand to the Respondent.

Please visit our website at www.adr.org if you would like to file this case online.   AAA Case Filing Services can be reached at 877-495-4185.

Exhibit 1

# SETON MEDICAL CENTER & O'CONNOR HOSPITAL V. CALIFORNIA PHYSICIANS' SERVICE, INC, d.b.a. BLUE SHIELD OF CALIFORNIA

Filing Code 8502

| #: | Our File Number | Patient Name | Patient's ID | Dates of Service | Total Charges | Paid | Balance | Expected |
|----|----|----|----|----|----|----|----|----|
| 1 | 00002630207207 | | | 11/02/2008 - 11/14/2008 | $151,226.32 | $16,002.00 | $90,867.05 | Stop Loss: $106,869.05 |
| 2 | 00002896781818 | | | 10/19/2010 - 11/11/2010 | $469,461.16 | $300,420.00 | $51,206.41 | Total Charges $469,461.16 * 74.9% = $351,626.41 |
| 3 | 00006367230727 | | | 07/19/2010 - 07/22/2010 | $10,433.75 | $0.00 | $619.00 | NICU 1 $619.00 x 1 DOS |
| 4 | 00002772138080 | | | 11/03/2009 - 11/14/2009 | $186,434.00 | $117,301.99 | $13,015.38 | Stoploss: $186,434.00 x 69.9% = $130,317.37 |
| | | | | | | | $155,707.84 | |

# BLUE SHIELD OF CALIFORNIA

# FEE FOR SERVICE HOSPITAL AGREEMENT

This Agreement is entered into between Seton Medical Center, a California nonprofit public benefit corporation (hereinafter "Hospital"), and California Physicians' Service, Inc., d.b.a., Blue Shield of California, a California nonprofit corporation (hereinafter "Blue Shield"). The Effective Date of this Agreement is January 1, 2002.

## RECITALS

A.   Blue Shield is licensed as a prepaid health care service plan under the Knox-Keene Act of 1975 ("the Knox-Keene Act");

B.   Blue Shield contracts with individuals, associations, employer groups and governmental entities to provide or to arrange for the provision of covered HMO and PPO health care services to Members of Blue Shield;

C.   Hospital owns and operates an acute care hospital and is duly licensed and qualified to provide services to Members of Blue Shield;

D.   Hospital and Blue Shield desire that Hospital provide services to Members in accordance with the terms of this Agreement;

E.   Except as specifically noted, this Agreement is applicable to all Members enrolled under Blue Shield's Benefit Programs identified on Exhibit "A", and includes Medicare beneficiaries enrolled in Blue Shield's Medicare+Choice program if so identified in Exhibit "A". This Agreement shall not apply to Members enrolled in HMO nor Medicare+Choice programs for which Hospital receives capitation payments pursuant to a separate capitated hospital agreement, if any, between Hospital and Blue Shield.

## I. DEFINITIONS

For the purposes of this Agreement, terms shall have the following meanings:

1.1   Agreement Year: is the period beginning at 12:01 a.m. on the Effective Date of this Agreement and ending at 11:59 p.m. on October 31, 2003.

1.2   Authorization: is the procedure for obtaining the prior approval of Blue Shield, or its delegatee, for the provision of Covered Services. Such approval shall be requested and provided pursuant to authorization procedures established in this Agreement and as described in the Provider Manual and in Section 2.6 hereof.

Seton Medical Center
DOCHS Hospital Agreement
[DOCHS Final 10-16-02]

## IX. RESOLUTION OF DISPUTES

9.1    <u>Provider Dispute Resolution Procedure</u>.  Blue Shield and Hospital agree to meet and confer in good faith to resolve any disputes that arise under this Agreement. Except for disputes relating to payment amounts, and the procedure whereby this Agreement may be terminated, which disputes shall be governed exclusively by Section 9.2 hereof, if a dispute remains unresolved, it may be referred to the Blue Shield Provider Dispute Resolution Committee.  Disputes may be submitted in writing addressed to Vice President Provider Services at 50 Beale St., San Francisco, California, 94105.  Disputes referred to the Blue Shield Provider Dispute Resolution Committee shall be decided within thirty (30) days of referral. If such disputes cannot be resolved by the Blue Shield Provider Dispute Resolution Committee, Blue Shield and Hospital agree to submit the dispute to binding arbitration pursuant to Section 9.2 of this Agreement. Pursuit by Hospital of a dispute through the processes described in this Article IX. shall neither modify nor relieve Hospital of any obligations to continue to provide services to Members in accordance with and to comply with all terms of this Agreement.

9.2    <u>Arbitration of Disputes</u>.  If any dispute or controversy (other than a claim of medical malpractice) arises between the parties to this Agreement which exceeds the jurisdiction of Small Claims Court, which was not resolved in the payment appeals procedure set forth in Section 5.3 or in the Provider Dispute Resolution procedure set forth in Section 9.1, and which may directly or indirectly concern or involve any term, covenant, or condition hereof, the parties shall settle the dispute by final and binding arbitration in San Francisco, Los Angeles, San Diego or Sacramento, California, whichever city is closest to the Hospital. Arbitration shall be conducted under the Commercial Rules of the American Arbitration Association or JAMS Endispute. The arbitration decision shall be binding on both parties. It is agreed that the arbitrator shall be bound by applicable state and federal law and that the arbitrator shall issue written findings of fact and conclusions of law.  The arbitrator shall have no authority to award damages or provide a remedy which would not be available to such prevailing party in a court of law nor shall the arbitrator have the authority to award punitive damages.  The cost of the arbitration shall be shared equally by Hospital and Plan.  Each party shall be responsible for its own attorneys' fees.

9.3    <u>Small Claims Court</u>.  Notwithstanding Paragraph 9.2, Hospital may pursue individual claim disputes in California Small Claims Court for any individual claim that is within the jurisdictional limit.

9.4    <u>Limitation of Actions</u>.  A Demand for Arbitration pursuant to Section 9.2 hereof or a Small Claims Court action pursuant to Section 9.3 hereof must be filed within twenty-four (24) months of the alleged breach.  Should the aggrieved party fail to file a Demand for Arbitration of the dispute or Small Claims Court action within the time-frame set forth herein, the aggrieved party shall have waived its rights and remedies with respect to the alleged breach.  The aggrieved party shall have

no right to pursue any remedy with respect to such alleged breach, including, but not limited to, initiation of any civil action in state or federal court, and, if the aggrieved party is Hospital, Hospital shall have no right to pursue payment of any disputed amounts from the Member.  Nothing in this section shall be interpreted as a waiver of Hospital's rights to pursue legal remedies against Blue Shield based on fraud and unfair business practices at any time within the applicable statutes of limitation.

## X.  TERM & TERMINATION

10.1    <u>Term</u>.  When executed by both parties, this Agreement shall become effective as of the Effective Date, and shall continue in effect until December 31, 2003.  Unless either party notifies the other party at least one hundred twenty (120) days prior to the expiration of said initial term, this Agreement shall, following expiration of the initial term, continue in effect for additional one (1) year terms until terminated as set forth below.

10.2    <u>Termination Without Cause</u>.  After or effective upon expiration of the initial term, either party may terminate this Agreement at anytime without cause by giving to the other party at least one hundred twenty (120) calendar days written notice of termination.  Notwithstanding the foregoing, Hospital may terminate this Agreement at any time upon one hundred twenty (120) calendar days written notice in the event that (a) Hospital determines in good faith that benefit changes or other actions by Blue Shield specifically relating to and specifically designed to divert outpatient surgical procedures from hospitals to other healthcare providers has resulted in a reduction in Hospital's outpatient surgical procedures for Blue Shield members by at least thirty percent (30%) compared to the volume of outpatient surgical procedures for Blue Shield members over the previous twelve (12) month period; (b) Hospital has notified Blue Shield in writing of its findings along with supporting documentation and provided Blue Shield with thirty (30) calendar days in which to take action to remedy the diversion of outpatient surgical procedures or to propose changes in the compensation amounts set forth herein to offset the revenue reduction to Hospital, and, (c) Blue Shield has failed to take action within such thirty (30) day period in which to cause such diversions to cease or to propose changes in compensation.

10.3    <u>Termination for Cause</u>.  Either party may, subject to the cure period set forth in Section 10.4, terminate this Agreement for material cause after written notice as set forth hereinafter.  The following shall constitute a material cause for termination:

(a)    <u>By Hospital</u> if:  (i) revocation of Blue Shield's license necessary for the performance of this Agreement; or, (ii) Blue Shield breaches any material term, covenant, or condition of this Agreement.

(b)    <u>By Blue Shield</u> if:  (i) the filing of bankruptcy by Hospital, a parent or subsidiary or substantial deterioration in the financial condition of a parent,

- 9 -

are inconsistent with the medical ethics or precepts of the Common Values for Community Sponsorship.

13.14   Corporate Integrity Program.   Blue Shield acknowledges that Hospital operates under the Corporate Integrity Program, and has adopted a Compliance Program of Daughters of Charity Health System.   Blue Shield further acknowledges that, notwithstanding anything contained herein, Hospital shall not be required to engage in any conduct that may violate any policies, procedures, or directives of the Corporate Integrity Program or Compliance Program. Blue Shield further represents that it has not in the past been excluded, nor is it currently excluded, from participation in government funded healthcare programs, including, but not limited to, Medicare, Medicaid, CHAMPUS and FEHBP.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their authorized representatives.

**BLUE SHIELD OF CALIFORNIA**

Signature:   _Lisa Farman_

Printed Name:   _Lisa Farman_

Title:   _VP, Provider Relations_

Date:   _12-2-02_

**SETON MEDICAL CENTER**

Signature:   _____

Printed Name:   _ROBERT ISSAI_

Title:   _EVP & CFO_

Date:   _11-19-02_

Tax ID No.:   _91-2154441_

Seton Medical Center
DOCHS Hospital Agreement
[DOCHS Final 10-16-02]

Page 22



## AMENDMENT
## TO
## FEE FOR SERVICE
## HOSPITAL AGREEMENT

This Amendment is entered into effective <u>May 1, 2005</u> by and between **Seton Medical Center, a California corporation** (hereinafter "Hospital"), and **California Physicians' Service, Inc., d.b.a. BLUE OF SHIELD OF CALIFORNIA, a California nonprofit corporation** (hereinafter "Blue Shield"), in order to modify the Fee For Service Hospital Agreement dated January 1, 2002.

### RECITALS

A. Whereas Hospital and Blue Shield currently have an Agreement under which Hospital agrees to provide Covered Services to Blue Shield Members; and,

B. Whereas Hospital submitted a notice of termination to open negotiations and has now agreed to rescind said termination;

C. Whereas Hospital and Blue Shield have reached agreement on new compensation terms and provisions.

Now therefore, Hospital and Blue Shield agree and hereby amend the Agreement effective May 1, 2005 as follows:

### AMENDMENT

1.  A new section 1.1 "Affiliates" is hereby added to read in full as follows:

    <u>Affiliates</u>: Blue Shield, or an entity that controls, is controlled by or is under common control with Blue Shield, or is under contract with Blue Shield, or which has been authorized by Blue Shield to access one or more networks of Participating Providers on behalf of themselves and/or other Affiliates or Payors.  A list of Affiliates will be given upon request.

2.  Section 1.8 "Emergency Services" is hereby deleted in its entirety and replaced with Section 1.9 "Emergency Services" as follows:

    <u>Emergency Services</u>:  are Covered Services to address a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) so as to cause the prudent layperson to conclude that the absence of immediate medical attention could reasonably be expected to result in: (i) placing the Member's health in serious jeopardy; (ii) serious impairment to bodily functions; (iii) serious dysfunction of any bodily organ or part.  For Blue Shield Members, Emergency Services also include any other services defined as emergency services in 42 C.F.R. §422.113.

www.mylifepath.com

Proprietary and Confidential – Blue Shield of California

shall be limited to the amount, if any, which when added to the amount obtained by Hospital from such primary payors, equals the amount of compensation to which Hospital is entitled under this Agreement for such services.

12.   Section 5.3 "Appeals of Payments or Denials" is hereby deleted in its entirety.

13.   Section 5.4 "Payment Audits & Overpayment & Underpayment Recoveries" is hereby amended to read in full as follows:

Payment Audits & Overpayment Recoveries.  Blue Shield shall have the right to audit payments made to Hospital. Such audits, if any will be conducted within twelve (12) months of the date of payment by Blue Shield. If Blue Shield identifies an overpayment it has made to Hospital, it may request a refund of such overpayment within 365 days of the date the payment was made, unless the overpayment is the result of fraud or misrepresentation on the part of Hospital. Blue Shield's procedures for notification of overpayments and notification of recovery of overpayments shall be in accordance with Title 28 Cal. Code of Regulations Section 1300.71(d). In addition, if Blue Shield determines that Hospital has overcharged an individual properly identified as a Member of an Other Payor, as defined in Section 12.1, covered by this Agreement, Hospital shall promptly refund such overpayment to Blue Shield or to such Member, as applicable, upon notification by Blue Shield of such overcharge within twelve (12) months of the date the payment was made.

14.   A new Section 5.5 "Late Charge Master Notification Recoveries" is hereby added to read in full as follows:

Late Charge Master Notification Recoveries: Notwithstanding the limitations of Section 5.4, if Hospital fails to give Blue Shield timely notice of changes to Hospital's charge master in accordance with Sections 2.10 and 2.12 hereof and such change results in a change in the percentage compensation amounts set forth in Exhibit C, Blue Shield shall have the right to recalculate all payments made to Hospital for services rendered after the date the charge master was implemented and to recover any overpayments resulting from the reduction in the percentage compensation within twelve (12) months of the date the payments were made, unless the overpayment is the result of fraud or misrepresentation on the part of Hospital. Blue Shield shall complete such calculations within 120 days of the date that Hospital provides Blue Shield with notice of the charge master change, and Blue Shield shall provide Hospital with a detailed accounting and reconciliation of all resulting overpayments. If Hospital fails within thirty (30) days to either repay the overpaid amounts or give written notice that the amount is in dispute, then Blue Shield shall have the right to recoup the overpayment amounts within twelve (12) months of the date the payments were made from subsequent payments to Hospital under this or any other agreement between Hospital and Blue Shield.

15.   A new Section 5.6 "Right To Audit Charge Master" is hereby added to read in full as follows:

Right To Audit Charge Master.  Blue Shield shall have the right to audit the Hospital's charge master to enforce Hospital's obligations under Sections 2.10 and 2.12 hereof.

16.   Section 9.1 "Provider Appeal Resolution Process" is hereby amended to read in full as follows:

<u>Provider Appeal Resolution Process.</u>

(a)     Blue Shield's Provider Appeal Resolution Process ("Appeal Process") shall comply
        with sections 1367(h), 1371, 1371.1, 1371.2, 1371.22, 1371.35, 1371.36, 1371.37,
        1371.4, and 1371.8 of the Health & Safety Code and Sections 1300.71, 1300.71.38,
        1300.71.4, and 1300.77.4 of Title 28 of the Cal. Code of Regulations. It shall be
        described in the Provider Manual and on the provider portal of Blue Shield's
        website at www.mylifepath.com.

(b)     The Appeal Process shall apply to any and all disputes arising under the Agreement.
        This provision does not in any way modify the provisions of Section 9.2 hereof
        relating to arbitration of disputes which cannot be resolved through the Appeal
        Process.

(c)     Blue Shield's Provider Appeal Resolution Process consists of two levels: Initial and
        Final. State law does not require Blue Shield to offer two levels. Initial Provider
        Appeals except those regarding facility contract exception(s) must be submitted in
        writing within 365 days of Blue Shield's determination or lack of action to the
        address for such Provider Appeals provided on Blue Shield's website at
        www.mylifepath.com.

        Initial appeals regarding facility contract exception(s) must be submitted in writing
        365 days of Blue Shield's determination or lack of action to the address for such
        Provider Appeals provided on Blue Shield's website at www.mylifepath.com.

        Final Provider Appeals must be submitted in writing within 90 days of Blue
        Shield's Initial Provider Appeal determination to the address for such Provider
        Appeals provided on Blue Shield's website at www.mylifepath.com.

(d)     The Provider Appeal must contain the following information:

        •   The provider's name
        •   The provider's identification number – The Blue Shield provider
            identification number (PIN) and/or the provider's tax or social security
            number
        •   Contact information – mailing address and phone number
        •   Blue Shield's Internal Control Number (ICN), when applicable
        •   The patient's name, when applicable
        •   The patient's Blue Shield subscriber number, when applicable
        •   The date of sevice, when applicable
        •   A clear explanation of the issue the provider believes to be incorrect,
            including supporting medical records when applicable.

        As applicable, Bundled Appeals must identify individually each item by using
        either the ICN or the section of the contract and sequential numbers that are cross
        referenced to a document or spreadsheet.

(e)     If Hospital fails to submit an Initial Appeal or Final Appeal within the required
        timeframes, Hospital waives the right for any remedies to pursue the matter further.

In such instance, Hospital may neither initiate a demand for Arbitration pursuant to Section 9.2 of this Agreement nor pursue additional payment from the Member.

(f)    Blue Shield and Hospital agree to submit any such disputes that cannot be resolved by the Appeal Process to binding arbitration pursuant to Section 9.2 of this Agreement. Pursuit by Hospital of a dispute through the process described in this Article IX shall neither modify nor relieve Hospital of any obligations to continue to provide services to Members in accordance with and to comply with all terms of this Agreement.

17.    Section 9.2 "Arbitration of Disputes" is hereby amended to read in full as follows:

Arbitration of Disputes.   If any dispute or controversy (other than a claim of medical malpractice) arises between the parties to this Agreement which exceeds the jurisdiction of Small Claims Court, which was not resolved in the Provider Appeal Resolution Process set forth in Section 9.1, and which may directly or indirectly concern or involve any term, covenant, or condition hereof, the parties shall settle the dispute by final and binding arbitration in San Francisco, Los Angeles, San Diego or Sacramento, California, whichever city is closest to the Hospital.  Arbitration shall be conducted under the Commercial Rules of the American Arbitration Association.  The arbitration decision shall be binding on both parties.  It is agreed that the arbitrator shall be bound by applicable state and federal law and that the arbitrator shall issue written findings of fact and conclusions of law.  The arbitrator shall have no authority to award damages or provide a remedy which would not be available to such prevailing party in a court of law nor shall the arbitrator have the authority to award punitive damages.  The cost of the arbitration shall be shared equally by Hospital and Plan.  Each party shall be responsible for its own attorneys' fees.

18.    Section 10.2 "Termination Without Cause" is hereby amended to read in full as follows:

Termination Without Cause.    During the initial term, neither party may terminate this Agreement without cause.  Thereafter, either party may terminate this Agreement without cause by giving to the other party at least one hundred eighty (180) calendar days written notice of termination.   The termination shall become effective the first day of the month following the expiration of the notice period.

19.    Section 10.3(b) is hereby amended to read in full as follows:

By Blue Shield  (i) the filing of bankruptcy by Hospital, a parent or subsidiary or substantial deterioration in the financial condition of a parent, affiliate or subsidiary, or, (ii) Hospital fails to provide quality medical services consistent with the standards set forth in this Agreement and in the Provider Manual, or, (iii) any license required in order for Hospital to provide Covered Services hereunder is revoked, terminated or restricted in any way, or, (iv) Hospital breaches any material term, covenant, or condition of this Agreement, including repeated failure to comply with procedures set forth in the Provider Manual, or (v) upon the occurrence of a material change in the ownership of Hospital and/or the sale of all or substantially all of the assets of Hospital.

All other provisions of the Fee For Service Hospital Agreement not inconsistent herein shall remain in full force and effect.

IN WITNESS WHEREOF, the parties have executed this Amendment the day and year set forth above.

**BLUE SHIELD OF CALIFORNIA**

Signature: _____

Print Name: __David Joyner___

Title: Senior Vice President, Network Management

Date: ___4/15/05___

**SETON MEDICAL CENTER**

Signature: _____

Print Name: _J. Alice Gerard_

Title: _VP Finance & Ca... BS_

Date: _March 31, 2005_

Seton Medical Center
Amendment I
3/31/2005

Proprietary and Confidential – Blue Shield of California

# BLUE SHIELD OF CALIFORNIA

# FEE FOR SERVICE HOSPITAL AGREEMENT

This Agreement is entered into between O'Connor Hospital, a California nonprofit public benefit corporation (hereinafter "Hospital"), and California Physicians' Service, Inc., d.b.a., Blue Shield of California, a California nonprofit corporation (hereinafter "Blue Shield"). The Effective Date of this Agreement is January 1, 2002.

## RECITALS

A.  Blue Shield is licensed as a prepaid health care service plan under the Knox-Keene Act of 1975 ("the Knox-Keene Act");

B.  Blue Shield contracts with individuals, associations, employer groups and governmental entities to provide or to arrange for the provision of covered HMO and PPO health care services to Members of Blue Shield;

C.  Hospital owns and operates an acute care hospital and is duly licensed and qualified to provide services to Members of Blue Shield;

D.  Hospital and Blue Shield desire that Hospital provide services to Members in accordance with the terms of this Agreement;

E.  Except as specifically noted, this Agreement is applicable to all Members enrolled under Blue Shield's Benefit Programs identified on Exhibit "A", and includes Medicare beneficiaries enrolled in Blue Shield's Medicare+Choice program if so identified in Exhibit "A". This Agreement shall not apply to Members enrolled in HMO nor Medicare+Choice programs for which Hospital receives capitation payments pursuant to a separate capitated hospital agreement, if any, between Hospital and Blue Shield.

## I. DEFINITIONS

For the purposes of this Agreement, terms shall have the following meanings:

1.1  Agreement Year:  is the period beginning at 12:01 a.m. on the Effective Date of this Agreement and ending at 11:59 p.m. on October 31, 2003.

1.2  Authorization:  is the procedure for obtaining the prior approval of Blue Shield, or its delegatee, for the provision of Covered Services. Such approval shall be requested and provided pursuant to authorization procedures established in this Agreement and as described in the Provider Manual and in Section 2.6 hereof.

O Connor Hospital
DOCHS Hospital Agreement
[DOCHS Final 10-16-02]

Page 5

## IX. RESOLUTION OF DISPUTES

9.1    Provider Dispute Resolution Procedure.  Blue Shield and Hospital agree to meet and confer in good faith to resolve any disputes that arise under this Agreement. Except for disputes relating to payment amounts, and the procedure whereby this Agreement may be terminated, which disputes shall be governed exclusively by Section 9.2 hereof, if a dispute remains unresolved, it may be referred to the Blue Shield Provider Dispute Resolution Committee.  Disputes may be submitted in writing addressed to Vice President Provider Services at 50 Beale St., San Francisco, California, 94105.  Disputes referred to the Blue Shield Provider Dispute Resolution Committee shall be decided within thirty (30) days of referral. If such disputes cannot be resolved by the Blue Shield Provider Dispute Resolution Committee, Blue Shield and Hospital agree to submit the dispute to binding arbitration pursuant to Section 9.2 of this Agreement. Pursuit by Hospital of a dispute through the processes described in this Article IX. shall neither modify nor relieve Hospital of any obligations to continue to provide services to Members in accordance with and to comply with all terms of this Agreement.

9.2    Arbitration of Disputes.  If any dispute or controversy (other than a claim of medical malpractice) arises between the parties to this Agreement which exceeds the jurisdiction of Small Claims Court, which was not resolved in the payment appeals procedure set forth in Section 5.3 or in the Provider Dispute Resolution procedure set forth in Section 9.1, and which may directly or indirectly concern or involve any term, covenant, or condition hereof, the parties shall settle the dispute by final and binding arbitration in San Francisco, Los Angeles, San Diego or Sacramento, California, whichever city is closest to the Hospital.  Arbitration shall be conducted under the Commercial Rules of the American Arbitration Association or JAMS Endispute.  The arbitration decision shall be binding on both parties.  It is agreed that the arbitrator shall be bound by applicable state and federal law and that the arbitrator shall issue written findings of fact and conclusions of law.  The arbitrator shall have no authority to award damages or provide a remedy which would not be available to such prevailing party in a court of law nor shall the arbitrator have the authority to award punitive damages.  The cost of the arbitration shall be shared equally by Hospital and Plan.  Each party shall be responsible for its own attorneys' fees.

9.3    Small Claims Court.  Notwithstanding Paragraph 9.2, Hospital may pursue individual claim disputes in California Small Claims Court for any individual claim that is within the jurisdictional limit.

9.4    Limitation of Actions.  A Demand for Arbitration pursuant to Section 9.2 hereof or a Small Claims Court action pursuant to Section 9.3 hereof must be filed within twenty-four (24) months of the alleged breach. Should the aggrieved party fail to file a Demand for Arbitration of the dispute or Small Claims Court action within the time-frame set forth herein, the aggrieved party shall have waived its rights and remedies with respect to the alleged breach.  The aggrieved party shall have

O Connor Hospital
DOCHS Hospital Agreement
[DOCHS Final 10-16-02]

Page 24

no right to pursue any remedy with respect to such alleged breach, including, but not limited to, initiation of any civil action in state or federal court, and, if the aggrieved party is Hospital, Hospital shall have no right to pursue payment of any disputed amounts from the Member. Nothing in this section shall be interpreted as a waiver of Hospital's rights to pursue legal remedies against Blue Shield based on fraud and unfair business practices at any time within the applicable statutes of limitation.

## X.  TERM & TERMINATION

10.1    Term.  When executed by both parties, this Agreement shall become effective as of the Effective Date, and shall continue in effect until December 31, 2003.  Unless either party notifies the other party at least one hundred twenty (120) days prior to the expiration of said initial term, this Agreement shall, following expiration of the initial term, continue in effect for additional one (1) year terms until terminated as set forth below.

10.2    Termination Without Cause.  After or effective upon expiration of the initial term, either party may terminate this Agreement at anytime without cause by giving to the other party at least one hundred twenty (120) calendar days written notice of termination. Notwithstanding the foregoing, Hospital may terminate this Agreement at any time upon one hundred twenty (120) calendar days written notice in the event that (a) Hospital determines in good faith that benefit changes or other actions by Blue Shield specifically relating to and specifically designed to divert outpatient surgical procedures from hospitals to other healthcare providers has resulted in a reduction in Hospital's outpatient surgical procedures for Blue Shield members by at least thirty percent (30%) compared to the volume of outpatient surgical procedures for Blue Shield members over the previous twelve (12) month period; (b) Hospital has notified Blue Shield in writing of its findings along with supporting documentation and provided Blue Shield with thirty (30) calendar days in which to take action to remedy the diversion of outpatient surgical procedures or to propose changes in the compensation amounts set forth herein to offset the revenue reduction to Hospital, and, (c) Blue Shield has failed to take action within such thirty (30) day period in which to cause such diversions to cease or to propose changes in compensation.

10.3    Termination for Cause.  Either party may, subject to the cure period set forth in Section 10.4, terminate this Agreement for material cause after written notice as set forth hereinafter.  The following shall constitute a material cause for termination:

(a)    By Hospital if:  (i) revocation of Blue Shield's license necessary for the performance of this Agreement; or, (ii) Blue Shield breaches any material term, covenant, or condition of this Agreement.

(b)    By Blue Shield if:  (i) the filing of bankruptcy by Hospital, a parent or subsidiary or substantial deterioration in the financial condition of a parent,

O Connor Hospital
DOCHS Hospital Agreement
[DOCHS Final 10-16-02]

Page 25

are inconsistent with the medical ethics or precepts of the Common Values for Community Sponsorship.

13.14 <u>Corporate Integrity Program</u>.  Blue Shield acknowledges that Hospital operates under the Corporate Integrity Program, and has adopted a Compliance Program of Daughters of Charity Health System.  Blue Shield further acknowledges that, notwithstanding anything contained herein, Hospital shall not be required to engage in any conduct that may violate any policies, procedures, or directives of the Corporate Integrity Program or Compliance Program.  Blue Shield further represents that it has not in the past been excluded, nor is it currently excluded, from participation in government funded healthcare programs, including, but not limited to, Medicare, Medicaid, CHAMPUS and FEHBP.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their authorized representatives.

**BLUE SHIELD OF CALIFORNIA**

Signature: _Lisa Furman_

Printed Name: _Lisa Furman_

Title: _VP, Provider Relations_

Date: _12 2 12_

**O'CONNOR HOSPITAL**

Signature: _____

Printed Name: _Robert Issai_

Title: _EVP & CFO_

Date: _11-19-02_

Tax ID No.: _91-2154436_

O Connor Hospital
DOCHS Hospital Agreement
[DOCHS Final 10-16-02]

Page 32





# AMENDMENT
## TO
## FEE FOR SERVICE
## HOSPITAL AGREEMENT

This Amendment is entered into effective **May 1, 2005** by and between **O'Connor Hospital, a California corporation** (hereinafter "Hospital"), and **California Physicians' Service, Inc., d.b.a. BLUE OF SHIELD OF CALIFORNIA, a California nonprofit corporation** (hereinafter "Blue Shield"), in order to modify the Fee For Service Hospital Agreement dated January 1, 2002.

## RECITALS

A. Whereas Hospital and Blue Shield currently have an Agreement under which Hospital agrees to provide Covered Services to Blue Shield Members; and,

B. Whereas Hospital submitted a notice of termination to open negotiations and has now agreed to rescind said termination;

C. Whereas Hospital and Blue Shield have reached agreement on new compensation terms and provisions.

Now therefore, Hospital and Blue Shield agree and hereby amend the Agreement effective <u>May 1, 2005</u> as follows:

## AMENDMENT

1.  A new section 1.1 "Affiliates" is hereby added to read in full as follows:

    <u>Affiliates</u>: Blue Shield, or an entity that controls, is controlled by or is under common control with Blue Shield, or is under contract with Blue Shield, or which has been authorized by Blue Shield to access one or more networks of Participating Providers on behalf of themselves and/or other Affiliates or Payors.  A list of Affiliates will be given upon request.

2.  Section 1.8 "Emergency Services" is hereby deleted in its entirety and replaced with Section 1.9 "Emergency Services" as follows:

    <u>Emergency Services</u>: are Covered Services to address a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) so as to cause the prudent layperson to conclude that the absence of immediate medical attention could reasonably be expected to result in: (i) placing the Member's health in serious jeopardy; (ii) serious impairment to bodily functions; (iii) serious dysfunction of any bodily organ or part.  For Blue Shield Members, Emergency Services also include any other services defined as emergency services in 42 C.F.R. §422.113.





O'Connor Hospital
Amendment I

www.mylifepath.com

12.    Section 5.3 "Appeals of Payments or Denials" is hereby deleted in its entirety.

13.    Section 5.4 "Payment Audits & Overpayment & Underpayment Recoveries" is hereby
amended to read in full as follows:

Payment Audits & Overpayment Recoveries.  Blue Shield shall have the right to audit
payments made to Hospital. Such audits, if any will be conducted within twelve (12) months
of the date of payment by Blue Shield. If Blue Shield identifies an overpayment it has made
to Hospital, it may request a refund of such overpayment within 365 days of the date the
payment was made, unless the overpayment is the result of fraud or misrepresentation on the
part of Hospital. Blue Shield's procedures for notification of overpayments and notification
of recovery of overpayments shall be in accordance with Title 28 Cal. Code of Regulations
Section 1300.71(d). In addition, if Blue Shield determines that Hospital has overcharged an
individual properly identified as a Member of an Other Payor, as defined in Section 12.1,
covered by this Agreement, Hospital shall promptly refund such overpayment to Blue Shield
or to such Member, as applicable, upon notification by Blue Shield of such overcharge within
twelve (12) months of the date the payment was made.

14.    A new Section 5.5 "Late Charge Master Notification Recoveries" is hereby added to read in
full as follows:

Late Charge Master Notification Recoveries: Notwithstanding the limitations of Section
5.4, if Hospital fails to give Blue Shield timely notice of changes to Hospital's charge
master in accordance with Sections 2.10 and 2.12 hereof and such change results in a
change in the percentage compensation amounts set forth in Exhibit C., Blue Shield shall
have the right to recalculate all payments made to Hospital for services rendered after the
date the charge master was implemented and to recover any overpayments resulting from
the reduction in the percentage compensation within twelve (12) months of the date the
payments were made, unless the overpayment is the result of fraud or misrepresentation on
the part of Hospital. Blue Shield shall complete such calculations within 120 days of the
date that Hospital provides Blue Shield with notice of the charge master change, and Blue
Shield shall provide Hospital with a detailed accounting and reconciliation of all resulting
overpayments. If Hospital fails within thirty (30) days to either repay the overpaid amounts
or give written notice that the amount is in dispute, then Blue Shield shall have the right to
recoup the overpayment amounts within twelve (12) months of the date the payments were
made from subsequent payments to Hospital under this or any other agreement between
Hospital and Blue Shield.

15.    A new Section 5.6 "Right To Audit Charge Master" is hereby added to read in full as
follows:

Right To Audit Charge Master.   Blue Shield shall have the right to audit the Hospital's
charge master to enforce Hospital's obligations under Sections 2.10 and 2.12 hereof.

16.    Section 9.1 "Provider Appeal Resolution Process" is hereby amended to read in full as
follows:

Provider Appeal Resolution Process.

(a)    Blue Shield's Provider Appeal Resolution Process ("Appeal Process") shall comply
with sections 1367(h), 1371, 1371.1, 1371.2, 1371.22, 1371.35, 1371.36, 1371.37,

1371.4, and 1371.8 of the Health & Safety Code and Sections 1300.71, 1300.71.38, 1300.71.4, and 1300.77.4 of Title 28 of the Cal. Code of Regulations. It shall be described in the Provider Manual and on the provider portal of Blue Shield's website at www.mylifepath.com.

(b)     The Appeal Process shall apply to any and all disputes arising under the Agreement. This provision does not in any way modify the provisions of Section 9.2 hereof relating to arbitration of disputes which cannot be resolved through the Appeal Process.

(c)     Blue Shield's Provider Appeal Resolution Process consists of two levels: Initial and Final. State law does not require Blue Shield to offer two levels. Initial Provider Appeals except those regarding facility contract exception(s) must be submitted in writing within 365 days of Blue Shield's determination or lack of action to the address for such Provider Appeals provided on Blue Shield's website at www.mylifepath.com.

Initial appeals regarding facility contract exception(s) must be submitted in writing 365 days of Blue Shield's determination or lack of action to the address for such Provider Appeals provided on Blue Shield's website at www.mylifepath.com.

Final Provider Appeals must be submitted in writing within 90 days of Blue Shield's Initial Provider Appeal determination to the address for such Provider Appeals provided on Blue Shield's website at www.mylifepath.com.

(d)     The Provider Appeal must contain the following information:

- The provider's name
- The provider's identification number – The Blue Shield provider identification number (PIN) and/or the provider's tax or social security number
- Contact information -- mailing address and phone number
- Blue Shield's Internal Control Number (ICN), when applicable
- The patient's name, when applicable
- The patient's Blue Shield subscriber number, when applicable
- The date of sevice, when applicable
- A clear explanation of the issue the provider believes to be incorrect, including supporting medical records when applicable.

As applicable, Bundled Appeals must identify individually each item by using either the ICN or the section of the contract and sequential numbers that are cross-referenced to a document or spreadsheet.

(e)     If Hospital fails to submit an Initial Appeal or Final Appeal within the required timeframes, Hospital waives the right for any remedies to pursue the matter further. In such instance, Hospital may neither initiate a demand for Arbitration pursuant to Section 9.2 of this Agreement nor pursue additional payment from the Member.

O'Connor Hospital
Amendment I
3/31/2005                                    Proprietary and Confidential – Blue Shield of California

(f)    Blue Shield and Hospital agree to submit any such disputes that cannot be resolved by the Appeal Process to binding arbitration pursuant to Section 9.2 of this Agreement. Pursuit by Hospital of a dispute through the process described in this Article IX shall neither modify nor relieve Hospital of any obligations to continue to provide services to Members in accordance with and to comply with all terms of this Agreement.

17.    Section 9.2 "Arbitration of Disputes" is hereby amended to read in full as follows:

Arbitration of Disputes.    If any dispute or controversy (other than a claim of medical malpractice) arises between the parties to this Agreement which exceeds the jurisdiction of Small Claims Court, which was not resolved in the Provider Appeal Resolution Process set forth in Section 9.1, and which may directly or indirectly concern or involve any term, covenant, or condition hereof, the parties shall settle the dispute by final and binding arbitration in San Francisco, Los Angeles, San Diego or Sacramento, California, whichever city is closest to the Hospital. Arbitration shall be conducted under the Commercial Rules of the American Arbitration Association. The arbitration decision shall be binding on both parties. It is agreed that the arbitrator shall be bound by applicable state and federal law and that the arbitrator shall issue written findings of fact and conclusions of law. The arbitrator shall have no authority to award damages or provide a remedy which would not be available to such prevailing party in a court of law nor shall the arbitrator have the authority to award punitive damages. The cost of the arbitration shall be shared equally by Hospital and Plan. Each party shall be responsible for its own attorneys' fees.

18.    Section 10.2 "Termination Without Cause" is hereby amended to read in full as follows:

Termination Without Cause.    During the initial term, neither party may terminate this Agreement without cause. Thereafter, either party may terminate this Agreement without cause by giving to the other party at least one hundred eighty (180) calendar days written notice of termination.    The termination shall become effective the first day of the month following the expiration of the notice period.

19.    Section 10.3(b) is hereby amended to read in full as follows:

By Blue Shield    (i) the filing of bankruptcy by Hospital, a parent or subsidiary or substantial deterioration in the financial condition of a parent, affiliate or subsidiary, or, (ii) Hospital fails to provide quality medical services consistent with the standards set forth in this Agreement and in the Provider Manual, or, (iii) any license required in order for Hospital to provide Covered Services hereunder is revoked, terminated or restricted in any way, or, (iv) Hospital breaches any material term, covenant, or condition of this Agreement, including repeated failure to comply with procedures set forth in the Provider Manual, or (v) upon the occurrence of a material change in the ownership of Hospital and/or the sale of all or substantially all of the assets of Hospital.

20.    Section 10.6 "Effect of Termination" is hereby amended to read in full as follows:

All other provisions of the Fee For Service Hospital Agreement not inconsistent herein shall remain in full force and effect.

**IN WITNESS WHEREOF,** the parties have executed this Amendment the day and year set forth above.

**BLUE SHIELD OF CALIFORNIA**

Signature: _____

Print Name: ___David Joyner___

Title: _Senior Vice President, Network Management_

Date: ___4/15/05___

**O'CONNOR HOSPITAL**

Signature: _____

Print Name: _____

Title: _VP Finance / CFO - CBS_

Date: _March 31, 2005_

O'Connor Hospital
Amendment 1

# Exhibit 2

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

### COMMERCIAL ARBITRATION RULES
### DEMAND FOR ARBITRATION

| *MEDIATION: If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box.* *There is no additional administrative fee for this service.* | | | | | ☐ |
|---|---|---|---|---|---|

| Name of Respondent California Physicians' Service dba Blue Shield of California | | | Name of Representative (if known) Bryan C. Crawley, Esq./Associate General Counsel | | |
|---|---|---|---|---|---|
| Address | | | Name of Firm (if applicable) Blue Shield of California | | |
| | | | Representative's Address 6300 Canoga Avenue, 10th Floor | | |
| City | State | Zip Code | City Woodland Hills | State | Zip Code |
| Phone No. | | Fax No. | Phone No. 818-228-2369 | | Fax No. 888-619-3597 |
| Email Address: | | | Email Address: Bryan.Crawley@blueshieldca.com | | |

B.C.C.
MAY 2 2 2014
LAW DEPARTMENT

The named claimant, a party to an arbitration agreement dated _1/1/2002 & 12/01/2010_, which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

THE NATURE OF THE DISPUTE

The claims identified on the attached Exhibit 1 list are all claims which have been improperly denied and inappropriately underpaid pursuant to the agreement which exists between the petitioner and the respondent. California Physicians' Service dba Blue Shield of California owes Daughters of Charity Health System dba O'Connor Hospital and Seton Medical Center a principal sum of $108,992.96. Interest has yet to be paid on these claims pursuant to Health and Safety Section 1371.35.

| Dollar Amount of Claim $108,992.96 | Other Relief Sought:    Attorneys Fees    x  Interest |
|---|---|
| | Arbitration Costs    Punitive/ Exemplary    Other _____ |

Amount Enclosed $1,850.00  In accordance with Fee Schedule:    Flexible Fee Schedule    x Standard Fee Schedule

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:
REASONED DECISION, RETIRED JUDGES

Hearing locale San Francisco, California (check one)    x Requested by Claimant    x Locale provision included in the contract

| Estimated time needed for hearings overall: _____ hours or  2  day | Type of Business:  Claimant _HOSPITAL_  Respondent _HEALTH PLAN_ |
|---|---|

Is this a dispute between a business and a consumer?  Yes  x No  Does this dispute arise out of an employment relationship?  Yes  x No

If this dispute arises out of an employment relationship, what was/is the employee's annual wage range? Note: This question is required by California law.    Less than $100,000    $100,000 - $250,000    Over $250,000

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement.

| Signature (may be signed by a representative)    Date: 05/21/2014 | Name of Representative CHRISTINE V. NITOFF, ESQ. |
|---|---|
| Name of Claimant DAUGHTERS OF CHARITY HEALTH SYSTEM dba O'CONNOR HOSPITAL and SETON MEDICAL CENTER | Name of Firm (if applicable) STEPHENSON, ACQUISTO & COLMAN |
| Address (to be used in connection with this case) 303 N. Glenoaks Blvd., Suite 700 | Representative's Address 303 N. Glenoaks Blvd., Suite 700 |

| City Burbank | State CA | Zip Code 91502 | City Burbank | State CA | Zip Code 91502 |
|---|---|---|---|---|---|
| Phone No. 818-559-4477 | | Fax No. 818-559-5484 | Phone No. 818-559-4477 | | Fax No. 818-559-5484 |
| Email Address: cnitoff@sacfirm.com | | | Email Address: cnitoff@sacfirm.com | | |

To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043. Send the original Demand to the Respondent.

Please visit our website at www.adr.org if you would like to file this case online. AAA Case Filing Services can be reached at 877-495-4185.

# EXHIBIT 1

Exhibit 1

## DAUGHTERS OF CHARITY HEALTH SYSTEM DBA O`CONNOR HOSPITAL, SAINT LOUIS REGIONAL HOSPITAL AND SETON MEDICAL CENTER VS. CALIFORNIA PHYSICIANS' SERVICE DBA BLUE SHIELD OF CALIFORNIA

Filing Code  11587       Exhibit 1

| FileNo | Last Name | First Name | Facility | Admission | Discharge | Patient ID | Total Charges | Total Paid | Underpaid |
|--------|-----------|------------|----------|-----------|-----------|------------|---------------|------------|-----------|
| 000063 999593 | | | O'Connor | 10/20/2010 | 12/30/2010 | | $2,357,363.77 | $1,450,358.00 | $73,487.18 |
| 000066 974130 | | | O'Connor | 1/16/2013 | 1/17/2013 | | $36,941.00 | $0.00 | $3,968.00 |
| 000030 126338 | | | Seton | 9/22/2011 | 9/25/2011 | | $45,951.00 | $4,860.00 | $3,240.00 |
| 000030 007710 | | | Seton | 8/18/2011 | 8/29/2011 | | $158,966.00 | $92,734.83 | $16,633.78 |
| 000031 401532 | | | Seton | 10/8/2012 | 10/19/2012 | | $193,445.17 | $20,412.00 | $11,664.00 |
| Total  5 | | | | | | | $2,792,666.94 | $1,568,364.83 | $108,992.96 |

# EXHIBIT 2

# blue ♥ of california

## BLUE SHIELD OF CALIFORNIA
## FEE FOR SERVICE HOSPITAL AGREEMENT

This Fee For Service Hospital Agreement (this "Agreement") is entered into by and between **Seton Medical Center**, a California nonprofit corporation ("Hospital"), and California Physicians' Service, dba Blue Shield of California, a California nonprofit corporation ("Blue Shield"). This Agreement shall be effective **December 1, 2010** (the "Effective Date").



### RECITALS

A.   Blue Shield is licensed as a prepaid health care service plan under the Knox-Keene Act of 1975, as amended (the "Knox-Keene Act"). Blue Shield contracts with individuals, associations, employer groups, and governmental entities to provide or to arrange for the provision of covered health care services to Members (as defined herein) enrolled in HMO and PPO benefit plans.

B.   Hospital owns and operates an acute care hospital and is duly licensed and qualified to provide inpatient and outpatient hospital services to Members.

C.   Hospital and Blue Shield desire that Hospital provide fee-for-service inpatient and outpatient hospital services (excluding capitated hospital agreements as described in Section 12.1 of this Agreement) to Members, in accordance with the terms of this Agreement.

### I. DEFINITIONS

For purposes of this Agreement, the following capitalized terms shall have the meanings ascribed to them below:

1.1   **Agreement Year:** is the twelve (12) month period beginning on the Effective Date, and each twelve (12) month period beginning on each annual anniversary date of the Effective Date thereafter.

1.2   **Allowed Charges:** are charges billed by Hospital, in accordance with Hospital's Charge Master, for Hospital Services furnished pursuant to this Agreement, less those charges, if any, disallowed by Blue Shield pursuant to Section III (General Notes) of Exhibit C hereto.

4

Seton Medical Center-FFS Hospital Agreement_Base 12-01-10
Base FFS Hospital Agreement v23.0
Proprietary and Confidential – Blue Shield of California

- 30 -

blue 🛡 of california

to and right to review records pertaining to Members shall be pursuant to Sections 7.1 and 8.1, as applicable.

8.3 **Accreditation Surveys.** Hospital shall cooperate in the manner described in Sections 8.1 and 8.2 hereof with respect to surveys and site evaluations relating to accreditation of Blue Shield by the National Committee For Quality Assurance ("NCQA") or any other accrediting organization. Hospital further agrees to promptly implement any changes Blue Shield deems reasonably required as a result of any such survey.

8.4 **Compliance Monitoring.** Hospital shall cooperate with Blue Shield in the performance of any monitoring, studies, evaluations, analyses, or surveys of Hospital's performance of services hereunder, required by Government Officials or accrediting organizations.

## IX. RESOLUTION OF DISPUTES

9.1 **Provider Appeal Resolution Process.**

(a) Blue Shield's Provider Appeal resolution process ("Appeal Process") shall apply to any and all disputes arising under this Agreement. The Appeal Process shall comply with Sections 1367(h), 1371, 1371.1, 1371.2, 1371.22, 1371.35, 1371.36, 1371.37, 1371.4, and 1371.8 of the California Health & Safety Code, and Sections 1300.71, 1300.71.38, 1300.71.4, and 1300.77.4 of Title 28 of the California Code of Regulations. The Appeal Process shall be described in the Provider Manual and on the provider portal of Blue Shield's website at www.blueshieldca.com.

(b) The Appeal Process consists of two (2) levels:

  (i) *Initial Appeals Process.* Provider Appeals must be submitted by Hospital, in writing, within three hundred sixty-five (365) days of Blue Shield's determination, lack of action or alleged breach, to the address for Initial Provider Appeals provided on the provider portal of Blue Shield's website at www.blueshieldca.com.

  (ii) *Final Appeal Process.* Any Provider Appeal that is not resolved to Hospital's satisfaction during the Initial Appeal Process must be submitted to the Final Appeal Process. All Provider Appeals must be submitted to the Final Appeal Process by Hospital, in writing, within ninety (90) working days of Blue Shield's Initial Provider Appeal determination, to the address for such Provider Appeals provided on Blue Shield's website at www.blueshieldca.com.

(c) Each Provider Appeal must contain the following information:

  (i) Hospital's name;

23

# blue 🛡 of california

(ii)    Hospital's identification number – the Blue Shield provider identification number (PIN), tax identification number, or National Provider Identifier (NPI);

(iii)    Hospital mailing address and phone number;

(iv)    Blue Shield's Internal Control Number (ICN), when applicable;

(v)    The patient's name, when applicable;

(vi)    The patient's Blue Shield subscriber number, when applicable;

(vii)    The date of service, when applicable; and

(viii)    A clear explanation of the issue the provider believes to be incorrect, including supporting medical records, when applicable.

(ix)    In addition, as applicable, bundled appeals must identify individually each item by using either the ICN or the section of the contract and sequential numbers that are cross-referenced to a document or spreadsheet.

(d)    This Section 9.1 does not in any way modify the provisions of Section 9.2 hereof relating to arbitration of disputes that cannot be resolved through the Appeal Process. However, if Hospital fails to submit a Provider Appeal to either level of the Appeal Process within the timeframes set forth above, Hospital shall be deemed to have waived its right to any remedies and to pursue the matter further. Without limiting the foregoing, in such instance, Hospital may neither initiate a demand for arbitration pursuant to Section 9.2 of this Agreement nor pursue additional payment from the Member.

(e)    Blue Shield and Hospital agree to submit any disputes that cannot be resolved by the Appeal Process to binding arbitration pursuant to Section 9.2 of this Agreement. Pursuit by Hospital of a dispute through the process described in this Article IX shall neither modify nor relieve Hospital of any obligations to continue to provide services to Members in accordance with and to comply with all terms of this Agreement.



9.2    **Arbitration of Disputes.** Any dispute (other than a claim of medical malpractice) between the parties that exceeds the jurisdiction of Small Claims Court and that was reviewed through, but not resolved by, the Appeal Process set forth in Section 9.1, shall be settled by final and binding arbitration in San Francisco, Los Angeles, San Diego or Sacramento, California, whichever city is closest to Hospital. Arbitration shall be conducted by and under the Commercial Rules of the American Arbitration Association. The arbitration decision shall be binding on both parties. The arbitrator shall be bound by applicable state and federal law and shall issue written findings of fact and conclusions of law. The arbitrator shall have no authority to award damages or provide a remedy that would not

24

Seton Medical Center-FFS Hospital Agreement_Base 12-01-10
Base FFS Hospital Agreement v23.0
Proprietary and Confidential – Blue Shield of California

- 32 -

blue ⓥ of california

be available to such prevailing party in a court of law nor shall the arbitrator have the authority to award punitive damages. The cost of the arbitration shall be shared equally by Hospital and Blue Shield; provided that each party shall be responsible for its own attorneys' fees and costs.



9.3    **Limitation of Actions.** A demand for arbitration pursuant to Section 9.2 must be filed within twenty-four (24) months of Blue Shield's determination, lack of action or alleged breach that is the subject of the dispute. Should the aggrieved party fail to file a demand for arbitration of the dispute within the timeframe set forth herein, the aggrieved party shall have waived its rights and remedies with respect to the alleged breach. The aggrieved party shall have no right to pursue any remedy with respect to such alleged breach, including, without limitation, initiation of any civil action in state or federal court, and, if the aggrieved party is Hospital, Hospital shall have no right to pursue payment of any disputed amounts from the Member.

## X. TERM & TERMINATION



10.1    **Term.** Unless earlier terminated under the Termination for Cause Section 10.3, and the Immediate Termination Section 10.4, this Agreement shall become effective as of the Effective Date (December 1, 2010), and shall continue in effect for three (3) years thereafter (November 30, 2013) (the "Initial Term"), unless earlier terminated as set forth in this Agreement. Unless either party notifies the other party at least one hundred eighty (180) days prior to the expiration of the Initial Term, this Agreement shall automatically renew for additional terms of one (1) year each, unless and until terminated as set forth in this Agreement



10.2    **Termination Without Cause.** During the Initial Term, neither party may terminate this Agreement without cause. Thereafter, either party may terminate this Agreement without cause by giving to the other party at least one hundred eighty (180) days prior written notice of termination. Any termination pursuant to this Section 10.2 shall become effective the first day of the calendar month following the expiration of the notice period.

10.3    **Termination for Cause.**

(a)    Either party may terminate this Agreement for material cause, following written notice and the opportunity to cure described in Section 10.3(b). The following shall constitute material cause for termination:

(i)    *By Hospital:* (A) revocation of Blue Shield's license necessary for the performance of this Agreement; (B) breach by Blue Shield of any material term, covenant, or condition of this Agreement; or (C) failure of Blue Shield and Hospital to agree upon any material change to the Provider Manual in accordance with Section 2.10.

25

Seton Medical Center-FFS Hospital Agreement_Base 12-01-10
Base FFS Hospital Agreement v23.0
Proprietary and Confidential – Blue Shield of California

blue 🛡 of california

no affect on the remainder of this Agreement, which shall continue in full force and effect.

12.17 **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

12.18 **Ethical and Religious Directives.** Blue Shield acknowledges that Hospital is an institution operated in accordance with the Ethical and Religious Directives for Catholic Health Care Services (the "Directives"). Notwithstanding any provision of this Agreement to the contrary, Hospital shall not be required, nor shall any provision of this Agreement be construed to require, Hospital to provide services, pay for or authorize services or otherwise participate in activities that are not consistent with the Directives. (A copy of the Directives is available at http://www.usccb.org/bishops/directives.shtml.)

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their authorized representatives:

**BLUE SHIELD OF CALIFORNIA**

Signature: _Juan C Davila_

Print Name: Juan C. Davila

Title: Senior Vice President, Network Mgmt.

Date: 11-11-10

**Seton Medical Center**

Signature: _Lorraine_

Print Name: Lorraine P. Auerbach, FACHE

Title: President & CEO

Date: 11/4/10

32

# BLUE SHIELD OF CALIFORNIA

## FEE FOR SERVICE HOSPITAL AGREEMENT

This Agreement is entered into between O'Connor Hospital, a California nonprofit public benefit corporation (hereinafter "Hospital"), and California Physicians' Service, Inc., d.b.a., Blue Shield of California, a California nonprofit corporation (hereinafter "Blue Shield"). The Effective Date of this Agreement is January 1, 2002.

## RECITALS

A.   Blue Shield is licensed as a prepaid health care service plan under the Knox-Keene Act of 1975 ("the Knox-Keene Act");

B.   Blue Shield contracts with individuals, associations, employer groups and governmental entities to provide or to arrange for the provision of covered HMO and PPO health care services to Members of Blue Shield;

C.   Hospital owns and operates an acute care hospital and is duly licensed and qualified to provide services to Members of Blue Shield;

D.   Hospital and Blue Shield desire that Hospital provide services to Members in accordance with the terms of this Agreement;

E.   Except as specifically noted, this Agreement is applicable to all Members enrolled under Blue Shield's Benefit Programs identified on Exhibit "A", and includes Medicare beneficiaries enrolled in Blue Shield's Medicare+Choice program if so identified in Exhibit "A". This Agreement shall not apply to Members enrolled in HMO nor Medicare+Choice programs for which Hospital receives capitation payments pursuant to a separate capitated hospital agreement, if any, between Hospital and Blue Shield.

## I. DEFINITIONS

For the purposes of this Agreement, terms shall have the following meanings:

1.1   Agreement Year: is the period beginning at 12:01 a.m. on the Effective Date of this Agreement and ending at 11:59 p.m. on October 31, 2003.

1.2   Authorization: is the procedure for obtaining the prior approval of Blue Shield, or its delegatee, for the provision of Covered Services. Such approval shall be requested and provided pursuant to authorization procedures established in this Agreement and as described in the Provider Manual and in Section 2.6 hereof.

O Connor Hospital
DOCHS Hospital Agreement
[DOCHS Final 10-16-02]

## IX. RESOLUTION OF DISPUTES

9.1    Provider Dispute Resolution Procedure.  Blue Shield and Hospital agree to meet
and confer in good faith to resolve any disputes that arise under this Agreement.
Except for disputes relating to payment amounts, and the procedure whereby this
Agreement may be terminated, which disputes shall be governed exclusively by
Section 9.2 hereof, if a dispute remains unresolved, it may be referred to the Blue
Shield Provider Dispute Resolution Committee.  Disputes may be submitted in
writing addressed to Vice President Provider Services at 50 Beale St., San
Francisco, California, 94105.  Disputes referred to the Blue Shield Provider
Dispute Resolution Committee shall be decided within thirty (30) days of referral.
If such disputes cannot be resolved by the Blue Shield Provider Dispute
Resolution Committee, Blue Shield and Hospital agree to submit the dispute to
binding arbitration pursuant to Section 9.2 of this Agreement. Pursuit by Hospital
of a dispute through the processes described in this Article IX. shall neither
modify nor relieve Hospital of any obligations to continue to provide services to
Members in accordance with and to comply with all terms of this Agreement.

9.2    Arbitration of Disputes.  If any dispute or controversy (other than a claim of medical
malpractice) arises between the parties to this Agreement which exceeds the
jurisdiction of Small Claims Court, which was not resolved in the payment appeals
procedure set forth in Section 5.3 or in the Provider Dispute Resolution procedure
set forth in Section 9.1, and which may directly or indirectly concern or involve any
term, covenant, or condition hereof, the parties shall settle the dispute by final and
binding arbitration in San Francisco, Los Angeles, San Diego or Sacramento,
California, whichever city is closest to the Hospital. Arbitration shall be conducted
under the Commercial Rules of the American Arbitration Association or JAMS
Endispute.  The arbitration decision shall be binding on both parties.  It is agreed
that the arbitrator shall be bound by applicable state and federal law and that the
arbitrator shall issue written findings of fact and conclusions of law.    The
arbitrator shall have no authority to award damages or provide a remedy which
would not be available to such prevailing party in a court of law nor shall the
arbitrator have the authority to award punitive damages.    The cost of the
arbitration shall be shared equally by Hospital and Plan.  Each party shall be
responsible for its own attorneys' fees.

9.3    Small Claims Court.    Notwithstanding Paragraph 9.2, Hospital may pursue
individual claim disputes in California Small Claims Court for any individual
claim that is within the jurisdictional limit.

9.4    Limitation of Actions.  A Demand for Arbitration pursuant to Section 9.2 hereof
or a Small Claims Court action pursuant to Section 9.3 hereof must be filed within
twenty-four (24) months of the alleged breach.  Should the aggrieved party fail to
file a Demand for Arbitration of the dispute or Small Claims Court action within
the time-frame set forth herein, the aggrieved party shall have waived its rights
and remedies with respect to the alleged breach.  The aggrieved party shall have

O Connor Hospital
DOCHS Hospital Agreement
[DOCHS Final 10-16-02]

Page 24

no right to pursue any remedy with respect to such alleged breach, including, but not limited to, initiation of any civil action in state or federal court, and, if the aggrieved party is Hospital, Hospital shall have no right to pursue payment of any disputed amounts from the Member. Nothing in this section shall be interpreted as a waiver of Hospital's rights to pursue legal remedies against Blue Shield based on fraud and unfair business practices at any time within the applicable statutes of limitation.

## X. TERM & TERMINATION

10.1 Term. When executed by both parties, this Agreement shall become effective as of the Effective Date, and shall continue in effect until December 31, 2003. Unless either party notifies the other party at least one hundred twenty (120) days prior to the expiration of said initial term, this Agreement shall, following expiration of the initial term, continue in effect for additional one (1) year terms until terminated as set forth below.

10.2 Termination Without Cause. After or effective upon expiration of the initial term, either party may terminate this Agreement at anytime without cause by giving to the other party at least one hundred twenty (120) calendar days written notice of termination. Notwithstanding the foregoing, Hospital may terminate this Agreement at any time upon one hundred twenty (120) calendar days written notice in the event that (a) Hospital determines in good faith that benefit changes or other actions by Blue Shield specifically relating to and specifically designed to divert outpatient surgical procedures from hospitals to other healthcare providers has resulted in a reduction in Hospital's outpatient surgical procedures for Blue Shield members by at least thirty percent (30%) compared to the volume of outpatient surgical procedures for Blue Shield members over the previous twelve (12) month period; (b) Hospital has notified Blue Shield in writing of its findings along with supporting documentation and provided Blue Shield with thirty (30) calendar days in which to take action to remedy the diversion of outpatient surgical procedures or to propose changes in the compensation amounts set forth herein to offset the revenue reduction to Hospital, and, (c) Blue Shield has failed to take action within such thirty (30) day period in which to cause such diversions to cease or to propose changes in compensation.

10.3 Termination for Cause. Either party may, subject to the cure period set forth in Section 10.4, terminate this Agreement for material cause after written notice as set forth hereinafter. The following shall constitute a material cause for termination:

(a) By Hospital if: (i) revocation of Blue Shield's license necessary for the performance of this Agreement; or, (ii) Blue Shield breaches any material term, covenant, or condition of this Agreement.

(b) By Blue Shield if: (i) the filing of bankruptcy by Hospital, a parent or subsidiary or substantial deterioration in the financial condition of a parent,

O Connor Hospital
DOCHS Hospital Agreement
[DOCHS Final 10-16-02]

are inconsistent with the medical ethics or precepts of the Common Values for Community Sponsorship.

13.14    Corporate Integrity Program.    Blue Shield acknowledges that Hospital operates under the Corporate Integrity Program, and has adopted a Compliance Program of Daughters of Charity Health System.    Blue Shield further acknowledges that, notwithstanding anything contained herein, Hospital shall not be required to engage in any conduct that may violate any policies, procedures, or directives of the Corporate Integrity Program or Compliance Program. Blue Shield further represents that it has not in the past been excluded, nor is it currently excluded, from participation in government funded healthcare programs, including, but not limited to, Medicare, Medicaid, CHAMPUS and FEHBP.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their authorized representatives.

**BLUE SHIELD OF CALIFORNIA**

Signature: _Lisa Farnan_

Printed Name: _Lisa Farnan_

Title: _VP, Provider Relations_

Date: _12 2-12_

**O'CONNOR HOSPITAL**

Signature: _____

Printed Name: _ROBERT ISSAI_

Title: _EVP & CFO_

Date: _11-19-02_

Tax ID No.: _91-2154436_

O Connor Hospital
DOCHS Hospital Agreement
[DOCHS Final 10-16-02]

Page 32



**Blue Shield**
of California

An Independent Member
of the Blue Shield Association

## AMENDMENT
## TO
## FEE FOR SERVICE
## HOSPITAL AGREEMENT

This Amendment is entered into effective **May 1, 2005** by and between **O'Connor Hospital, a California corporation** (hereinafter "Hospital"), and **California Physicians' Service, Inc., d.b.a. BLUE OF SHIELD OF CALIFORNIA, a California nonprofit corporation** (hereinafter **"Blue Shield"**), in order to modify the Fee For Service Hospital Agreement dated January 1, 2002.

## RECITALS

A. Whereas Hospital and Blue Shield currently have an Agreement under which Hospital agrees to provide Covered Services to Blue Shield Members; and,

B. Whereas Hospital submitted a notice of termination to open negotiations and has now agreed to rescind said termination;

C. Whereas Hospital and Blue Shield have reached agreement on new compensation terms and provisions.

Now therefore, Hospital and Blue Shield agree and hereby amend the Agreement effective May 1, 2005 as follows:

## AMENDMENT

1.  A new section 1.1 "Affiliates" is hereby added to read in full as follows:

    Affiliates: Blue Shield, or an entity that controls, is controlled by or is under common control with Blue Shield, or is under contract with Blue Shield, or which has been authorized by Blue Shield to access one or more networks of Participating Providers on behalf of themselves and/or other Affiliates or Payors. A list of Affiliates will be given upon request.

2.  Section 1.8 "Emergency Services" is hereby deleted in its entirety and replaced with Section 1.9 "Emergency Services" as follows:

    Emergency Services: are Covered Services to address a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) so as to cause the prudent layperson to conclude that the absence of immediate medical attention could reasonably be expected to result in: (i) placing the Member's health in serious jeopardy; (ii) serious impairment to bodily functions; (iii) serious dysfunction of any bodily organ or part. For Blue Shield Members, Emergency Services also include any other services defined as emergency services in 42 C.F.R. §422.113.

  

O'Connor Hospital
Amendment I

www.mylifepath.com

12.     Section 5.3 "Appeals of Payments or Denials" is hereby deleted in its entirety.

13.     Section 5.4 "Payment Audits & Overpayment & Underpayment Recoveries" is hereby
        amended to read in full as follows:

        Payment Audits & Overpayment Recoveries.    Blue Shield shall have the right to audit
        payments made to Hospital. Such audits, if any will be conducted within twelve (12) months
        of the date of payment by Blue Shield. If Blue Shield identifies an overpayment it has made
        to Hospital, it may request a refund of such overpayment within 365 days of the date the
        payment was made, unless the overpayment is the result of fraud or misrepresentation on the
        part of Hospital. Blue Shield's procedures for notification of overpayments and notification
        of recovery of overpayments shall be in accordance with Title 28 Cal. Code of Regulations
        Section 1300.71(d). In addition, if Blue Shield determines that Hospital has overcharged an
        individual properly identified as a Member of an Other Payor, as defined in Section 12.1,
        covered by this Agreement, Hospital shall promptly refund such overpayment to Blue Shield
        or to such Member, as applicable, upon notification by Blue Shield of such overcharge within
        twelve (12) months of the date the payment was made.

14.     A new Section 5.5 "Late Charge Master Notification Recoveries" is hereby added to read in
        full as follows:

        Late Charge Master Notification Recoveries: Notwithstanding the limitations of Section
        5.4, if Hospital fails to give Blue Shield timely notice of changes to Hospital's charge
        master in accordance with Sections 2.10 and 2.12 hereof and such change results in a
        change in the percentage compensation amounts set forth in Exhibit C., Blue Shield shall
        have the right to recalculate all payments made to Hospital for services rendered after the
        date the charge master was implemented and to recover any overpayments resulting from
        the reduction in the percentage compensation within twelve (12) months of the date the
        payments were made, unless the overpayment is the result of fraud or misrepresentation on
        the part of Hospital. Blue Shield shall complete such calculations within 120 days of the
        date that Hospital provides Blue Shield with notice of the charge master change, and Blue
        Shield shall provide Hospital with a detailed accounting and reconciliation of all resulting
        overpayments. If Hospital fails within thirty (30) days to either repay the overpaid amounts
        or give written notice that the amount is in dispute, then Blue Shield shall have the right to
        recoup the overpayment amounts within twelve (12) months of the date the payments were
        made from subsequent payments to Hospital under this or any other agreement between
        Hospital and Blue Shield.

15.     A new Section 5.6 "Right To Audit Charge Master" is hereby added to read in full as
        follows:

        Right To Audit Charge Master.    Blue Shield shall have the right to audit the Hospital's
        charge master to enforce Hospital's obligations under Sections 2.10 and 2.12 hereof.

16.     Section 9.1 "Provider Appeal Resolution Process" is hereby amended to read in full as
        follows:

        Provider Appeal Resolution Process.

        (a)     Blue Shield's Provider Appeal Resolution Process ("Appeal Process") shall comply
                with sections 1367(h), 1371, 1371.1, 1371.2, 1371.22, 1371.35, 1371.36, 1371.37,

O'Connor Hospital
Amendment I
3/31/2005                                    Proprietary and Confidential    Blue Shield of California

- 42 -

1371.4, and 1371.8 of the Health & Safety Code and Sections 1300.71, 1300.71.38, 1300.71.4, and 1300.77.4 of Title 28 of the Cal. Code of Regulations. It shall be described in the Provider Manual and on the provider portal of Blue Shield's website at www.mylifepath.com.

(b) The Appeal Process shall apply to any and all disputes arising under the Agreement. This provision does not in any way modify the provisions of Section 9.2 hereof relating to arbitration of disputes which cannot be resolved through the Appeal Process.

(c) Blue Shield's Provider Appeal Resolution Process consists of two levels: Initial and Final. State law does not require Blue Shield to offer two levels. Initial Provider Appeals except those regarding facility contract exception(s) must be submitted in writing within 365 days of Blue Shield's determination or lack of action to the address for such Provider Appeals provided on Blue Shield's website at www.mylifepath.com.

Initial appeals regarding facility contract exception(s) must be submitted in writing 365 days of Blue Shield's determination or lack of action to the address for such Provider Appeals provided on Blue Shield's website at www.mylifepath.com.

Final Provider Appeals must be submitted in writing within 90 days of Blue Shield's Initial Provider Appeal determination to the address for such Provider Appeals provided on Blue Shield's website at www.mylifepath.com.

(d) The Provider Appeal must contain the following information:

- The provider's name
- The provider's identification number – The Blue Shield provider identification number (PIN) and/or the provider's tax or social security number
- Contact information – mailing address and phone number
- Blue Shield's Internal Control Number (ICN), when applicable
- The patient's name, when applicable
- The patient's Blue Shield subscriber number, when applicable
- The date of sevice, when applicable
- A clear explanation of the issue the provider believes to be incorrect, including supporting medical records when applicable.

As applicable, Bundled Appeals must identify individually each item by using either the ICN or the section of the contract and sequential numbers that are cross-referenced to a document or spreadsheet.

(e) If Hospital fails to submit an Initial Appeal or Final Appeal within the required timeframes, Hospital waives the right for any remedies to pursue the matter further. In such instance, Hospital may neither initiate a demand for Arbitration pursuant to Section 9.2 of this Agreement nor pursue additional payment from the Member.

Proprietary and Confidential – Blue Shield of California

(f)    Blue Shield and Hospital agree to submit any such disputes that cannot be resolved by the Appeal Process to binding arbitration pursuant to Section 9.2 of this Agreement. Pursuit by Hospital of a dispute through the process described in this Article IX shall neither modify nor relieve Hospital of any obligations to continue to provide services to Members in accordance with and to comply with all terms of this Agreement.

17.    Section 9.2 "Arbitration of Disputes" is hereby amended to read in full as follows:

Arbitration of Disputes. If any dispute or controversy (other than a claim of medical malpractice) arises between the parties to this Agreement which exceeds the jurisdiction of Small Claims Court, which was not resolved in the Provider Appeal Resolution Process set forth in Section 9.1, and which may directly or indirectly concern or involve any term, covenant, or condition hereof, the parties shall settle the dispute by final and binding arbitration in San Francisco, Los Angeles, San Diego or Sacramento, California, whichever city is closest to the Hospital. Arbitration shall be conducted under the Commercial Rules of the American Arbitration Association. The arbitration decision shall be binding on both parties. It is agreed that the arbitrator shall be bound by applicable state and federal law and that the arbitrator shall issue written findings of fact and conclusions of law. The arbitrator shall have no authority to award damages or provide a remedy which would not be available to such prevailing party in a court of law nor shall the arbitrator have the authority to award punitive damages. The cost of the arbitration shall be shared equally by Hospital and Plan. Each party shall be responsible for its own attorneys' fees.

18.    Section 10.2 "Termination Without Cause" is hereby amended to read in full as follows:

Termination Without Cause. During the initial term, neither party may terminate this Agreement without cause. Thereafter, either party may terminate this Agreement without cause by giving to the other party at least one hundred eighty (180) calendar days written notice of termination. The termination shall become effective the first day of the month following the expiration of the notice period.

19.    Section 10.3(b) is hereby amended to read in full as follows:

By Blue Shield (i) the filing of bankruptcy by Hospital, a parent or subsidiary or substantial deterioration in the financial condition of a parent, affiliate or subsidiary, or, (ii) Hospital fails to provide quality medical services consistent with the standards set forth in this Agreement and in the Provider Manual, or, (iii) any license required in order for Hospital to provide Covered Services hereunder is revoked, terminated or restricted in any way, or, (iv) Hospital breaches any material term, covenant, or condition of this Agreement, including repeated failure to comply with procedures set forth in the Provider Manual, or (v) upon the occurrence of a material change in the ownership of Hospital and/or the sale of all or substantially all of the assets of Hospital.

20.    Section 10.6 "Effect of Termination" is hereby amended to read in full as follows:

All other provisions of the Fee For Service Hospital Agreement not inconsistent herein shall remain in full force and effect.

IN WITNESS WHEREOF, the parties have executed this Amendment the day and year set forth above.

BLUE SHIELD OF CALIFORNIA                          O'CONNOR HOSPITAL

Signature: _____                        Signature: _____

Print Name: __David Joyner___                        Print Name: _J. Maac  Graad_

Title: Senior Vice President, Network Management      Title: UP  Fziaac E / CFo - CBS

Date: ___4/15/05___                                  Date: _March 31, 2005_

O'Connor Hospital
Amendment 1

1

## PROOF OF SERVICE

2

3       I am employed in the county of Los Angeles, State of California.  I am
4  over the age of 18 and not a party to the within action; my business address is 303
   N. Glenoaks Blvd., Suite 700, Burbank, CA 91502.  On 21 May 2014, I served the
5  foregoing document(s) entitled:

6                    **DEMAND FOR ARBITRATION**

7  by placing a true copy thereof enclosed in a sealed envelope addressed per the
8  attached Service List.

9  [ ]   BY CERTIFIED MAIL:  I am "readily familiar" with the firm's practice of
10        collection and processing correspondence for mailing.  Under that practice it
          would be deposited with the United States Postal Service on that same day
11        with postage thereon fully prepaid at Burbank, California in the ordinary
12        course of business.  I am aware that on motion of the party served, service is
          presumed invalid if postal cancellation date or postage meter date is more
13        than one day after date of deposit for mailing in affidavit. [C.C.P. 1013a(3);
14        F.R.C.P. 5(b)]

15 [ X ]  BY FEDERAL EXPRESS:  I caused such envelope(s), with overnight
16        Federal Express Delivery Charges to be paid by this firm, to be deposited
          with the Federal Express Corporation at a regularly maintained facility on
17        the aforementioned date. [C.C.P. 1013(c) 1013(d)]

18 [ ]   BY PERSONAL SERVICE:  I caused the above-stated document(s) to be
19        served by personally delivering a true copy thereof to the individuals
          identified above.   [C.C.P. 1011(a); F.R.C.P. 5(b)]
20

21 [ ]   BY TELECOPIER:  Service was effected on all parties at approximately
          ____:____ am/pm by transmitting said document(s) from this firm's
22        facsimile machine (818/559-4477) to the facsimile machine number(s)
23        shown above.  Transmission to said numbers was successful as evidenced by
          a Transmission Report produced by the machine indicating the documents
24        had been transmitted completely and without error.  C.R.C. 2008(e), Cal.
25        Civ. Proc. Code § 1013(e).

26 [ ]   BY ELECTRONIC SERVICE:  By emailing true and correct copies to the
          persons at the electronic notification address(es) shown on the
27        accompanying service list.  The document(s) was/were served electronically
28        and the transmission was reported as complete and without error.

1  [ X ]  State: I declare under penalty of perjury under the laws of the State of
2          California that the above is true and correct.

3  [ ]    Federal: I declare that I am employed in the office of a member of the bar of
4          this court at whose direction the service was made.

5  Executed on 21 May 2014 Burbank, California.

6
7                                                    _____
8                                                    AIDA GRIGORIAN
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SERVICE LIST

Bryan C. Crawley, Esq.
Blue Shield of California
6300 Canoga Ave., 10th Floor
Woodland Hills, CA 91367
*(Original)*

American Arbitration Association
Case Filing Services
1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043
*(2 Copies)*

# Exhibit 3

American Arbitration Association
*Dispute Resolution Services Worldwide*

**COMMERCIAL ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

FC 12157

*MEDIATION: If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box.* B.C.C.
*There is no additional administrative fee for this service.*

DEC 1 7 2014

LAW DEPARTMENT

| Name of Respondent<br>California Physicians' Service, Inc. dba Blue Shield of California | | | Name of Representative (if known)<br>Bryan Crawley, Associate General Counsel | | |
|---|---|---|---|---|---|
| Address | | | Name of Firm (if applicable)<br>California Physicians' Service, Inc. dba Blue Shield of California | | |
| | | | Representative's Address<br>6300 Canoga Ave, 10th Floor | | |
| City | State | Zip Code | City<br>Woodland Hills | State<br>CA | Zip Code<br>91367 |
| Phone No. | | Fax No. | Phone No. (818) 228-2369 | | Fax No.  (888) 619-3597 |
| Email Address: | | | Email Address: bryan.crawley@blueshieldca.com | | |

The named claimant, a party to an arbitration agreement dated 12/01/2010, which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

THE NATURE OF THE DISPUTE
The claims identified on the attached Exhibit 1 list have been improperly denied and inappropriately underpaid pursuant to the agreement which exists between the claimant and the respondent. Respondent California Physicians' Service, Inc. dba Blue Shield of California owes claimant Daughters of Charity, et al., a principal sum of $124,693.74. Interest has yet to be paid on these claims pursuant to California Health and Safety Code Section 1371.35.

| Dollar Amount of Claim $124,693.74 | Other Relief Sought:     Attorneys Fees     x  Interest |
|---|---|
| | Arbitration Costs     Punitive/ Exemplary     Other _____ |

Amount Enclosed $1,850.00  In accordance with Fee Schedule:     Flexible Fee Schedule     x Standard Fee Schedule

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:
REASONED DECISION, RETIRED JUDGES

Hearing locale Los Angeles, California  (check one)     Requested by Claimant     x  Locale provision included in the contract

| Estimated time needed for hearings overall:<br>_____ hours or _3_ days | Type of Business: Claimant _HOSPITAL_____<br><br>Respondent_HEALTH PLAN_____ |
|---|---|

Is this a dispute between a business and a consumer?  Yes   x  No  Does this dispute arise out of an employment relationship?   Yes   x No

If this dispute arises out of an employment relationship, what was/is the employee's annual wage range? Note: This question is required by California law.   Less than $100,000     $100,000 - $250,000     Over $250,000

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement.

| Signature (may be signed by a representative)     Date:<br>December 15, 2014 | Name of Representative<br>Celim E. Huezo, Esq. |
|---|---|
| Name of Claimant<br>DAUGHTERS OF CHARITY, ET AL. | Name of Firm (if applicable)<br>LAW OFFICES OF STEPHENSON, ACQUISTO & COLMAN, INC. |
| Address (to be used in connection with this case)<br>303 N. Glenoaks Blvd., Suite 700 | | | Representative's Address<br>303 N. Glenoaks Blvd., Suite 700 | | |

| City<br>Burbank | State<br>CA | Zip Code<br>91502 | City<br>Burbank | State<br>CA | Zip Code<br>91502 |
|---|---|---|---|---|---|
| Phone No.<br>818-559-4477 | | Fax No.<br>818-559-5484 | Phone No.<br>818-559-4477 | | Fax No.<br>818-559-5484 |
| Email Address:<br>chuezo@sacfirm.com | | | Email Address:<br>chuezo@sacfirm.com | | |

To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100, Voorhees, NJ  08043.  Send the original Demand to the Respondent.

Please visit our website at www.adr.org if you would like to file this case online. AAA Case Filing Services can be reached at 877-495-4185.

# EXHIBIT 1

Exhibit 1

Filing Code 12157    Exhibit 1

## DOCHS vs. BLUE SHIELD

| FILE NO | LAST NAME | FIRST NAME | ADMISSION | DISCHARGE | PATIENT ID | TOTAL CHARGES | EXPECTED | PAID | UNDERPAID | ISSUE | ANALYSIS | Facility |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 000012009502 | | | 12/11/2012 | 12/18/2012 | | $121,078.50 | $24,882.55 | $21,639.55 | $3,243.00 | MEDICAL NECESSITY | | SAINT LOUISE |
| 000031708316 | | | 2/13/2013 | 1/21/2013 | | $102,251.55 | $28,512.00 | $21,384.00 | $7,128.00 | MEDICAL NECESSITY | | SETON |
| 000031668328 | | | 2/1/2013 | 1/8/2013 | | $199,308.00 | $127,032.75 | $107,746.00 | $19,286.75 | MEDICAL NECESSITY | | SETON |
| 000012193983 | | | 4/12/2013 | 4/17/2013 | | $130,503.50 | $16,215.00 | $9,729.00 | $6,486.00 | MEDICAL NECESSITY | | SAINT LOUISE |
| 000044014090 | | | 12/6/2012 | 12/6/2012 | | $14,220.00 | $8,886.80 | $6,128.91 | $2,757.89 | CONTRACT RATE DISPUTE | | ST. VINCENT |
| 000081434219 | | | 12/26/2012 | 12/31/2012 | | $119,389.80 | $26,349.00 | $0.00 | $26,349.00 | INVOICING - BILLING | | ST. VINCENT |
| 000012000370 | | | 7/28/2012 | 7/30/2012 | | $52,460.51 | $8,704.00 | $4,352.00 | $4,352.00 | MEDICAL NECESSITY | | SAINT LOUISE |
| 000067391052 | | | 6/4/2013 | 6/6/2013 | | $96,528.00 | $19,577.96 | $0.00 | $19,577.96 | MED GROUP/HEALTH PLAN RESPONSIBILITY | | O'CONNOR |
| 000012771473 | | | 7/3/2013 | 7/8/2013 | | $395,442.25 | $134,514.14 | $99,001.00 | $35,513.14 | BILLING | | ST. VINCENT |
| TOTAL | 9 | | | | | $1,231,182.11 | $394,674.20 | $269,980.46 | $124,693.74 | | | |

Page 1 of 1

# EXHIBIT 2

# blue 🛡 of california

### BLUE SHIELD OF CALIFORNIA
### FEE FOR SERVICE HOSPITAL AGREEMENT

This Fee For Service Hospital Agreement (this "Agreement") is entered into by and between **St. Vincent Medical Center**, a California nonprofit corporation ("Hospital"), and California Physicians' Service, dba Blue Shield of California, a California nonprofit corporation ("Blue Shield"). This Agreement shall be effective **December 1, 2010** (the "Effective Date").

### RECITALS

A.   Blue Shield is licensed as a prepaid health care service plan under the Knox-Keene Act of 1975, as amended (the "Knox-Keene Act"). Blue Shield contracts with individuals, associations, employer groups, and governmental entities to provide or to arrange for the provision of covered health care services to Members (as defined herein) enrolled in HMO and PPO benefit plans.

B.   Hospital owns and operates an acute care hospital and is duly licensed and qualified to provide inpatient and outpatient hospital services to Members.

C.   Hospital and Blue Shield desire that Hospital provide fee-for-service inpatient and outpatient hospital services (excluding capitated hospital agreements as described in Section 12.1 of this Agreement) to Members, in accordance with the terms of this Agreement.

### I. DEFINITIONS

For purposes of this Agreement, the following capitalized terms shall have the meanings ascribed to them below:

1.1   **Agreement Year:**  is the twelve (12) month period beginning on the Effective Date, and each twelve (12) month period beginning on each anniversary date of the Effective Date thereafter.

1.2   **Allowed Charges:**  are charges billed by Hospital, in accordance with Hospital's Charge Master, for Hospital Services furnished pursuant to this Agreement, less those charges, if any, disallowed by Blue Shield pursuant to Section III (General Notes) of Exhibit C hereto.

4

blue 🛡 of california

(vi)     The patient's Blue Shield subscriber number, when applicable;

(vii)    The date of service, when applicable; and

(viii)   A clear explanation of the issue the provider believes to be incorrect, including supporting medical records, when applicable.

(ix)     In addition, as applicable, bundled appeals must identify individually each item by using either the ICN or the section of the contract and sequential numbers that are cross-referenced to a document or spreadsheet.

(d)   This Section 9.1 does not in any way modify the provisions of Section 9.2 hereof relating to arbitration of disputes that cannot be resolved through the Appeal Process. However, if Hospital fails to submit a Provider Appeal to either level of the Appeal Process within the timeframes set forth above, Hospital shall be deemed to have waived its right to any remedies and to pursue the matter further. Without limiting the foregoing, in such instance, Hospital may neither initiate a demand for arbitration pursuant to Section 9.2 of this Agreement nor pursue additional payment from the Member.

(e)   Blue Shield and Hospital agree to submit any disputes that cannot be resolved by the Appeal Process to binding arbitration pursuant to Section 9.2 of this Agreement. Pursuit by Hospital of a dispute through the process described in this Article IX shall neither modify nor relieve Hospital of any obligations to continue to provide services to Members in accordance with and to comply with all terms of this Agreement.

9.2   **Arbitration of Disputes**. Any dispute (other than a claim of medical malpractice) between the parties that exceeds the jurisdiction of Small Claims Court and that was reviewed through, but not resolved by, the Appeal Process set forth in Section 9.1, shall be settled by final and binding arbitration in San Francisco, Los Angeles, San Diego or Sacramento, California, whichever city is closest to Hospital. Arbitration shall be conducted by and under the Commercial Rules of the American Arbitration Association. The arbitration decision shall be binding on both parties. The arbitrator shall be bound by applicable state and federal law and shall issue written findings of fact and conclusions of law. The arbitrator shall have no authority to award damages or provide a remedy that would not be available to such prevailing party in a court of law nor shall the arbitrator have the authority to award punitive damages. The cost of the arbitration shall be shared equally by Hospital and Blue Shield; provided that each party shall be responsible for its own attorneys' fees and costs.

9.3   **Limitation of Actions**. A demand for arbitration pursuant to Section 9.2 must be filed within twenty-four (24) months of Blue Shield's determination, lack of action or alleged breach that is the subject of the dispute. Should the aggrieved party fail to file a demand for arbitration of the dispute within the timeframe set forth herein, the aggrieved party shall have waived its rights and remedies with respect to the alleged breach. The

24

# blue ⓥ of california

aggrieved party shall have no right to pursue any remedy with respect to such alleged breach, including, without limitation, initiation of any civil action in state or federal court, and, if the aggrieved party is Hospital, Hospital shall have no right to pursue payment of any disputed amounts from the Member.

## X.  TERM & TERMINATION

10.1    **Term.**  Unless earlier terminated under the Termination for Cause Section 10.3, and the Immediate Termination Section 10.4, this Agreement shall become effective as of the Effective Date (December 1, 2010), and shall continue in effect for three (3) years thereafter (November 30, 2013) (the "Initial Term"), unless earlier terminated as set forth in this Agreement.  Unless either party notifies the other party at least one hundred eighty (180) days prior to the expiration of the Initial Term, this Agreement shall automatically renew for additional terms of one (1) year each, unless and until terminated as set forth in this Agreement

*Auto Renewal*

10.2    **Termination Without Cause.**  During the Initial Term, neither party may terminate this Agreement without cause.  Thereafter, either party may terminate this Agreement without cause by giving to the other party at least one hundred eighty (180) days prior written notice of termination.  Any termination pursuant to this Section 10.2 shall become effective the first day of the calendar month following the expiration of the notice period.

*TERM*

10.3    **Termination for Cause.**

(a)    Either party may terminate this Agreement for material cause, following written notice and the opportunity to cure described in Section 10.3(b).  The following shall constitute material cause for termination:

(i)    *By Hospital:*  (A) revocation of Blue Shield's license necessary for the performance of this Agreement; (B) breach by Blue Shield of any material term, covenant, or condition of this Agreement; or (C) failure of Blue Shield and Hospital to agree upon any material change to the Provider Manual in accordance with Section 2.10.

(ii)    *By Blue Shield:*  (A) commencement of any voluntary or involuntary proceedings by or against Hospital, or a parent, affiliate or subsidiary thereof, under any bankruptcy, reorganization, insolvency or other similar law of any jurisdiction; (B) failure by Hospital to provide Hospital Services consistent with the standards and/or procedures set forth in this Agreement and/or any material standards and/or procedures in the Provider Manual; (C) revocation, termination, or restriction of any type of any license required in order for Hospital to provide Hospital Services pursuant to this Agreement; or (D) breach by Hospital of any material term, covenant, or condition of this Agreement, including, without limitation, repeated failure to comply with procedures set forth in the Provider Manual.

25

blue ✚ of california

services or otherwise participate in activities that are not consistent with the Directives. (A copy of the Directives is available at http://www.usccb.org/bishops/directives.shtml.)

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their authorized representatives:

**BLUE SHIELD OF CALIFORNIA**

Signature: _Juan C. Davila_

Print Name: Juan C. Davila

Title: Senior Vice President, Network Mgmt.

Date: 11-11-10

**St. Vincent Medical Center**

Signature: _____

Print Name: _____

Title: _____

Date: 11/4/10

32

St. Vincent Medical Center-FFS Hospital Agreement_Base 12-01-10
Base FFS Hospital Agreement v23.0
Proprietary and Confidential – Blue Shield of California

1

## **PROOF OF SERVICE**

2

3        I am employed in the county of Los Angeles, State of California.  I am

4    over the age of 18 and not a party to the within action; my business address is 303

     North Glenoaks Boulevard, Suite 700, Burbank, California 91502-3226.  On 15

5    December 2014, I served the foregoing document(s) entitled:

6

## **DEMAND FOR ARBITRATION**

7

     by placing a true copy thereof enclosed in a sealed envelope addressed per the

8    attached Service List.

9    [ X ]  BY CERTIFIED MAIL:  I am "readily familiar" with the firm's practice of

10            collection and processing correspondence for mailing.  Under that practice it

             would be deposited with the United States Postal Service on that same day

11            with postage thereon fully prepaid at Burbank, California in the ordinary

             course of business.  I am aware that on motion of the party served, service is

12            presumed invalid if postal cancellation date or postage meter date is more

13            than one day after date of deposit for mailing in affidavit. [C.C.P. 1013a(3);

             F.R.C.P. 5(b)]

14

15    [ ]    BY FEDERAL EXPRESS:  I caused such envelope(s), with overnight

             Federal Express Delivery Charges to be paid by this firm, to be deposited

16            with the Federal Express Corporation at a regularly maintained facility on

17            the aforementioned date. [C.C.P. 1013(c) 1013(d)]

18    [ ]    BY PERSONAL SERVICE:  I caused the above-stated document(s) to be

19            served by personally delivering a true copy thereof to the individuals

             identified above.   [C.C.P. 1011(a); F.R.C.P. 5(b)]

20

21    [ ]    BY EXPRESS MAIL:  I caused such envelope(s), with postage thereon

             fully prepaid and addressed to the party(s) shown above, to be deposited in a

22            facility operated by the U.S. Postal Service and regularly maintained for the

23            receipt of Express Mail on the aforementioned date. [C.C.P. 1013(c)]

24    [ ]    BY TELECOPIER:  Service was effected on all parties at approximately

             ___:____ am/pm by transmitting said document(s) from this firm's facsimile

25            machine (818/559-4477) to the facsimile machine number(s) shown above.

26            Transmission to said numbers was successful as evidenced by a

             Transmission Report produced by the machine indicating the documents had

27            been transmitted completely and without error.  C.R.C. 2008(e), Cal. Civ.

28            Proc. Code § 1013(e).

1   [ ]   BY ELECTRONIC SERVICE:  By emailing true and correct copies to the
2   persons at the electronic notification address(es) shown on the
    accompanying service list.  The document(s) was/were served electronically
3   and the transmission was reported as complete and without error.

4   [ X ]   State:  I declare under penalty of perjury under the laws of the State of
5   California that the above is true and correct.

6   Executed on 15 December 2014 in Burbank, California.

7

8

9

10   _____

11                    AIDA GRIGORIAN

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **SERVICE LIST**

2

3  American Arbitration Association
   Case Filing Services
4  1101 Laurel Oak Road, Suite 100
   Voorhees, NJ 08043
5

6  Bryan Crawley, Esq.
   Associate General Counsel
7  Blue Shield of California
   6300 Canoga Ave., 10th Floor
8  Woodland Hills, CA 91367

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 600 Anton Boulevard, Suite 1400, Costa Mesa, CA 92626-7689.

A true and correct copy of the foregoing document entitled (*specify*): **Request for Judicial Notice in Support of Blue Shield of California's Motion to: (1) Dismiss Claims for Turnover, Violation of the Automatic Stay and Unjust Enrichment; and (2) Compel Arbitration and Stay Adversary Proceeding; Memorandum of Points and Authorities**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) October 30, 2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Steven J Kahn    skahn@pszyjw.com**
- **Michael B Reynolds    mreynolds@swlaw.com, kcollins@swlaw.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) October 30, 2020, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

<u>**Via Federal Express**</u>:

The Honorable Ernest M. Robles
United States Bankruptcy Court
255 E. Temple Street, Suite 1560/Crtrm 1568
Los Angeles, California 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 30, 2020 | Kelley Nestuk | /s/ Kelley Nestuk |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                            **F 9013-3.1.PROOF.SERVICE**